UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.R.S. ENTERPRISES, INC.<br>    Plaintiff | )<br>)<br>) |
| VS. | )<br>) C.A. NO. |
| SHEET METAL WORKERS INTERNATIONAL<br>ASSOCIATION LOCAL NO. 40 | )<br>)<br>) |
| AND | )<br>) |
| THE NATIONAL JOINT ADJUSTMENT BOARD<br>FOR THE SHEET METAL INDUSTRY<br>    Defendants | )<br>)<br>) |

## COMPLAINT

1.   Plaintiff, M.R.S. Enterprises, Inc. (hereinafter M.R.S.), is and has been at all times material herein, a corporation duly organized under the laws of the State of Connecticut, with a principal place of business in Plainville, Connecticut.

2.   M.R.S., in the course and conduct of its business causes and continuously has caused at all times material herein large quantities of building equipment used by it in construction within the

State of Connecticut and other New England states to be purchased and transported in interstate commerce from and through various states of the United States other than the State of Connecticut. In connection with its business, M.R.S. receives directly from points outside of the State of Connecticut materials and equipment having an annual value far in excess of $50,000.00.

3. M.R.S. is, and has been at all times material herein, engaged in commerce within the meaning of the Labor Management Relations Act ("the Act"). 29 U.S.C., §151 et seq.

4. The jurisdiction of this Court is based upon Section 301 of the Act, 29 U.S.C. §185.

5. Defendant, Sheet Metal Workers International Association, Local No. 40 (hereinafter Local 40) is a labor organization within the meaning of the Act with a principal place of business in Rocky Hill, Connecticut.

6. On or about 1998, M.R.S. executed a collective bargaining agreement with Local 40. In order to be signatory to the National Siding and Decking Agreement, to which M.R.S. was also a party, MRS had to execute a collective bargaining agreement with the Sheet Metal Workers Local in its home state. M.R.S. was not signatory to the Local 40 agreement through any employer association.

7. At no time did M.R.S. belong to the Associated Sheet Metal and Roofing Contractors of Connecticut (ASMRCC) or the Sheet Metal and Air Conditioning Contractors of North America, (SMACNA).

8. M.R.S. always negotiated its National Siding and Decking Agreement through the National Association of Siding and Decking Contractors (NASDC). Because M.R.S. is a siding contractor, it never participated in any negotiations with Local 40 over the terms and conditions of the Local 40 agreement.

9. M.R.S. never gave its bargaining rights to either ASMRCC or SMACNA. In fact, the Local 40 Agreement that expired on June 30, 2005, was never signed by any representative of M.R.S. and M.R.S. was not included as a member of ASMRCC for collective bargaining purposes.

10. There does not exist, therefore, a signed collective bargaining agreement between M.R.S. and Local 40.

11. On December 20, 2004, M.R.S. notified General President, Michael J. Sullivan, of the Sheet Metal Workers' International Association (SMWIA) that it was giving notice pursuant to Article VIII, Section 4 of the National Siding and Decking Agreement that it was terminating that agreement upon its expiration in May 2005. By letter of the same date, M.R.S. notified NASDC that it was terminating the agreement with the SMWIA.

12. Article XV of the Local 40 Agreement requires 150 days notice prior to the expiration date of the agreement if any employer wishes to terminate the contract.

13. By letter dated December 22, 2004, M.R.S. notified Mr. David Roche, Business Manager of Local 40 that it was terminating the Local 40 Agreement, pursuant to Article XV, upon its expiration on June 30, 2005.

14. As was its practice over the past seven years, M.R.S. did not participate in collective bargaining for the Local 40 sheet metal worker contracts in Connecticut. M.R.S. has always hired its sheet metal workers directly, trained them to perform siding and decking work and then obtained membership in the Sheet Metal Workers union for those employees. Very seldom, if at all, did Local 40 ever refer sheet metal workers to M.R.S. to perform siding and decking work.

15. Local 40 has never trained any of the sheet metal workers employed by M.R.S. who install composition metal panel materials.

16. The collective bargaining agreement between M.R.S. and Local 40 provides in Article X,

- 3 -

Section 8 as follows:

"Section 8. In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a). Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer('s) representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairman of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b). Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions

raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c). The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this Section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, facsimile or telephone notification.

(d). Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement."

17.    The fact is that M.R.S. and Local 40 never engaged in any negotiations for a successor agreement to the one that expired on June 30, 2005. No meetings were set between the parties and no proposals were exchanged. The parties, therefore, did not reach deadlock as required by Article X, Section 8, of the Agreement.

