# Exhibit A

Attached to Answer and Counterclaim
(Case No. 1:05-CV-01823 CKK)

# Sheet Metal Workers'
# International Association
# Local Union No. 40

and

# The Associated Sheet Metal and Roofing
# Contractors of Connecticut

*Standard Form of Union Agreement*
*&*
*Addenda*





# JULY 1, 2001 - JUNE 30, 2005

 C-126

Sheet Metal Workers'
International Association
Local Union #40
100-A Old Forge Road
Rocky Hill, Ct 06067
Telephone – 860-529-2616
Fax – 860 529-3177
1-800-201-5840

\* \* \*

covering the counties of:
Hartford, New Haven, Middlesex,
Tolland, Windham, New London in Connecticut
Fishers Island, New York
and the open area of:
Harwinton, Thomaston, Torrington,
and Watertown in Litchfield County in Connecticut

# INDEX

## STANDARD FORM OF UNION AGREEMENT

| | |
|---|---|
| Article I | Page 1 |
| Article II | Page 1 |
| Article III | Page 1 |
| Article IV | Page 2 |
| Article V | Page 2 |
| Article VI | Page 2 |
| Article VII | Page 3 |
| Article VIII | Page 3 |
| Article IX | Page 8 |
| Article X | Page 8 |
| Article XI | Page 11 |
| Article XII | Page 13 |
| Article XIII | Page 13 |
| Article XIV | Page 13 |
| Article XV | Page 14 |

## ADDENDA TO STANDARD AGREEMENT

| | | |
|---|---|---|
| Addendum I | Wage Rates, Work Day and Increases | Page 16 |
| Addendum II | Layoff Provisions | Page 17 |
| Addendum III | Health, Pension, SRF and other Funds | Page 17 |
| Addendum IV | Travel Expense | Page 20 |
| Addendum V | Room and Board | Page 21 |
| Addendum VI | Union Stewards | Page 21 |
| Addendum VII | Foremen | Page 22 |
| Addendum VIII | Owner/Member Provision | Page 23 |
| Addendum IX | Apprentice and Training Fund | Page 23 |
| Addendum X | Air Handling Equipment | Page 24 |
| Addendum XI | Shift Work | Page 24 |
| Addendum XII | Referral System | Page 25 |
| Addendum XIII | Production Work | Page 25 |
| Addendum XIV | Miscellaneous | Page 25 |
| Addendum XV | Project Reporting Forms | Page 27 |
| Addendum XVI | Stabilization Agreement | Page 27 |
| Addendum XVII | Scholarship Fund | Page 28 |
| Addendum XVIII | Union Office Assess ~ Journeypersons | Page 28 |
| Addendum XIX | P.A.L. | Page 28 |
| Addendum XX | SMW L.U.#40 P.A.C. | Page 28 |
| Addendum XXI | Integrity Clause | Page 29 |

Addendum XXII    Recognition Clause                          Page 29
Addendum XXIII   Sub-contracting                             Page 30
Addendum XXIV    Favored Nations Clause                      Page 30
Addendum XXV     Non-discrimination Policy                   Page 30
Addendum XXVI    Architect/Sheet Metal Make-up Day           Page 30
Addendum XXVII   Testing and Balancing                       Page 31
Addendum XXVIII  Resolution #78 Market Program               Page 33
Signature Page                                               Page 35
Appendix A        (Wage and Benefit Breakdown)               Page 36
Appendix B        (Market Program)                           Page 37
Appendix C        (Apprentice Breakdown)                     Page 38
Appendix D        (Minimum Tools Required)                   Page 39

Form A-07- 01

# STANDARD FORM OF UNION AGREEMENT
### SHEET METAL, ROOFING, VENTILATING AND AIR CONDITIONING
### CONTRACTING DIVISIONS OF THE CONSTRUCTION INDUSTRY

Agreement entered into **JULY** , **1st** , **2001**

(Month)　　　　　　　　(Day)　　　　　(Year)

by and between **The Associated Sheet Metal and Roofing Contractors of Connecticut**

(Name of Contractor or Contractor's Association)

and each business establishment individually, whether represented by a contractor association or not, hereinafter referred to as the Employer, and Local Union No. **40** of Sheet Metal Workers' International Association, hereinafter referred to as the Union for **the counties of Hartford, New Haven, Middlesex, Tolland. Windham. New London in Connecticut, Fishers Island New York and the open area of: Harwinton, Thomaston, Torrington and Watertown in Litchfield County in Connecticut.**

## ARTICLE I

SECTION 1. This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the: (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems and air-handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) metal roofing; and (f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

## ARTICLE II

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a jobsite to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

## ARTICLE III

SECTION 1. The Employer agrees that none but journeymen, apprentice, and pre-apprentice sheet metal workers shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the Employer's letterhead for

certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMWIA, shall be provided to the Employer.

### ARTICLE IV

SECTION 1. The Union agrees to furnish upon request by the Employer duly qualified journeymen, apprentice, and pre-apprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.

### ARTICLE V

SECTION 1. The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

SECTION 2. If during the term of this Agreement the Labor-Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

SECTION 3. The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

### ARTICLE VI

SECTION 1. The regular working day shall consist of **as per Addendum I** (7) hours labor in the shop or on the job between seven (7) a.m. and three-thirty (3:30) p.m. unless modified in local negotiations and the regular working week shall consist of five (5) consecutive seven (7) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at as **per Addendum I** (1 1/2) times the regular rate. Where conditions warrant, the regular work day may consist of ten (10) hours labor on the job and the regular work week of four (4) ten (10) hour days between Monday and Friday when mutually agreed between the Local Union and Employer.

Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time.

SECTION 2. **New Year's Day, Good Friday, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day and Christmas Day** or days locally observed as such by the state of Connecticut. Sunday shall also be recognized as a holidays and paid as **per Addendum I Section 3**.

SECTION 3. It is agreed that all work performed outside of regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the Union in advance of scheduling such work. Preference on overtime and holiday work shall be given to employees on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 4. Shift work and the pay and conditions therefor shall be only as provided in written addenda attached to this Agreement. Energy conservation—Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be established by the local parties or by the National Joint Adjustment Board on the request of either party, if not locally provided.

### ARTICLE VII

SECTION 1. When employed in a shop or on a job within the limits of **fifteen (15) miles** employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

SECTION 2. When employed outside of the limits specified in Section 1 of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section 1 of this Article at regular starting time, and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in Section 1 of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by a zone or other method of payment. If this alternative method is used, it will be provided in a written addendum attached hereto. If an Employer sends an employee to perform work outside of the territorial jurisdiction of the United States of America or Canada, travel pay and/or subsistence arrangements shall be negotiated locally.

### ARTICLE VIII

SECTION 1. The minimum rate of wages for journeymen sheet metal workers covered by this Agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article I of this Agreement shall be **as per Addendum I**, except hereinafter specified in Section 2 of this Article.

SECTION 2. On all work specified in Article I of this Agreement, fabricated and/or assembled by journeymen, apprentices and pre-apprentice sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other collective bargaining areas or local union affiliated with Sheet Metal Workers' International Association, whose established wage scale is

3

higher than the wage scale specified in this Agreement, the higher wage scale of the jobsite Union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

SECTION 3. The provisions of Section 2 of this Article, Section 2 of Article II and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1.  Ventilators
2.  Louvers
3.  Automatic and fire dampers
4.  Radiator and air conditioning unit enclosures
5.  Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6.  Mixing (attenuation) boxes
7.  Plastic skylights
8.  Air diffusers, grilles, registers
9.  Sound attenuators
10.  Chutes
11.  Double-wall panel plenums
12.  Angle rings

SECTION 4. The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings, except when such a provision is contained in the local union agreement or addendum to the SFUA.

SECTION 5. Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen, preapprentice and classified sheet metal workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

SECTION 6. When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, the Employer may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be otherwise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

SECTION 7. In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 8. Welfare benefit contributions shall not be duplicated.

When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

SECTION 9. Wages at the established rates specified herein shall be paid **as per Addendum I** in the shop or on the job at or before quitting time on **as per Addendum I** of each week, and no more than two (2) days' pay will be withheld. Alternative payroll procedures, i.e., electronic and/or automatic deposit may be negotiated locally. However, employees when discharged shall be paid in full.