18.    If there is a collective bargaining agreement between M.R.S. and Local 40 (because M.R.S. never executed the most recent agreement), the agreement is a Section 8(f) pre-hire agreement pursuant to 29 U.S.C., §158(f). As such, pursuant to the decision in John Deklewa & Sons, 843 Fd. 2d 770 (3rd Cir. 1988) and subsequent decisions affirming Deklewa, the Section 8(f) agreement was terminated by M.R.S. at its expiration and M.R.S. had no further obligation to bargain with the Union after termination.

19.    Despite the fact that no negotiations occurred between M.R.S. and Local 40 and no deadlock had been reached, Local 40 filed a grievance against M.R.S. pursuant to Article X, Section 8 before the National Joint Adjustment Board (NJAB).

20. On June 27, 2005, the NJAB held a hearing regarding the grievance of Local 40 in Washington, DC. M.R.S. participated in the NJAB proceeding filing a written memorandum establishing that it had terminated the collective bargaining agreement pursuant to the contract provision and federal labor law and that no negotiations had ever taken place between M.R.S. and Local 40.

21. Notwithstanding the oral argument and written position taken by M.R.S. at the NJAB hearing, the NJAB issued a ruling on June 28, 2005 directing M.R.S. to immediately execute a collective bargaining agreement with Local 40. A copy of that decision is attached hereto as Exhibit 1.

22. The NJAB is a board comprised of equal numbers of representatives of employers who are signatory to an agreement with SMWIA and union representatives appointed by the President of the SMWIA. There are no neutral panelists.

23. Due to the composition of the NJAB, there was evident partiality of the arbitrators.

24. The NJAB exceeded its authority in issuing its decision ordering M.R.S. to execute a collective bargaining agreement with Local 40.

25. By refusing to consider the Third Circuit decision in Deklewa, supra, and the provisions of the contract regarding termination, the NJAB acted arbitrarily and in violation of established law.

26. The NJAB decision must be vacated, pursuant to 9 U. S. C. Sec. 10, The Federal Arbitration Act.

27. M.R.S. has no fair, adequate and complete remedy at law.

Wherefore, Plaintiff prays for an order of this Court vacating the June 28, 2005 decision of the National Joint Adjustment Board ordering it to execute a collective bargaining agreement with the Sheet Metal Workers International Association Local 40.

M.R.S. ENTERPRISES, INC.
By its Attorney,

Dated: September 7, 2005
            13

Jonathan C. Fritts (464011)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC   20004
Tel:  202/739-5867
Fax: 202/739-3001

Pro Hac Vice

James F. Grosso - BBO 213320
O'Reilly, Grosso & Gross, P.C.
1671 Worcester Road, Suite 205
Framingham, MA   01701-5400
Tel:  508/620-0055
Fax: 508/620-7655

# National Joint Adjustment Board
# for the Sheet Metal Industry

P.O. Box 220956
Chantilly, VA 20153-0956

EXHIBIT 1

## DECISION

SMWIA Local Union 40
100-A Old Forge Road
Rocky Hill, CT 06067

M.R.S. Enterprises, Inc.
41 Northwest Drive
Plainville, CT 06062

Re: Article X, Section 8: SMWIA Local 40 &
M.R.S. Enterprises, Inc.

Ladies and Gentlemen:

The National Joint Adjustment Board (NJAB) for the Sheet Metal Industry met June 27, 2005 in Washington, DC to hear the above-referenced matter.

Roland Levesque and James F. Grosso appeared on behalf of the Employer. David Roche and Luke J. Ford appeared on behalf of the Local Union.

A review of the record demonstrated that all procedural requirements had been met. The matter, therefore, was properly before the NJAB for decision.

The file included a memorandum of position submitted by M.R.S. Enterprises, Inc. The memorandum was reviewed and considered by the NJAB during the proceeding. M.R.S. Enterprises, Inc. did not make any proposals nor respond to any proposals made by the union.

Based on the record and testimony of the parties, the NJAB rendered the following unanimous decision:

The parties shall execute a collective bargaining agreement, effective July 1, 2005, identical in terms to the agreement reached between SMWIA Local 40 and ASMRC of Connecticut.

Article X, Section 8:
SMWIA Local 40 & M.R.S. Enterprises, Inc.
Page 2

Your Attention is directed to the following language contained in the Procedural Rules of the NJAB under Article X, Section 8 (a):

"The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached."

BY ORDER OF THE BOARD

_____
CO-CHAIR

_____
CO-CHAIR

June 28, 2005
_____
DATE