SECTION 10. Journeymen, apprentice and pre-apprentice sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours' pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

SECTION 11. Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

SECTION 12(a). Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS) **as per Appendix (A,B, and C)** per hour for each hour worked on and after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted to IFUS, 4201 Lafayette Center Drive, Chantilly, Virginia, 20151 -1209, or for the purpose of transmittal, through **Sheet Metal Workers' Local Union #40, Fringe Benefit Office, 100 Old Forge Road, Rocky Hill, CT 06067**

(c). The IFUS shall submit to the Sheet Metal Workers' International Association not less often than semi-annually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the Sheet Metal Workers' International Association upon written request.

(d). Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this Section may be processed by the Sheet Metal Workers' International Association

directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator shall be selected by the Co-Chairmen of the National Joint Adjustment Board. The Arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 12, Article VIII), and no other.

SECTION 13(a). Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay to the **Associated Sheet Metal and Roofing Contractors of Connecticut** (the local industry fund), (**Appendix A, B, and C**) for each hour worked on or after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made monthly on or before the 20th day of the succeeding month.
The Sheet Metal Industry Fund shall remit monthly, $.01 per hour from the hourly contributions received on or after the effective date of this agreement for each hour worked by each employee of the employer covered by this agreement to the Connecticut Construction Industry Labor Management Coalition. This contribution shall continue in force and effect until such time as the dissolution of the CCLMC. In such event the $.01 per hour increment shall be added into the then established contribution rate in effect for the Sheet Metal Industry Fund, Inc. at the time.

(c). The local industry fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements. Further specific detailed information in regard to local industry fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d). Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section shall be handled under the provisions of Article X of this Agreement. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

SECTION 14. The Union and Employer recognize that the contributions provided in Sections 12(b) and 13(b) of this Article support activities that benefit the entire sheet metal industry. It is essential that the Employer support these activities, even though it may be performing sheet metal work under the provisions of a separate project agreement or maintenance agreement.

Therefore, hours worked for purposes of determining the contributions required under Sections 12(b) and 13(b) of this Article shall include all hours worked by each employee of the Employer under any project

6

agreement or maintenance agreement, unless specifically excluded by the terms of a written addendum that is negotiated by the Contractors' Association and the Local Union that are parties to this Agreement.

SECTION 15. Effective as of the date of this Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) (**Appendix A, B, and C**)) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or for purposes of collection and transmittal through **Sheet Metal Workers' National Benefits, P.O. Box 79321,Baltimore, Maryland, 21279-0321.**

Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, **(Appendix A, B, and C)** per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or for the purposes of collection and transmittal through **Sheet Metal Workers' National Benefits, P.O. Box 79321, Baltimore, Maryland, 21279-0321.**

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust (Institute) **(Appendix A, B, and C)** per hour for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for purposes of collection and transmittal through **Sheet Metal Workers' National Benefit Funds, P.O. Box 79321, Baltimore, Maryland, 21279-0321.**

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

SECTION 16. In the event that the Employer becomes delinquent in making contributions to any national or local Fund, the Union may withdraw all employees from the service of the Employer as per Addendum III Section1. The withdrawal of such employees from the service of the Employer shall not constitute a violation of any provision of this Agreement.

SECTION 17(a). The Employer shall comply with any bonding provisions governing local Funds that may be negotiated by the local parties and set forth as a written Addendum to this Agreement. The Employer shall likewise comply with bonding requirements established by the Trustees of the National Funds.

(b). When an Employer is performing any work specified in Article I of this Agreement outside of the area covered by this Agreement, and within the area covered by another Agreement with a local union affiliated with the Sheet Metal Workers' International Association, the Employer shall comply with uniformly applied bonding

7

requirements of that local area that are reasonable and necessary to ensure the timely payment of any contribution that may be required to local and national Funds, but in no event shall such bonds be in excess of three (3) months estimated contributions to local and national Funds.

(c). An Employer that has been delinquent in making contributions to any national or local fund shall, upon written notification of the trustees or local union, make the specified payment to such fund at weekly intervals as per Addendum III Section 1.

## ARTICLE IX

SECTION 1. Journeymen, apprentice, and pre-apprentices covered by this Agreement shall provide for themselves all necessary hand tools. The Union and the Employer shall establish a standardized tool list, which shall be set forth as a written addendum attached hereto.

SECTION 2. Journeymen, apprentice, and pre-apprentices covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice. The local Employers' Association or the Local Union, on its own initiative, may submit grievances for determination by the Board as provided in this Section. The grievance procedure set forth in this Article applies only to labor-management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board.* Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievances permitting appeals for out-of-area Employers from the grievance arbitration procedures established for the territory in which work is performed. An Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, as well as a decision of any alternative arbitration tribunal established for that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board. Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which the work is performed.

For the purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, shall also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel hearing.

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

---

**\*All correspondence to the National Joint Adjustment Board shall be sent to the following address:**
**National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA 20153-0956**
**or 4201 Lafayette Center Drive, Chantilly, VA 20151-1209.**

---

SECTION 6. In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

SECTION 7. Failure to exercise the right of appeal at any step thereof within the time limit provided therefor shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

SECTION 8. In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a). Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer('s) representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairmen of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairmen of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairmen of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairmen of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b). Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions

raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c). The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this Section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, facsimile or telephone notification.

(d). Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

SECTION 9. Employers not contributing to the Industry Fund of the United States (IFUS) will be assessed a fee to be determined periodically by the Administrator of the National Joint Adjustment Board. Proceeds will be used to reimburse IFUS for costs of arbitration under the provisions of Article X.

SECTION 10. In addition to the settlement of disputes provided for in Sections 1 through 8 of this Article, either party may invoke the services of the National Joint Adjustment Board to resolve disputes over the initial establishment of terms for specialty addenda, if the provisions of Article X have been adopted in their entirety, and without modification.

Such a dispute may be submitted upon the request of either party any time that local negotiations for such an agreement have been unsuccessful. Such a dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by said Board. The unanimous decision of said Board shall be final and binding upon the parties. There shall be no strike or lockout over such a dispute.

## ARTICLE XI

SECTION 1. All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of eight (8) members, four (4) of whom shall be selected by the Employer, and four (4) by the Union. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

SECTION 2. The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

11

(a). The parties will review the needs for specialized and skill-upgrade training and cooperate to establish necessary programs which will then be supervised by the Joint Apprenticeship Training Committee.

SECTION 3. It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the International Training Institute and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by employers in the Sheet Metal Industry not signatory to a collective bargaining agreement providing for contributions to the International Training Institute and a Local JATC. Therefore, the trustees of the International Training Institute and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training shall include the reasonable value of all International Training Institute and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing International Training Institute materials and programs.

SECTION 4. It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices on the basis of one (1) apprentice for each three (3) journeymen regularly employed throughout the year. Provided, however, an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

SECTION 5. Each apprentice shall serve an apprenticeship of up to four (4) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen.

SECTION 6. A graduated wage scale similar to that shown below, based on the journeyman wage rate, shall be established for apprentices. The scale may vary based on local market conditions and recruiting requirements.

First year —First half 40%-Second half 45%        Third year —First half 60%-Second half 65%
Second year—First half 50%-Second half 55%        Fourth year —First half 70%-Second half 75%

This Section shall not have the effect of reducing the wage progression schedule of any apprentice who was indentured prior to the effective date of this Agreement.

SECTION 7. The parties will establish on a local basis the SMWIA Youth-to-Youth program (the program) and the procedures to enable all apprentices to participate in the program. The activities of the program that deal with organizing and other traditional union activities shall be funded by the Local Union through a checkoff in compliance with the provisions of Section 302(c) of the Labor-Management Relations Act of 1947. Activities that may be funded by Employer contributions shall be so funded if, and to the extent, the parties shall agree locally to sponsor and implement the same.

SECTION 8. The parties agree that concentrated apprenticeship training is preferable to night-schooling and urge the Joint Apprenticeship and Training Committee to implement concentrated training during the term of this Agreement.

The parties recognize that previous experience in the industry can be considered when evaluating and placing sheet metal workers into the apprenticeship program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program. The parties shall also address the need to provide continuity in health care for those workers entering the program with prior experience in the industry.

SECTION 9. The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continuing training for sheet metal journeymen.

## ARTICLE XII

SECTION 1. It is hereby agreed that the Employer may apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant preapprentices on the basis of one (1) preapprentice for each three (3) apprentices employed by the Employer. Provided, however, that an Employer who employs one (1) or more apprentices and at least three (3) sheet metal journeymen shall be entitled to at least one (1) preapprentice. Any apprentice of the Employer on layoff at the effective date of this Agreement must be rehired before said Employer is entitled to any preapprentice. Thereafter, the same conditions and ratios shall apply.

In the event the Employer is entitled to employ a preapprentice and the Union fails to comply with the Employer's written request to furnish a preapprentice within forty-eight (48) hours, the Employer may hire such employees and refer them to the Joint Apprenticeship and Training Committee for enrollment.

Preapprentices shall be enrolled as applicants for future openings in the apprenticeship program. The Joint Apprenticeship and Training Committee shall evaluate the qualifications of preapprentices for such openings during the first year of employment. No preapprentice shall be retained beyond one (1) year unless the preapprentice has been found to be qualified as an applicant.

The wage scale for preapprentices shall be a minimum of thirty percent (35%) of the wage rate for journeymen sheet metal workers. Health and welfare coverage shall be arranged on behalf of the preapprentices by the parties.

## ARTICLE XIII

SECTION 1. SMACNA and the SMWIA are committed to promoting productive and cooperative labor-management relations. In furtherance of this goal, the local Employers' association and local Union agree to establish a labor-management committee which shall meet on a regular basis, but not less often than quarterly, to discuss industry issues of mutual concern. Such committees will strive to improve communications, understand and respond to industry direction and trends, and resolve common issues collaboratively.

## ARTICLE XIV

SECTION 1. In applying the terms of this Agreement, and in fulfilling their obligations thereunder, neither the Employer nor the Union will discriminate in any manner prohibited by law.

## ARTICLE XV

SECTION 1. This Agreement and Addenda Numbers ___One___ through ___Twenty-eight___

attached hereto shall become effective on the ___First___ day of ___July___, ___2001___
                                              Day                             Mont           Year

and remain in full force and effect until the ___Thirtieth___ day of ___June___, ___2005___
                                            Day                          Month          Year

and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice, provided, however, that, if this Agreement contains Article X, Section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.

SECTION 2. If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision. If negotiations are unsuccessful, the issue may be submitted for resolution by either party pursuant to Article X, Section 8 of this Agreement.

SECTION 3. Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

SECTION 4. Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this Agreement.

SECTION 5. By execution of this Agreement the Employer authorizes

The Associated Sheet Metal and Roofing Contractors of Connecticut
(Name of Local Contractor Association)

to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of this Agreement.

In witness whereof, the parties hereto affix their signatures and seal this ___First___
                                                                                Day

day of, ___July___, ___2001___.
                (Month)                (Year)

THIS STANDARD FORM OF UNION AGREEMENT HAS PROVIDED FOR THE INCLUSION OF PREAPPRENTICES AND A REDUCTION OF THE WAGE SCHEDULE FOR NEW APPRENTICES. THE

PURPOSE OF THIS IS TO MAKE CONTRACTORS MORE COMPETITIVE WITH NON-UNION COMPETITION. TO ACHIEVE THAT OBJECTIVE EMPLOYERS AGREE TO MINIMIZE MULTIPLE MARKUPS.

*Forty*

ASMRC of Conn Fac

(Specify Name of Association or Contractor)

By

(Signature of Officer or Representative)

Local Union No.

of Sheet Metal Workers' International Association

(Signature of Officer or Representative)

15

ADDENDA TO THE STANDARD FORM OF UNION AGREEMENT

## ADDENDUM I
## WAGE RATES, WORK DAY and INCREASES

1.   The total contractual hourly obligation effective July 1, 2001 of the Employer is $ 2.50 per hour increase above the previously established rate. Future increments during the term of this Agreement are as follows:

| | |
|---|---|
| July 1, 2002 | $ 2.50 |
| July 1, 2003 | $ 2.50 |
| July 1, 2004 | $ 2.50 |

The complete breakdown of wages and fringe benefit contributions is contained in **(Appendix A)** of this Agreement.

2.   The regular working day shall consist of SEVEN (7) hours labor in the shop or on the job between seven (7:00) a.m. and three-thirty (3:30) p.m. The regular working week schedule shall consist of five (5) consecutive seven (7) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. There shall be no split shifts working in the shop or on the job site without prior approval of the Sheet Metal Workers' Local Union No. 40 Business Manager or Business Agent. "Classroom instruction offered by and on the premises of the Sheet Metal Workers' Industry Apprentice and Training Fund shall not constitute regular working hours under this Agreement."

3.   Overtime shall be paid at the rate of time and one half for all overtime with the exception of Sundays and holidays. Overtime for work performed on Sundays and holidays shall be at the rate of two (2) times the regular rate (double time).

4.   The Union reserves the right, if they so desire, to allocate to the Health, Pension, Apprentice and Training Fund, Supplemental Retirement Fund, or any other existing funds, any monies from the increase due, or at any other such times as increments are called for in the Collective Bargaining Agreement. The Union also reserves the right to change the Work Assessment and the Organizing Fund increments provided the total hourly contractual obligation to the contractor does not change from what is called for in Section 1 of the Addendum.

5.   All monies due under the provision of this Agreement shall be due and payable within ten (10) days of notification to the contractor of the allocations.

6.   Failure to make payment of monies described herein within ten (10) days shall constitute a violation of this Agreement, and the Union shall have the right to strike said delinquent Employer, and said work stoppage shall not be a violation of this Agreement.

7.   The Employer also agrees that all employees engaged in a work stoppage as described in the above clause shall be compensated in full for all time lost by the employees of the delinquent Employer.

8.   Wages at the established rates shall be paid in the shop or job site before noon on Thursday. Should Thursday be a holiday, employees shall be paid on or before quitting time on Wednesday. Failure to pay by noon on Thursday will be compensated for by one (1) hour's pay or one (1) hour off with pay at the rate the employee is earning.

9.     Any member that received an incorrect pay will be compensated for the incorrect amount not later than Friday in the same workweek that the shortage occurred.

10.     The Employer agrees that there will be no shutdown of his/her operation in either shop or job site on the day immediately following a holiday between Monday and Friday of any week unless:

        a)     Journeypersons and apprentice members employed by the Employer, vote at a **secret ballot** election held in the shop, and on each individual job, and conducted by the Shop Steward and/or the Job Steward, not to work on said day.

        b)     If the vote at a **secret ballot** election is taken in a timely manner, and some jobs vote to shutdown, including the shop, then the employees who voted to work may be assigned to work on projects that will remain open.

        c)     The General Contractor shuts the job down.

        d)     There is no work available in the shop or on the job site.

**ADDENDUM II**
**LAYOFF PROVISIONS**

1.     The Contractor shall be obligated to provide Sheet Metal Workers' Local Union #40 seven (7) hours notification of a layoff for any Local #40 member. The Employer shall be obligated to provide the Local #40 member with one (1) hour notification of a layoff and shall provide the employee the opportunity to leave the job site or shop at that time with the understanding that the employee will be paid in full for the full day's wages on the day the layoff occurs.

2.     When employees are selected to be laid off, they must be paid in full or they cannot be laid off. They will continue to report to work the next day and any and all other days until all wages are paid in full (excluding Saturdays, Sundays, and Holidays). Any violation of the section shall be subject to review and decision by the Joint Adjustment Board.

**ADDENDUM III**
**HEALTH, PENSION, SUPPLEMENTAL RETIREMENT FUND,**
**LABOR MANAGEMENT COOPERATION FUND AND OTHER FUNDS AS PER AGREEMENT**

1.     Contributions shall be due and billed as provided in Addendum III of this Agreement and the Employer agrees to be subject to and incorporate by reference herein all Trust Agreement provisions and Trust Fund rules, including those on bonding, collection, delinquency, and the Union's work stoppage authority, all as described in said Addendum III.

    The Employer agrees to accept and be bound by (1) the Agreement and Declaration of Trust under which each fringe benefit trust fund to which it contributes is maintained, the terms of which Agreement and Declaration of Trust are incorporated by reference as part of this Agreement, and (2) all rules and regulations of each of those fringe benefit trust funds regarding the collection of contributions, including but not limited to rules on posting of cash or surety bonds and payment of contributions, interest, costs of collection including the funds' attorney fees, and penalties.

In the event that an Employer is delinquent in the payment of the contributions, the Trustees of the respective funds and the Local Union may require the Employer to make contributions to the funds on a weekly schedule. The trustees and the Local Union may also require employers who are based outside of the jurisdiction of Local Union #40 to make contributions and reports on a weekly basis, without regard to the payment history of any such employers. There will be a single check disbursement for all Local Union #40 fringe benefit payments.

A contributing Employer to the Sheet Metal Workers' Local Union #40 Health, Pension, Apprentice and Training Fund, Supplemental Retirement Fund, Sheet Metal Workers' International Association Pension Fund, National Training Fund to the Sheet Metal and Air Conditioning Industry, Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States, and Sheet Metal Industry Fund, Inc., National Energy Management Institute, Sheet Metal Occupational Health Institute Trust, Stabilization Agreement of the Sheet Metal Industry, Sheet Metal Workers' Local Union #40 Office Assessment, Local Union #40 P.A.C., P.A.L., Labor Management Cooperation Fund, F.F.C., and Sheet Metal Scholarship Fund shall be considered delinquent if the monthly payments for the above mentioned funds are not paid on or before the twentieth (20th) day of the month following the month for which payment is due. A delinquent Employer shall be charged interest at a maximum legal rate per month on the unpaid balance. In the event that a delinquent account is referred to an attorney for collection, a reasonable attorney's fee shall be added to the principal and interest due thereon.

The Union may engage in a work stoppage against any Employer who shall fail to make any payment of fringe benefits once in any twelve month period due under the terms of this Agreement and such work stoppage shall not constitute a violation of this Agreement, and all time lost by all employees shall be compensated by the delinquent Employer.

2.    The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Health Fund at the rate of **(Appendix A or B )** per hour for each hour worked by all journeypersons, at the rate of **(Appendix A)** per hour worked by all registered apprentices working on Davis-Bacon (Prevailing Wage) job sites, and at the rate of **(Appendix C)** per hour for each hour worked by other Sheet Metal Workers' Local Union #40 apprentices in his/her employ. Such contributions shall be forwarded by the Employer to the Sheet Metal Workers' Local Union #40 Health Fund no later than the twentieth (20th) day of the following month for which contributions are made.

The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Health Fund at the rate of ONE DOLLAR AND TWENTY-FIVE CENTS ($1.25) per hour for each hour worked by (a) all pre-apprentices in his/her employ, and (b) all apprentices in his/her employ who started as pre-apprentices and have not yet become eligible for active members' benefits under the Health Fund, except that the Employer shall pay such rate on at least 125 hours per month for each such pre-apprentice or apprentice employed in any given month.

Those contributions shall be used to provide health benefits to pre-apprentices, but not for their families, in such amounts, at such times and on such terms as may be determined by the trustees of the Health Fund.

3.    The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Pension Fund at the rate of **(Appendix A or B)** per hour for each hour worked by all journeypersons, at the rate of **(Appendix A)**

per hour for each hour worked by all registered apprentices working on Davis-Bacon (Prevailing Wage) job sites, and at the rate of **(Appendix C)** per hour for each hour worked by other Sheet Metal Workers' Local Union #40 apprentices in his/her employ. Such contributions shall be forwarded by the Employer to the Sheet Metal Workers' Local Union #40 Pension Fund no later than the twentieth (20th) day of the month following the month for which contributions are made.

4.    The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Supplemental Retirement Fund at the rate of **(Appendix A or B)** per hour for each hour worked by all journeypersons, at the rate of **(Appendix A)** per hour subject to applicable legal limits for each hour worked by all registered apprentices working on Davis-Bacon (Prevailing Wage) job sites, and at the rate of **(Appendix C)** per hour for each hour worked by other Sheet Metal Workers' Local Union #40 apprentices in his/her employ. Such contributions shall be forwarded by the employer to the Sheet Metal Workers' Supplemental Retirement Fund no later than the twentieth (20th) day of the month following the month for which the contributions are made.

5.    A. For all work on and after July 1, 1998, the Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Labor Management Cooperation Fund at the rate of **(Appendix A or B)** per hour for each hour worked by all Journeyperson Sheet Metal Workers in his/her employ. Such contributions shall be forwarded by the Employer to the Sheet Metal Workers' Local Union #40 Labor Management Cooperation Fund, in care of the **Business Office of Sheet Metal Workers' Local Union #40, 100A Old Forge Road, Rocky Hill, CT 06067**, no later than the twentieth (20th) day of the month following the month for which contributions are made.

B.    The Employer agrees to be subject to and incorporate by reference herein provisions of the Sheet Metal Workers' Local Union #40 Labor Management Cooperation Fund Trust Agreement and all Trust Fund rules, including those on bonding, delinquency, and the Union's work stoppage authority, all as described in said Trust Agreement rules or in Addendum III of this Agreement.

6.    The Employer shall report hours worked by the seventh (7th) of each month. Monies due per the monthly bill from the Sheet Metal Workers' Local Union #40 Fringe Benefit Office are due and payable by the twentieth (20th) of each month for all hours worked by all covered employees, and should be sent to the **Sheet Metal Workers' Local Union #40 Fringe Benefit Fund Office, 100 Old Forge Road, Rocky Hill, CT 06067.**

7.    The Employer shall pay monthly to the Sheet Metal Workers' International Pension Fund at the rate of **(Appendix A or B)** per hour for each hour worked by all journeypersons and apprentice Sheet Metal Workers in his/her employ. Such contributions shall be forwarded to the Sheet Metal Workers' International Pension Fund no later than the twentieth (20th) day of the month following the month for which contributions are made. The Employer agrees to remit payments to the **Sheet Metal Workers' National Benefits Fund, P. O. Box 79321, Baltimore, MD 21279-0321** for each employee covered by the said Collective Bargaining Agreement according to the Standard Form of Participation Agreement.

8.    Notwithstanding any other provisions of this Agreement, for the purpose of the provisions of Addendum III, Health, Pension and Supplemental Retirement Fund Contributions, regarding contributions by the Employer to the Sheet Metal Workers' Local Union #40 Pension Fund (the "Pension Fund"), to the

19

Sheet Metal Workers' Local Union #40 Supplemental Retirement Fund and to each other local or national fringe benefit fund referred to in this Addendum III, persons in the employ of the Employer who qualify as "Sheet Metal Superintendents" shall be members of the bargaining unit and shall be covered by this Agreement. The term "Sheet Metal Superintendents" shall include each person, who is a member of the Union working in a capacity, which contributes, to the sheet metal trade and the work covered by this Agreement.

Contributions for Sheet Metal Superintendents shall be subject to the administrative rules of the Funds regarding acceptance or return of contributions, as the fund may deem necessary to protect its status for tax purposes, reporting of contributions and auditing of payroll records.

9.    To insure uniform compliance with the Wage and Fringe Benefit provisions of this Agreement, the parties agree that a Representative of the Union/Management, or any auditor designated by the Union/Management shall have the right to review all payroll, monthly fringe benefit reports (for either or both home and job site local), time tickets, etc. necessary to validate compliance with the wage equalization provisions of this Agreement.

Such review shall be made only after written notice to the individual employer under review and shall not unduly interfere with the operation of the employer. This requirement shall be applicable to all contractors bound by the Collective Bargaining Agreement, including out-of-town contractors who perform work in the area under a Participation Agreement or Reciprocal Agreement.

## ADDENDUM IV
## TRAVEL EXPENSE

Travel pay shall be paid at the Internal Revenue Service Standard Rate per mile, for all miles over fifteen (15) miles. This will be a true free zone with no mileage paid inside the fifteen (15) mile zone. Maximum travel expense per day will not exceed ten dollars and fifty cents ($10.50).

Example: If the job site is eighteen (18) miles from the employee's home or shop, whichever is closer, mileage would be 18 miles minus the 15 mile free zone equals 3 miles times the adjusted rate per mile times 2 ways (back and forth).

(A)    Travel expense rate per mile will be reviewed on January 1st of each year of this Agreement and will be adjusted to meet the Internal Revenue Standard Rate.

| January 2001 | January 2002 | January 2003 | January 2004 | January 2005 |
|---|---|---|---|---|
| $0.345 per mile | $0.365 per mile | $____ per mile | $____ per mile | $____ per mile |

(B)    All miles shall be measured in miles actually traveled by the shortest practicable route.

(C)    The Employer agrees to pay all tolls paid by each employee traveling over the shortest practicable route to the job.  No tolls shall be paid by the Employer when the job is within the fifteen (15) mile free zone.

(D)    No man shall be permitted to ride on any truck except in the cab of said truck, or when the truck is equipped to carry passengers according to the state law.

## ADDENDUM V
## ROOM AND BOARD

1.    Room and Board will not be paid within the jurisdiction of Local Union #40.

2.    Room and Board, both of good quality, shall be paid for by the Employer on a seven (7) day basis to all employees actually rooming and boarding at or near a job site.

3.    A sum sufficient to meet expenses shall be advanced to all employees sent out on Room and Board jobs.

4.    Employees traveling to and from a Room and Board job shall be compensated  at the Internal Revenue Service Standard Rate per mile at the start of the job, completion of the job, any interruption of the job, or the Employer shall furnish good quality transportation to and from the job.

5.    Employees traveling to and from a Room and Board job shall be compensated for time spent traveling at the regular hourly rate at the start of the job, completion of the job, and any interruption of the job.

## ADDENDUM VI
## UNION STEWARDS

1.    The Union Steward, on the job or in the shop,  shall be appointed by the Business Manager.

2.    A Steward in the shop shall have three (3) years of employment with the Employer to be eligible, unless there are no other Journeypersons available.

3.    Each such Steward, if qualified to perform the work, shall be the last person other than the Foreman to be discharged.

4.    The Union Steward shall not be discriminated against, transferred from the job site or shop without the permission of the Business Manager or Business Representative or discharged for the performance of duties as such working steward.

5.    Any dispute arising over the interpretation of this Section shall be subject to adjustment under the provisions of ARTICLE X of the Standard Form of Union Agreement within forty-eight (48) hours.

(a)    It is further agreed that there shall not be work or compensation stoppage for the Steward until such meeting is held and a decision is made.

21

6.      No Steward shall have the authority to stop any work.

7.      The Steward, if qualified to perform the work, shall be employed on all overtime worked in the shop or on the job where he/she is acting as Steward. However, the Steward shall not replace any employees already working on the job, whether in the shop or on the job.

8.      The Employer shall be notified by the Union when Stewards are appointed.

9.      The Stewards, both in the shop or on the job, shall be the first person other than the Foreman to return to work in the shop or on the job after a layoff or temporary interruption of work, which consists of less than thirty (30) regular working days, unless the Steward is elsewhere employed at the time work resumes.

10.     The Shop Steward will be provided information on territories of jobs, job numbers, and local union areas.

## ADDENDUM VII
## FOREMEN (MEN/WOMEN)

1.      It is mutually agreed that the minimum pay for Foremen (Men/Women) shall be paid at four per cent (4%) over the total package. Also, that General Foremen (Men/Women) shall be paid at seven per cent (7%) over the total package on all wage rates.

2.      Any or all foremen (Men/Women) shall be a Sheet Metal Journeyperson, and NOT from another craft.

3.      All Contractors working within the jurisdiction of Local #40 signatory to any Sheet Metal Workers' International Association and Standard Form of Agreement, shall employ at least one (1) Journeyperson member of Local #40 as a Foreman (Man/Woman).

4.      The ratio of Foremen is as follows:

    For every six (6) sheet metal workers on a job site, one shall be a Foreman. A second (2nd) Foreman will be added on the job site when there are twelve (12) sheet metal workers on the job site.

5.      The ratio of General Foremen is as follows:

    For every sixteen (16) sheet metal workers on a job site, not including the foremen, a General Foreman will be appointed to oversee the project.

6.      Employers agree that all General Foremen and Foremen are covered by all terms and conditions of the Collective Bargaining Agreement.

7.      Nothing in the language shall be construed to mean that the Contractor cannot pay more than the agreed percent for General Foremen and Foremen.

## ADDENDUM VIII
## OWNER/MEMBER PROVISION

1. Bargaining unit employees hereunder shall include Owner/Members, defined to mean employees of incorporated employers who: (a) are officers, directors, or majority stockholders, (or spouses, children of officers, directors or majority stockholders) of an incorporated employer, and (b) perform work covered by the terms of this Agreement, and (c) are listed on a registration statement filed with the Sheet Metal Workers' Local Union #40 Funds Office. Contributions on behalf of owner/members shall be made to the Sheet Metal Workers' Local Union #40 Health Fund, the Sheet Metal Workers' Local Union #40 Pension Fund, the Sheet Metal Workers' Local Union #40 Supplemental Retirement Fund, the Sheet Metal Workers' Apprentice and Training Fund, and the Sheet Metal Industry Fund, Inc. for all hours on and after November 1, 1996 for which the owner/member is paid or entitled to payment, except the minimum number of hours on which contributions are made shall be:

    (A) Thirty-five (35) hours per week, for at least 50 weeks per calendar year of employment, or

    (B) Ninety-six (96) hours per month, for a first-time owner/member during his company's first twenty-four (24) months as a contractor signatory to a collective bargaining or participation agreement in the sheet metal industry anywhere in the United States.

A first-time owner/member is an individual employed by a company that has been a signatory contractor for less than twenty-four (24) months, and who has never before been contributed on as an owner/member to said Health, Pension, Supplemental Retirement, Apprentice and Training or Industry Fund.

2. Owner/members are those who perform work covered by the terms of this Agreement and are listed on the registration statement filed with Sheet Metal Workers' National Pension Fund. Contributions on behalf of owner/members shall be made to the National Pension Fund for all hours for which the owner/member is paid or entitled to payment. In any event, however, no less than minimum regular hours per week as required by this Agreement for all bargaining unit employees shall be paid. The term "minimum regular hours per week" shall be defined as the number of hours per week for which an employee received straight time wages.

3. The signatory contractors who fall under the category of owner/member shall be subject to special rules and provisions established from time to time by the trustees of Sheet Metal Workers' Local Union #40 Fringe Benefit Funds that are applicable only to this classification of signatory contractors.

## ADDENDUM IX
## SHEET METAL INDUSTRY APPRENTICE AND TRAINING FUND

1. The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Industry Apprentice and Training Fund at the rate of **(Appendix A or B)** per hour for each hour worked by all Journeypersons, at the rate of **(Appendix A)** per hour worked by all registered apprentices working on Davis-Bacon (Prevailing Wage) job sites, and at the rate of **(Appendix C)** per hour for each hour worked by other

Sheet Metal Workers' Local Union #40 apprentices in his/her employ. Such contributions shall be forwarded by the employer to the Sheet Metal Industry Apprentice and Training Fund no later than the twentieth (20th) day of the following month for which contributions are made. This fund shall be used to conduct programs of Industry Education, and Training; such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical skills and job opportunities for Journeypersons and Apprentice Sheet Metal Workers. Such fund shall be administered and controlled jointly by a committee of an equal number of Employer and Union Trustees as provided by Section 302(c) of the Taft-Hartly Act.

2.  There shall be instituted a four (4) year Apprenticeship Training Program for all apprentices. All Local Fringe Benefits for all apprentices will be pro-rated by the percentage of earnings in the Apprenticeship Program **(Appendix C).**

3.  It is mutually agreed that the 3 to 1 Apprentice ratio shall not be exceeded in either shop or job site.

## ADDENDUM X
## AIR HANDLING EQUIPMENT

1.  In the temporary operation of this equipment (fans, blowers) in a new building or addition to an existing building shall be the jurisdiction of Sheet Metal Workers' Local Union #40.

2.  If the equipment is accepted by the owner or their representative, the Union agrees to relinquish their jurisdiction.

3.  Where other mechanical trades relinquish their jurisdiction over temporary operation of the equipment, the Union agrees to also waive this requirement.

## ADDENDUM XI
## SHIFT WORK

1.  15% increase of money in envelope ~ 2nd shift.
    20% increase of money in envelope ~ 3rd shift.

    Shift work to be considered Monday through Friday only, with a minimum of three (3) days. Any signatory contractor to this Agreement may utilize their existing work force for the 2nd or 3rd shift. If the employer utilizes existing employees for the 2nd or 3rd shift, they must replace that employee from the Union Office for the 1st shift. The Employer will have the right to refuse the first referral. Foremen (men/women) for shift work shall be supplied by the employer. Referral employees shall remain employed until an equal reduction in the work force from the 2nd or 3rd shift takes place. Not withstanding, the foregoing, it may be necessary to schedule work and it may be performed in a manner that causes the least disruption to the project. Therefore, the purpose is that a second shift and/or third shift may be established as the first shift. This may require an adjustment of the starting time of those shifts – only with documentation of bid conditions and with the permission of the Business Manager or the Business Representative.

2.  Shift work provisions for Addendum XXVIII work shall be the same shift work provisions applicable in this Addendum.

### ADDENDUM XII
### REFERRAL SYSTEM

Every 5th new hire will be referred to the Contractor by Sheet Metal Workers' Local Union #40 Business Office. The Contractor will have the right to refuse the first referral. After the first referral, and in the event the Contractor and the local union cannot agree on acceptance of a referral by the local union, the matter will be referred to the Local Joint Adjustment Board for resolution.

### ADDENDUM XIII
### PRODUCTION WORK

The Employer who desires to engage in production work in his/her shop shall be subject to the terms of this Agreement, unless he/she shall negotiate with the Union a plan or agreement which will modify or amend the terms of this Agreement.

### ADDENDUM XIV
### MISCELLANEOUS

1.  Any Contractor working within the jurisdiction of Local Union #40 shall provide a suitable shanty on all job sites where there are over ten (10) employees for thirty (30) days or more. The shanty shall be heated during the months of November through March if job conditions can support an approved heat supply.

2.  There will be a ten (10) minute coffee break between the hours of 7:00 A.M. and 12:00 P.M.

3.  Parking, in the metropolitan areas only, shall be paid by the Employer upon presentation of stamped receipt for parking expense. Parking will be paid on the basis of the least expensive parking available within the metropolitan area where the job site is located.

4.  It is mutually agreed that all employers shall provide adequate tool chests or sheds on the jobs in the field, so that Employer's and employee's tools can be safely and reasonably stored when not in use. If the company's tool chest or shed is broken into and personal tools and toolboxes are stolen, in order to be eligible for tool replacement under the terms of this agreement, a police report indicating the stolen items must be filed with the local police department.

- Only those tools specified in **(Appendix D)** will be eligible for replacement under this addendum.
- Tool replacement shall not exceed $300 per employee.
- Employees are responsible for replacement of tools and reimbursement for lost tools will be made to the employee by the employer upon submittal of receipts for the purchase of stolen tools. Where agreeable, the employer may reimburse the tools lost directly to the employee by replacing the stolen tool with a like or similar tool.

5.   The Employer will provide first aid kits on all job sites and shop areas.

6.   It is mutually agreed that journeypersons and apprentice sheet metal workers shall abide by all OSHA regulations.

7.   It is mutually agreed that safety job box meetings will be held.

8.   The Business Representatives of the Union shall have the privilege, at all times, of going through shops or premises or buildings where work is being performed in order to examine the cards of members employed there and transact any other business he/she may have to perform.

9.   It is agreed that this Agreement shall not be entered into with any but duly recognized sheet metal contractors. A duly recognized sheet metal contractor shall be interpreted to be any sheet metal contractor capable of performing work covered in Article I, Section 1 of the Standard Form of Union Agreement.

10.  Computer language ~ The preparation of all required forms or computer take-off sheets taken from architectural and engineering drawings or shop and field sketches, the inputting of information into the computer after it has been prepared shall be the responsibility of the sheet metal workers. The operation of the cutting table, including the installation of punch tapes, shall be the responsibility of the sheet metal workers.

11.  In the event that the Employer or Contractor is not subject to the Unemployment Compensation Act of the State of Connecticut, he/she shall voluntarily subject themselves to the provisions of said Act as provided therein, and he/she shall continue to be subject to its provisions throughout the life of this Agreement.

12.  The Employer or Contractor agrees that he/she shall carry Workmens' Compensation throughout the life of this Agreement as specified in the statutes of the state of Connecticut, regardless of the number of employees. The Employer shall cause certificates of liability to be filed with the Union by an insurance carrier recognized to do business in the state of Connecticut.

13.  Whenever possible, the Contractor shall post the wage rates for any Resolution #78 conditions on the job site and must post the wage rates in the shop.

14.  No journeyperson or apprentice shall be required to go through a legally established picket line. No employee shall be disciplined or discharged for such refusal.

15. The Employer agrees to employ only Union sheet metal workers for the intermittent operation of electrical hoists used for any work described in Article I, Section 1 of the Standard Form of Union Agreement.

16. When air pollution control systems are fabricated and installed for the purpose of removing air pollutants, excluding HVAC systems within the jurisdiction of the Sheet Metal Workers' Local Union #40, the higher wage scale of the jobsite union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

## ADDENDUM XV
## PROJECT REPORTING FORMS

1. The Employer agrees that they will report to the Union Office all projects undertaken on the forms provided by the Union for that purpose.

2. Reporting forms will contain the following information:

> Job name and location
> General contractor
> Mechanical contractor
> Description of work
> Private or public sector

3. Reporting forms will be submitted to the Union office (Fax or Mail) before the start of the project.

## ADDENDUM XVI
## STABILIZATION AGREEMENT OF SHEET METAL INDUSTRY

1. It is agreed that the Employer shall make monthly payments of an amount equal to three percent (3%) of the gross earnings of each employee subject to this Agreement to the National Stabilization Agreement of Sheet Metal Industry (SASMI). Gross earnings, for the purpose of this Agreement, shall mean (a) total wages paid to an employee by the Employer which is reportable by the employee for Federal Income Tax purposes, and (b) any and all contributions paid by such Employer on behalf of the employee to a Pension, Supplemental Retirement, and/or Health Fund.

2. The Employer agrees to adopt the National SASMI Trust as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time, and to sign the Standard Participation Agreement prescribed by the Trustees as a condition of becoming party to and participant in such Trust.

3. The Employer shall pay the (3%) of the gross earnings based on (a & b) of Section one (1) of this addendum to the Stabilization Agreement of the Sheet Metal Industry Fund at the rate of (**Appendix A**

**or B)** per hour for each hour worked by all journeypersons at the rate of **(Appendix A)** per hour worked by all registered apprentices working on Davis-Bacon (Prevailing Wage) job sites, and at the rate of **(Appendix C)** per hour for each hour worked by other Sheet Metal Workers Local Union #40 apprentices in his/her employ. Such contributions shall be forwarded by the employer to (SASMI) no later than the twentieth (20th) day of the month following the month for which contributions are made. The employer agrees to remit payment to **Sheet Metal Workers' National Benefits Fund, P. O. Box 79321, Baltimore, MD 21279-0321.**

### ADDENDUM XVII
### SCHOLARSHIP FUND

The Employers will contribute to the Scholarship Foundation, Inc. per **(Appendix A, B or C)** per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made before the twentieth (20th) day of the succeeding month and shall be remitted to the **Sheet Metal Workers' National Benefits, P.O. Box 79321, Baltimore, MD 21279-0321.**

### ADDENDUM XVIII
### UNION OFFICE ASSESSMENTS ~ JOURNEYPERSONS

The Employer shall deduct Union Office Assessments **(Appendix A or B)** for each hour worked for all journeyperson sheet metal workers in their employ. The Union reserves the right to allocate and administer **(Appendix A or B)** from the Union Office Assessment for whatever is determined by the Union for the Youth-to-Youth Program (Organizing Fund). This deduction shall be made from envelope wages and shall be forwarded to the **Business Office of Sheet Metal Workers' Local Union #40, 100A Old Forge Road, Rocky Hill, CT 06067**, no later than the twentieth (20th) day of the month following the month for which contributions are made.

### ADDENDUM XIX
### P.A.L.

The Employer agrees to honor political contribution deduction authorizations from its employees who are Union members. A form will be provided for the member by the Local Union for this purpose. This deduction of $0.02 for each hour worked from the envelope wages shall be forwarded to the **Business Office of Sheet Metal Workers' Local Union #40, 100A Old Forge Road, Rocky Hill, CT 06067** no later than the twentieth (20th) day of the month following the month for which contributions are made.

### ADDENDUM XX
### SHEET METAL WORKERS' LOCAL UNION #40 P.A.C.

The Employer agrees to honor political contribution deduction authorizations from its employees who are Union members. A form will be provided for the member by the Local union for this purpose. This deduction of $0.02 for each hour worked from the envelope wages shall be forwarded to the **Business Office of Sheet Metal Workers' Local Union #40, 100A Old Forge Road, Rocky Hill, CT 06067** no later than the twentieth (20th) day of the month following the month contributions are made.

## ADDENDUM XXI
## INTEGRITY CLAUSE

1.  A "bad – faith Employer" for the purposes of this Agreement is an Employer that itself, or through a person or persons subject to an owner's control, has ownership interests (other than a non-controlling interest in a corporation whose stock is publicly traded) in any business entity that engages in work within the scope of SFUA Article I, using employees whose wage package, hours and working conditions are inferior to those prescribed in this Agreement or, if such business entity is located or operating in another area, inferior to those prescribed in the Agreement of the sister local union affiliated with Sheet Metal Workers' International Association, AFL-CIO in that area.

2.  An Employer is also a "bad – faith Employer" when it is owned by another business entity as its direct subsidiary or as a subsidiary of any other subsidiary within the corporate structure thereof through a parent-subsidiary and/or holding-company relationship, and any other business entity within such corporate structure is engaging in work within the scope of SFUA Article I, using employees whose wage package, hours and working conditions are inferior to those prescribed in this Agreement or, if such other business entity is located or operating in another area, inferior to those prescribed in the Agreement of the sister local union affiliated with Sheet Metal Workers' International Association , AFL-CIO in that area.

3.  Any Employer that signs this Agreement or is covered thereby by virtue of being a member of a multi-employer bargaining unit expressly represents to the Union that he/she is not a "bad – faith Employer" as such term is defined in Section 1, hereinabove and, further, agrees to advise the Union promptly if at any time during the life of this Agreement said Employer changes its mode of operation and becomes a "bad – faith Employer". Failure to give timely notice of being or becoming a "bad – faith Employer" shall be viewed as fraudulent conduct on the part of such Employer.

4.  In the event any Employer signatory to or bound by this Agreement shall be guilty of fraudulent conduct as defined above, such Employer shall be liable to the Union for liquidated damages at the rate of $500.00 per calendar day from the date of failure to notify the Union until the date on which the Employer gives notice to the Union. The claim for liquidated damages shall be processed as a grievance in accordance with, and within the time limits prescribed by, the provision of SFUA Article X.

## ADDENDUM XXII
## RECOGNITION CLAUSE

In as much as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the employees decertify the Union as their exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request a NLRB election and expressly waives any right it may have to do so.

## ADDENDUM XXIII
## SUB-CONTRACTING

1.    The Employer shall not sub-contract, sublet, delegate or assign to any firm, individual or corporation outside the jurisdiction of the Union, any work covered under Article I, Section 1 of the Standard Form of Union Agreement, except with the written consent of the Union.

2.    When signatory contractors in the Local Union #40 area sub-contract to other signatory contractors (in the jurisdiction of Sheet Metal Workers' Local Union #40) they will be required to provide notification of such sub-contracting to the Business Manager or the Business Agent of the Local Union. Nothing in this language shall be construed to mean that the Contractor must obtain permission to sub-contract. The objective of this language is solely for purposes of advising the local union that sub-contracting work to other signatory contractors is taking place.

## ADDENDUM XXIV
## FAVORED NATIONS CLAUSE

Should it be found that more favorable conditions exist for work to be performed within jurisdiction of Sheet Metal Workers' Local Union #40, then said conditions shall be made available to all signatory contractors performing work of a similar nature. The conditions of the Favored Nations Clause shall be applicable to all categories of work covered under the terms and conditions of this collective bargaining agreement.

## ADDENDUM XXV
## NON-DISCRIMINATION POLICY

There shall be no discrimination in the referral, hiring, placement, classification, upgrading, layoff or termination of employment of any person by reason of race, creed, color, sex, national origin, membership or non-membership in the Union. **(JANUARY 27, 1995)**

## ADDENDUM XXVI
## ARCHITECTURAL/SHEET METAL MAKE-UP DAY

With respect to the Architectural/Sheet Metal Work performed under this Agreement, the following terms and conditions shall apply:

A)    Effective October 1st through May 15th of each year, a "Saturday Make-Up Day" will be provided for Local Union #40 employees of Local Union #40 area Architectural Sheet Metal contractors only, who lose in the field, seven (7) or more hours in a given work week due to inclement weather.

B)    Resolution #78 will be available through the Local Union #40 Business Manager or Agent between May 16th and September 30th of each year for a make-up day in the field for projects within the Local Union #40 jurisdiction only.

C)    The rate of pay on such "Saturday Make-Up Day" shall be at the rate of time and one half for the first three and one half hours of the day, and straight time for the next three and one half hours of the day.

D)    The "Saturday Make-Up Day" shall be a full seven (7) consecutive hours. Employees working on the project for which a "make-up day" is required shall be given the first opportunity for working the "make-up day". No employee shall be penalized in any fashion for refusal to work on the "Saturday Make-Up Day".

## ADDENDUM XXVII
## TESTING AND BALANCING

Testing and balancing uses a specialized field of Local Union #40 employees, therefore all aspects of the Union Agreement as written for sheet metal workers may or may not apply to testing and balancing employees and the testing and balancing contractors. There are certain areas, especially as follows, that should be incorporated since they apply strictly to the testing and balancing employees and the testing and balancing contractors:

1.    The regular working day shall consist of seven (7) hours labor on the job site between 6:00 A.M. and 6:00 P.M.

2.    Testing and balancing apprentices will adhere to the specialized apprentice program as established by the JATC and the testing and balancing JATC subcommittee. The JATC, apprentices, and contractors will adhere to the typical work experience and related training as per "Connecticut State Apprentice Council Testing and Balancing Technician DOT #007.181.010" as submitted and approved.

3.    Apprenticeship ratio typically is 1:1 for testing and balancing contractors since the majority of projects require only one technician and thus any training of apprentices would be a one to one basis. The requirement for apprentices is usually based upon the project size and the future requirements for trained testing and balancing technician journeypersons.

4.    Travel expenses for employees of testing and balancing contractors shall be as follows:

The Testing and Balancing employer agrees to compensate employees driving their personal vehicle at the Internal Revenue Service Standard Rate per mile each way for all miles traveled from shop to job, or home to job, whichever is less. The schedule is based on a full seven (7) hour day on the job or in the shop.

Travel expense will be revised on January 1st of each year of this Agreement with rate per mile adjusted to meet the Internal Revenue Service Standards.

It shall be permissible for the employee to transport the instruments, tools, balancing devices, and a stepladder necessary to perform the balancing procedures, in the employee's vehicle. Said instruments and tools are to be provided by the Employer except those set forth as hand tools in Appendix D of this Agreement. Each employee shall sign out for the instruments and shall be fully responsible for their return when not in use.

The Contractor may furnish employees with contractor owned vehicles. Employees furnished with Contractor owned vehicles that are used daily for traveling from home to job or shop and from job or shop to home shall not be paid mileage providing the Contractor pays all expenses for that vehicle. The full seven (7) hour day on the job still applies.

## ADDENDUM XXVIII
## RESOLUTION #78
## MARKET PROGRAM

1.  All signatory contractors bidding work under the terms and conditions of this addendum must advise the Business Manager or Business Agent of Sheet Metal Workers' Local Union #40 prior to the bid date. Any signatory contractor securing work under the terms and conditions of this addendum must advise the Business Office of Sheet Metal Workers' Local Union #40 of the project on a form provided for this purpose by the Union Business Office.

2.  There shall be no work stoppages or jurisdictional disputes on projects covered under this Addendum.

3.  Work covered under this addendum shall not exceed $500,000 for any given HVAC project on which there is open shop competition. In the event that the provisions of this addendum are not sufficient to meet open shop competition on projects beyond the defined scope of this addendum, the Business Manager or Business Agent of Sheet Metal Workers' Local Union #40 shall be empowered under the terms of Resolution #78 to extend the provisions of this addendum. There shall be no Resolution #78 Relief granted with respect to contributions to the Sheet Metal Industry Fund, Inc.

4.  Under the terms of this addendum there shall be an eight (8) hour work day and forty (40) hour work week for HVAC projects.

5.  There shall be no travel provisions (travel expense) under this addendum.

6.  On all projects covered by this addendum the journeyperson/apprentice ratio shall be on a one to one (1:1) basis.

7.  Local #40 members manning this work shall first be utilized from the employer's existing work force if possible. All new hires working on projects covered by this addendum, will be by referral from the Business Manager or Business Representative of the Local Union Office.

8.  The total journeyperson contractual obligation of the contractor employing workers under this addendum shall be at the rate of **(Appendix B).**

9.  The total apprentice contractual obligation of the contractor employing workers under this addendum shall be at the rate of **(Appendix C).**

10. In the event there is any misuse of this addendum, the employer in question shall pay all attorney, audit and collection fees. The employer shall also pay all wages and fringe benefits as per the Building Trades Agreement (Master Agreement), plus a 25% fine based on the total package differential, with all fines going to the Sheet Metal Local #40 Industry Apprentice and Training Fund.

11.   With respect to the Architectural/Roofing Contractors, the following provisions shall apply under this addendum:

    a)    Work covered under this addendum at the wage rate called for in **(Appendix B)** of this agreement shall be limited to gutters and leaders.

    b)    On architectural sheet metal work covered under this addendum, the work shall consist of five (5) consecutive seven (7) hour days totaling thirty-five (35) hours on the job site, and there shall be no travel pay provisions for this type of work.

    c)    In order to expand the Architectural/Roofing Provisions, the contractor must submit a request for Resolution #78 to the Local Union Business Manager.

12.   Labor and Management agree to review the terms and conditions of this addendum at least annually. In the event Labor and Management cannot agree to any new terms and conditions in this addendum, the resolution of any unresolved issues shall be submitted to the NJAB for resolution by either party.

# SIGNATURE PAGE

A.SH.RC. of Connecticut

Specify Name of Association or Contractor

**Local Union #40**
of Sheet Metal Workers'
International Association

By C. )hitibell Sorense

Signature of Officer or Representative

Signature of Officer or Representative

In witness whereof, the Parties hereto affix their signatures and seal this _____

Date

Day of _____               _____
        Month                  Year

## ADDENDUM 1 ~ 28

## APPENDIX A, B, C, and D

35

# APPENDIX A

## Wages are effective July 1, 2001
## Term of Contract is July 1, 2001 – June 30, 2005

**Envelope**                                          **$25.47**
Deductions from envelope:
Union Office Assessment.............................         .70
**Total Assessment**                                        **.70**
**Total Envelope Deduction**                          **$0.70**

**Local Fringe Benefits**
Local Health Fund.............................................         5.55
Local Pension....................................................         2.97
Local Pension COLA...........................................         .36
S.R.F.(Annuity)..................................................         2.50
Equity Fund Lab/Man. Cooperation Fund   ..........         .80
Local Appr. & Tr. Fund.........................................         .61
Local Industry Fund............................................         .34
National Industry Fund.........................................         .07
  Found. Fair Contracting.....................................         .05

**International Fringe Benefits**
SASMI................................................................         1.12
National Pension................................................         .51
National Funds...................................................         .18
**Total Package**                                       **$40.53**

# APPENDIX B

# Resolution "78" Market Program

| | |
|---|---:|
| Envelope....................................... | $ 19.10 |
| Union Office Assessment................ | .50 |
| **Total** | **18.60** |

**Local Funds**

| | |
|---|---:|
| Local Health Fund.......................... | 4.85 |
| Local Pension................................. | 2.59 |
| S.R.F.(Supplemental Retirement Fund) | 2.18 |
| Local Appr. & Tr. Fund.................. | .53 |
| Local Industry Fund....................... | .29 |
| National Industry Fund.............. | .07 |

**International Association Benefits**

| | |
|---|---:|
| SASMI........................................... | .88 |
| National Pension............................ | .51 |
| National Funds.......................... | .18 |
| **Total Package** | **$ 31.18** |

- **Envelope Rate is 75% of the Full Package Envelope Rate**

- **All Local Fringe Benefits Based on Forty Hour Contribution Per Hour Rate**

- **All National Funds Paid in Full**

- **Any increase to any Local or National Funds the appropriate increase will be added to this Package**

# APPENDIX "C"

## *SHEET METAL WORKERS LU #40*
### PRORATED APPRENTICE BENEFITS

EFFECTIVE DATE:     JULY 1, 2001 THROUGH JUNE 30, 2002

| % | POCKET WAGES (ENVELOPE) | LOCAL FRINGE BENEFITS | | | | | | | NATIONAL FRINGE BENEFITS | | | | TOTAL WAGES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | *HEALTH FUND* | *LOCAL PENSION & COLA* | *S.R. FUND* | *LOCAL A & T* | *LOCAL INDUST* | EQUITY FUND | F.F.C. | NATL PENSION | SASMI 3% | NATL FUNDS | NATL INDUS | |
| 40% | $10.19 | $2.22 | $1.33 | $1.00 | $0.24 | $0.14 | $0.00 | $0.05 | $0.51 | $0.46 | $0.18 | $0.07 | $16.39 |
| 45% | $11.46 | $2.50 | $1.50 | $1.13 | $0.27 | $0.15 | $0.00 | $0.05 | $0.51 | $0.51 | $0.18 | $0.07 | $18.33 |
| 50% | $12.74 | $2.78 | $1.67 | $1.25 | $0.31 | $0.17 | $0.00 | $0.05 | $0.51 | $0.57 | $0.18 | $0.07 | $20.28 |
| 55% | $14.01 | $3.05 | $1.83 | $1.38 | $0.34 | $0.19 | $0.00 | $0.05 | $0.51 | $0.62 | $0.18 | $0.07 | $22.22 |
| 60% | $15.28 | $3.33 | $2.00 | $1.50 | $0.37 | $0.20 | $0.00 | $0.05 | $0.51 | $0.68 | $0.18 | $0.07 | $24.17 |
| 65% | $16.56 | $3.61 | $2.16 | $1.63 | $0.40 | $0.22 | $0.00 | $0.05 | $0.51 | $0.73 | $0.18 | $0.07 | $26.11 |
| 70% | $17.83 | $3.89 | $2.33 | $1.75 | $0.43 | $0.24 | $0.00 | $0.05 | $0.51 | $0.79 | $0.18 | $0.07 | $28.06 |
| 75% | $19.10 | $4.16 | $2.50 | $1.88 | $0.46 | $0.26 | $0.00 | $0.05 | $0.51 | $0.84 | $0.18 | $0.07 | $30.00 |
| 80% | $20.38 | $4.44 | $2.66 | $2.00 | $0.49 | $0.27 | $0.00 | $0.05 | $0.51 | $0.90 | $0.18 | $0.07 | $31.95 |
| 90% | $22.92 | $5.00 | $3.00 | $2.25 | $0.55 | $0.31 | $0.00 | $0.05 | $0.51 | $1.01 | $0.18 | $0.07 | $35.84 |
| 100% | $25.47 | $5.55 | $3.33 | $2.50 | $0.61 | $0.34 | $0.80 | $0.05 | $0.51 | $1.12 | $0.18 | $0.07 | $40.53 |

NOTES:

ALL UNDERLINED & BOLD ITALIC CONTRIBUTIONS LISTED ABOVE ARE TO BE PRO-RATED AT APPRENTICES' CURRENT PERCENTAGE

SASMI'S CONTRIBUTIONS ARE CALCULATED ON (1) POCKET WAGES (2) HEALTH FUND (3) ANNUITY FUND (4) LOCAL & NATIONAL PENSION & COLA FUNDS

NO WORK ASSESSMENT OR DUES ARE TO BE DEDUCTED FROM APPRENTICES' WAGES

APPRENTICES ARE NOT SUBJECT TO ANY WAGE REDUCTIONS IN REGARDS TO RESOLUTION #78, ADDENDUM #28, DAVIS-BACON (PREVAILING WAGE) OR ANY OTHER REDUCED WAGE RATES

APPRENTICES ARE NOT ENTITLED TO WAGES OR FRINGE BENEFIT CONTRIBUTIONS FOR ATTENDANCE AT CLASSROOM INSTRUCTION OFFERED BY AND ON THE PREMISES OF THE SHEET METAL WORKERS' INDUSTRY APPRENTICE AND TRAINING FUND

38

# APPENDIX D

## MINIMUM TOOLS REQUIRED

Sheet Metal Hammer
8" Adjustable Wrench
Scratch Awl
Right and Left Snips
25' Tape Measure
Hack Saw
Felt Marking Pen
Tool Box with Lock
Channel Lock Pliers
Torpedo Level
Allen Wrench Set

8" x ¼ " Screwdriver
Vice Grips (2)
12" Combination Square
6' Folding Ruler
Sheet Metal Bulldog Shears
Plumb Bob
Bending Tongs
Drift (Lineup) Pin
5/16" Nut Driver
Key Hole Saw

# NOTES

NEGOTIATING COMMITTEE
Sheet Metal Workers' International Association
Local Union # 40

Sam Giglio - Chairman

John P. McBrearty     David A. Roche
Luke J. Ford     Richard Delorso

\* \* \*

THE ASSOCIATED SHEET METAL AND ROOFING
CONTRACTORS OF CONNECTICUT

David Palmer - Chairman

C. Mitchell Sorensen     Richard Gherlone     Lynne Kleeberg
Patrick Duane          John Ferrucci

NEGOTIATING COMMITTEE
Sheet Metal Workers' International Association
Local Union # 40

Sam Giglio - Chairman

John P. McBrearty    David A. Roche
Luke J. Ford    Richard Delorso

\*  \*  \*

THE ASSOCIATED SHEET METAL AND ROOFING
CONTRACTORS OF CONNECTICUT

David Palmer - Chairman

C. Mitchell Sorensen    Richard Gherlone    Lynne Kleeberg
Patrick Duane    John Ferrucci