# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| M.R.S. ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-01823 CKK |
| | ) | |
| SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 40, | ) ) ) | |
| | ) | |
| Defendant and Counterclaimant. | ) | |
| _____ | ) | |

## COUNTERCLAIMANT SHEET METAL WORKERS LOCAL 40's MOTION TO CONFIRM ARBITRATION AWARD

Michael T. Anderson (DC Bar 459617)
Arlus J. Stephens (DC Bar 478938)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
(202) 223-2620
(202) 223-8651 (fax)

Attorneys for Defendant/Counterclaimant
Sheet Metal Workers Int'l Assn. Local 40

Sheet Metal Workers' Local 40 ("the Union" or "Local 40") is party to a collective-bargaining agreement with M.R.S. Enterprises, Inc. ("M.R.S."). On June 28, 2005, an industry adjustment board issued an arbitration award resolving a contract dispute between the parties. M.R.S. filed suit in this Court to vacate the award. Local 40 now moves for summary enforcement of the award for the reasons set forth in the accompanying Memorandum of Law, the Declaration of David A. Roche and all other papers and pleadings in this action.

Local 40 brings this motion pursuant to Section 301 of the LMRA, 29 U.S.C. §185, and Section 9 of the Federal Arbitration Act, 9 U.S.C. §9. Local 40 also respectfully requests that the Court award Local 40 its attorneys' fees and costs, pursuant to Article X, section 6 of the agreement.

Dated:   November 17, 2005        Respectfully submitted,


        s/ Michael T. Anderson
        Michael T. Anderson (DC Bar 459617)
        Arlus J. Stephens (DC Bar 478938)
        Davis, Cowell & Bowe LLP
        1701 K Street NW, Suite 210
        Washington, DC 20006
        (202) 223-2620
        (202) 223-8651 (fax)

        Attorneys for Defendant/Counterclaimant
        Sheet Metal Workers Int'l Assn. Local 40

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| M.R.S. ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-01823 CKK |
| | ) | |
| SHEET METAL WORKERS' | ) | |
| INTERNATIONAL ASSOCIATION, | ) | |
| LOCAL 40, | ) | |
| | ) | |
| Defendant and Counterclaimant. | ) | |
| _____ | ) | |

# COUNTERCLAIMANT SHEET METAL WORKERS LOCAL 40's MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

Michael T. Anderson (D.C. Bar 459617)
Arlus J. Stephens (D.C. Bar 478938)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
(202) 223-2620
(202) 223-8651 (fax)

Attorneys for Defendant/Counterclaimant
Sheet Metal Workers Int'l Assn. Local 40

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . .  1

    Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    M.R.S. Was Bound by the Local 40 Agreement.  . . . . . . . . . . . . . .  2

    M.R.S. Had No Right to Repudiate its Interest Arbitration
    Promise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    The NJAB Properly Found a "Deadlock" Under Article X,
    Section 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    M.R.S. Has No Viable Challenge to the NJAB's "Partiality."  . . .  6

    The NJAB Award Should be Enforced  . . . . . . . . . . . . . . . . . . . . . .  6

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

        A.    The Parties' Contractual History  . . . . . . . . . . . . . . . . . . . . .  7

                1.    The Standard Form of Union Agreement  . . . . . . . . .  7
                2.    M.R.S.'s adoption of the Standard Form  . . . . . . . . . .  8

        B.    The Exchange of Considerations in the Agreement  . . . . . .  9

                1.    No-strike obligation in exchange for arbitration  . . . .  9
                2.    Interest arbitration for a successor
                    agreement under Article X, section 8  . . . . . . . . . . . .  9
                3.    Extension of the Agreement during Article X,
                    section 8 proceedings . . . . . . . . . . . . . . . . . . . . . . . .  11

        C.    The Parties' 2004-2005 Communications  . . . . . . . . . . . . .  12

        D.    NJAB Proceedings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

# TABLE OF CONTENTS

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    The Court Should Apply the Expedited Procedures
          of the Federal Arbitration Act. . . . . . . . . . . . . . . . . . . . . . 13

    B.    In the Alternative, the Court Should Grant
          Summary Judgment Under Rule 56. . . . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.   M.R.S. IS BOUND BY THE LOCAL 40 AGREEMENT. . . . . . . . . . . 16

   A.   M.R.S. Adopted the Agreement. . . . . . . . . . . . . . . . . . . . . . 16

      1.   M.R.S. complied with the 2001 Agreement's
          terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      2.   M.R.S. referenced the Local 40 Agreement in its
          termination letter. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      3.   M.R.S. signed the 1998 agreement, and never gave
          notice to terminate it. . . . . . . . . . . . . . . . . . . . . . . . . 18

   B.   M.R.S. Is Bound Even If It Never Belonged to the
       Multi-Employer Group ASMRCC. . . . . . . . . . . . . . . . . . . . 18

# TABLE OF CONTENTS

II.   M.R.S. HAS NO STATUTORY DEFENSE TO THE
ARBITRATION AWARD.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    A.    Employers are Bound By Obligations In §8(f)
Agreements: *Deklewa*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    B.    The Duration of §8(f) Obligations Is Defined by
Contract, Not By the Statute.  . . . . . . . . . . . . . . . . . . . . . . . . . .  20

    C.    Article XV Extended the Contract for the Duration of
NJAB Arbitration Proceedings.  . . . . . . . . . . . . . . . . . . . . . . . .  22

    D.    The Right to an Arbitrated Successor Agreement
Accrues When the Promise is Made, Not When it is
Performed.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

          1.    Interest arbitration is part of the exchange of
considerations.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

          2.    The right to an arbitrated successor
agreement accrues when it is made, not
when it is performed.  . . . . . . . . . . . . . . . . . . . . . . .  25

III.   M.R.S. HAS NO CONTRACTUAL DEFENSE TO THE NJAB
AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

    A.    M.R.S.'s Refusal to Negotiate Does Not Preclude Interest
Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

          1.    Whether the procedural conditions for interest
arbitration have been satisfied is for the arbitrator,
not the Court.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

# TABLE OF CONTENTS

2.    Even where courts independently review the issue,
they reject M.R.S.'s reading of "deadlock."  . . . . . . . . . . .  27

B.    The Court Should Make its Construction of Article X,
Section 8 Uniform With Other Federal Courts.  . . . . . . . . . . . . . .  29

IV.    M.R.S. HAS NO VIABLE CHALLENGE TO THE NJAB'S
"PARTIALITY."  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

A.    M.R.S. Failed to Raise Any "Partiality" Objection to the
NJAB.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

B.    M.R.S. Agreed to the Contract Arbitration Procedure.  . . . . . . . .  31

V.    THE COURT SHOULD ENFORCE THE AWARD.  . . . . . . . . . . . . . .  32

A.    The Court May Clarify That the NJAB Award Is Not
Perpetual.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

B.    The Court Should Award the Union its Attorneys' Fees
Pursuant to Article X, Section 6 of the Agreement.  . . . . . . . . . . .  33

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

# TABLE OF AUTHORITIES

## CASES

*American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n,*
  *Local Union No. 104*
  794 F.2d 1452 (9th Cir.1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24, 32, 33

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

\* *Beach Air Conditioning, Inc. v. Sheet Metal Workers Local 102*
  55 F.3d 474 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . .  4-6, 22, 28, 32, 33

*Booth v. Hume Publishing, Inc.*
  902 F.2d 925 (11th Cir. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Bricklayers Local 21 Apprenticeship Program v. Banner Restoration, Inc.*
  385 F.3d 761 (7th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Brown v. C. Volante Corp.*
  194 F.3d 351 (2d Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Cook v. Babbitt*
  819 F.Supp. 1 (D.D.C. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Delta Mine Holding Co. v. AFC Coal Props., Inc.*
  280 F.3d 815 (8th Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

*District 17, United Mine Workers v. Apogee Coal Co.*
  13 F.3d 134 (4th Cir. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Electrical Workers Local 367 v. Graham County Electrical Cooperative*
  783 F.2d 897 (9th Cir. 1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

_____
  \*  Principal cases.

# TABLE OF AUTHORITIES

## CASES

*General Drivers Local 89 v. Riss & Co.*
372 U.S. 517 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Gilmore v. Int'l Union of Operating Engineers*
899 F.Supp. 652 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Local 104*
933 F.2d 759 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 32

*Health Services Management Corp. v. Hughes*
975 F.2d 1253 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Howsam v. Dean Witter Reynolds, Inc.*
537 U.S. 79 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

*Int'l Painters and Allied Trades Pension Fund v. H.W. Ellis Painting Co.*
288 F.Supp.2d 22 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

*JCI Communications, Inc. v. Electrical Workers Local 103*
324 F.3d 42 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 30, 31

*John Deklewa & Sons*
282 NLRB 1375 (1987)
*enforced* 843 F.2d 770 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 3, 19, 20

*John Wiley & Sons, Inc. v. Livingston*
376 U.S. 543 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

## CASES

*Joyce v. Silveri Tile Co.*
  66 F.Supp.2d 1 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Legion Ins. Co. v. Insurance Gen. Agency*
  822 F.2d 541 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Local 174, Teamsters v. Lucas Flour Co.*
  369 U.S. 95 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Local Union 1395, IBEW v. NLRB*
  797 F.2d 1027 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Major League Baseball Players Ass'n v. Garvey*
  532 U.S. 504 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Merit Ins. Co. v. Leatherby Ins. Co.*
  714 F.2d 673 (7th Cir.) *cert. denied*, 464 U.S. 1009 (1983) . . . . . . . . . . . . 32

*Minkoff v. Clark Transfer, Inc.*
  841 F.Supp. 424 (D.D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Northern Pacific Sealcoating, Inc.*
  309 NLRB 759 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*NVE Constructors, Inc. v. NLRB*
  934 F.2d 1084 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Painters Local 970 v. NLRB*
  309 F.3d 1 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

*Pennsylvania Avenue Development Corp. v. One Parcel of Land*
670 F.2d 289 (D.C.Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Productos Mercantiles e Industriales v. Faberge USA, Inc.*
23 F.3d 41 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*R.J. Smith Construction Co.*
191 NLRB 693 (1971) *remanded* 480 F.2d 1186 (D.C.Cir. 1973) . . . . . . . . 19

*Sheet Metal Workers Local 20 v. Baylor Heating and Air Conditioning, Inc.*
877 F.2d 547 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28

* *Sheet Metal Workers Local 20 (Baylor Heating and Air Conditioning)*
301 NLRB 258 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

* *Sheet Metal Workers Local 24 v. Architectural Metal Works, Inc.*
259 F.3d 418 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 19, 22,
27, 28, 32, 33

*Sheet Metal Workers Local 54 v. E.F. Etie Sheet Metal Co.*
1 F.3d 1464 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25, 26

* *Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*
786 F.2d 1459 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 24, 27

*Sheet Metal Workers Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*
932 F.2d 578 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 28, 29

*Sheet Metal Workers Local 162 (Dwight Lang's Enterprises)*
314 NLRB 923 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

# TABLE OF AUTHORITIES

## CASES

*Sheet Metal Workers Local 162 v. Jason Mfg., Inc.*
  900 F.2d 1392 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24, 32

*Sheet Metal Workers Local 420 v. Kinney Air Conditioning Co.*
  756 F.2d 742 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Singer v. Shannon & Luchs Co.*
  670 F.Supp. 1024 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Teamsters Local 61 v. United Parcel Service*
  272 F.3d 600 (D.C.Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United Mine Workers 1974 Pension Trust v. Pittston Co.*
  984 F.2d 469 (D.C.Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

*United Paperworkers Int'l Union v. Misco, Inc.*
  484 U.S. 29 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*\*West Coast Sheet Metal, Inc. v. NLRB*
  938 F.2d 1356 (D.C.Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 19, 21

## STATUTES

29 U.S.C. §158(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19
29 U.S.C. §186(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9 U.S.C. § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9 U.S.C. § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
9 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## RULES

Fed.R.Civ.P. 43(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed.R.Civ.P. 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Fed.R.Civ.P. 81(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Sheet Metal Workers Local 40 ("the Union" or "Local 40") is party to a collective-bargaining agreement with M.R.S. Enterprises, Inc. ("M.R.S."), a sheet metal installation firm in Connecticut.  On June 28, 2005, an industry adjustment board issued an arbitration award resolving a contract dispute between the parties.  M.R.S. filed suit in this District[1] to vacate the award.  Local 40 now moves for summary enforcement of the award.

Courts must decide arbitration disputes quickly.  Federal arbitration law directs courts to decide arbitration cases on summary motions, without the prolonged court litigation that arbitration is supposed to avoid (as we outline in the Standard of Review, below.)

### Background

This case centers on an interest arbitration clause in the Sheet Metal Workers' Standard Form of Union Agreement.

The parties' collective-bargaining agreement defines wage rates and other employment terms through June 30, 2005.  After that point, Article X, section 8 of

---

[1] Although both M.R.S. and Local 40 are based in Connecticut, M.R.S. has apparently sued in the District of Columbia because the National Joint Adjustment Board issued its arbitration award here.  *See* 9 U.S.C. § 9 (permitting venue in the District where arbitration award was issued.)

that Agreement obligates the parties to negotiate a renewal for one more term,

with unresolved issues submitted to arbitration by the National Joint Adjustment

Board (NJAB).  This process is known as "interest arbitration."  *See West Coast*

*Sheet Metal, Inc. v. NLRB*, 938 F.2d 1356, 1357-58 (D.C.Cir. 1991) (explaining

the operation of Article X, Section 8 of the Sheet Metal Workers standard

agreement.)

On December 22, 2004, M.R.S. gave notice to terminate the 2001-2005

agreement upon expiration.  Local 40 invited M.R.S. to negotiate directly for the

renewed contract period, but M.R.S. refused.  Local 40 then invoked Article X,

Section 8, and asked the NJAB to arbitrate the terms of the successor period.

M.R.S. refuses to comply with the NJAB's award.  Its Complaint gives four

grounds for vacating the award.  Each argument is without merit.

## M.R.S. Was Bound by the Local 40 Agreement.

First, M.R.S. suggests that it was not bound by the Local 40 agreement at

all, because it never physically signed the 2001-2005 version.  Complaint, ¶¶ 9-10.

This argument is pointless.  Other paragraphs of M.R.S.'s Complaint admit

that M.R.S. adopted the Local 40 Agreement.  Complaint, ¶¶ 12, 13, 16.  M.R.S.

complied with the Agreement's terms, remitting union dues and making payments

into Local 40 benefit funds that would have been illegal if M.R.S. had not been

bound to that Agreement.  Its December 22, 2004 termination notice specified the

Local 40 industry agreement as the agreement M.R.S. purported to terminate.

Roche Decl., Ex. E.  It is unimportant whether M.R.S. physically signed the most

recent Local 40 Agreement, since its conduct shows that it adopted that

Agreement.  *See Int'l Painters and Allied Trades Pension Fund v. H.W. Ellis*

*Painting Co.*, 288 F.Supp.2d 22, 29 (D.D.C. 2003) (citing cases).

### **M.R.S. Had No Right to Repudiate its Interest Arbitration Promise.**

Second, M.R.S. argues that it had a statutory right under the National Labor

Relations Act (NLRA) to repudiate its interest arbitration promise.  Complaint,

¶¶ 18, 25.  M.R.S. points out parties to a "pre-hire" construction labor agreement

under §8(f) of the NLRA, 29 U.S.C. §158(f), may stop bargaining once their

contractual obligations have expired.  Complaint, ¶18, *citing John Deklewa &*

*Sons*, 282 NLRB 1375, 1386 (1987) *enforced* 843 F.2d 770 (3d Cir. 1988).

But this begs the question of <u>when</u> these contractual obligations end.  If the

parties agree in advance to an automatic renewal of their Agreement, or to enter

into a successor agreement on arbitrated terms, they have no special right under

*Deklewa* to repudiate that promise.  *Sheet Metal Workers Local 20 (Baylor*

*Heating and Air Conditioning)*, 301 NLRB 258, 260 (1991); *Sheet Metal Workers*

-3-

*Local 162 (Dwight Lang's Enterprises)*, 314 NLRB 923, 927 (1994); *see also West Coast Sheet Metal,* 938 F.2d at 1362 (affirming NLRB's rule.)

Every court that has interpreted Article X, section 8 of the Sheet Metal Workers Standard agreement has rejected the argument M.R.S. makes here. Article X, section 8 binds contracting employers to interest arbitration for a successor period, even if the employer tries to repudiate further bargaining before the first contract period expires. *See Beach Air Conditioning, Inc. v. Sheet Metal Workers Local 102*, 55 F.3d 474, 476-479 (9th Cir. 1995) (Kozinski, J.) (citing cases); *Sheet Metal Workers Local 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464, 1473-75 (5th Cir. 1993); *Sheet Metal Workers Local 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 429 (6th Cir. 2001); *Sheet Metal Workers Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*, 932 F.2d 578, 581-82 (6th Cir. 1991); *Sheet Metal Workers Local 20 v. Baylor Heating and Air Conditioning, Inc.*, 877 F.2d 547, 556 (7th Cir. 1989); *Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*, 786 F.2d 1459, 1460-61 (11th Cir. 1986).

Once arbitration has resolved the terms for the renewed contract period, M.R.S. must honor these terms as part of its original bargain.  In effect, the parties agreed in advance to a contract covering two consecutive periods – from 2001-2005 with fixed terms, and a successor period with arbitrated terms.  *See Beach*

*Air Conditioning*, 55 F.3d at 478 and cases cited therein.  M.R.S. received

substantial consideration for this bargain, including the Union's obligation not to

use economic pressure to win a better contract.  Having received the benefit of the

Union's consideration, M.R.S. may not repudiate its own obligations.

## <u>The NJAB Properly Found a "Deadlock" Under Article X, Section 8.</u>

Third, M.R.S. argues that the NJAB had no authority to proceed, because

Article X, section 8 requires a negotiation "deadlock."  M.R.S. argues that the

contractual requirement of a "deadlock" was never met, because M.R.S. refused to

negotiate at all.  Complaint, ¶¶ 17, 19.

The courts have uniformly rejected the argument M.R.S. makes here.  *See*

*Architectural Metal Works*, 259 F.3d at 429 (interpreting "deadlock" language of

Article X, section 8); *Beach Air Conditioning*, 55 F.3d at 477 (same); *Dane Sheet*

*Metal*, 932 F.2d at 582 (same).  Article X, section 8 requires interest arbitration

even if the one of the parties refuses to negotiate altogether.  *Id.*

In any event, the Court must defer to the arbitrator on whether the contract's

preconditions for arbitration have been met, after *Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

**M.R.S. Has No Viable Challenge to the NJAB's "Partiality."**

Finally, M.R.S. charges the National Joint Adjustment Board with "evident partiality," because it is composed of equal numbers of union representatives and representatives of unionized sheet metal employers.  Complaint, ¶¶ 22-23.

M.R.S. waived this objection by failing to raise it to the NJAB.  *See, e.g.*, *JCI Communications, Inc. v. Electrical Workers Local 103*, 324 F.3d 42, 51-52 (1st Cir. 2003).

M.R.S.'s objection has no merit in any case.  M.R.S. knew the NJAB's composition when it agreed to the Local 40 contract.  Such joint labor-management boards have full authority as arbitrators under federal labor law.  By definition, such boards include partisan representatives, but M.R.S. is not entitled to a different arbitrator than it bargained for.  *JCI Communications*, 324 F.3d at 51-52; *Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Local 104*, 933 F.2d 759, 764-765 (9th Cir. 1991).

**The NJAB Award Should be Enforced.**

The Court's order confirming the award should make clear that M.R.S.'s contractual obligation extends for only one more term.  *See, e.g.*, *Beach Air Conditioning*, 55 F.3d at 478.  Interest arbitration does not continue perpetually where the court enforces an arbitrated agreement.

The Court should also award Local 40 its attorneys' fees and costs, pursuant to Article X, section 6 of the Agreement.

## STATEMENT OF FACTS

**A.    The Parties' Contractual History**

### 1.    The Standard Form of Union Agreement

Local 40 has a longstanding collective-bargaining relationship with the Associated Sheet Metal and Roofing Contractors of Connecticut (ASMRCC), a multi-employer bargaining group.  The ASMRCC and Local 40 negotiate a collective-bargaining agreement every three to five years.  This agreement is known as the "Standard Form of Union Agreement."  Many of its provisions, including Article X, section 8, are used in standardized Sheet Metal Workers agreements nationwide.  Roche Decl., ¶2.

Several employers who are not members of the ASMRCC, including M.R.S. Enterprises, sign the Standard Form of Union Agreement on a "me-too" basis. This means that the independent employer does not join the ASMRCC, but it agrees to adopt the same Standard Form of Union Agreement that the ASMRCC has negotiated with Local 40.  Roche Decl., ¶3.  From 1987 until 2005, the Standard Form of Union Agreement negotiated with the ASMRCC was the only

collective-bargaining agreement Local 40 maintained with any building trades employer.  Roche Decl., ¶4.

### 2.     M.R.S.'s adoption of the Standard Form

Roland O. Levesque, President of M.R.S. Enterprises, signed the Local 40 Standard Form of Union Agreement for successive contract terms from 1987-1988, 1988-92, 1992-1995, 1995-1998 and 1998-2001.  Roland Levesque signed the Agreement under the name Nutmeg Wall Systems, M.R.S. Enterprises' "labor group."  Roche Decl., ¶¶5-6 and Exs. A and B.  On January 8, 2001, Mr. Levesque notified Local 40: "All Nutmeg labor and contracting obligation will be absorbed into M.R.S. Enterprises, Inc."  Roche Decl., ¶6 and Ex. C.

In advance of the 1998-2001 Agreement's expiration date, M.R.S. never sent Local 40 any notice to terminate its Agreement or reopen negotiations Roche Decl., ¶7.  M.R.S. simply adopted the terms of the 2001-2005 Agreement executed by Local 40 and the ASMRCC.  Roche Decl., ¶10.  The 2001-2005 Agreement provided for a wage increase and increased contributions to the Local 40 Benefit funds above the 1998-2001 rates.  Roche Decl., ¶8; *compare* Ex. B (1998-2001 agreement) *with* Counterclaim, Ex. A (2001-2005 agreement.)

From 2001 through 2005, M.R.S. complied with all terms of the 2001-2005 Standard Form of Union Agreement, including all wage increases and contribution

rates to the Local 40 benefit funds. Roche Decl., ¶10 and Ex. D (reflecting

M.R.S.'s benefit fund contributions from 2001-2005 at the higher rate provided in

the 2001-2005 Standard Form of Union Agreement.)

### B.    The Exchange of Considerations in the Agreement

#### 1.    No-strike obligation in exchange for arbitration

The most important *quid pro quo* in the Agreement is the Union's promise

not to strike, in return for arbitration. Counterclaim, Ex. A, Article X, sections 7

and 8(a). The Agreement specifically forbids the Union from using economic

pressure against M.R.S. in negotiations for a successor agreement. *Id.*, Article X,

section 8(a). The Union must confine itself to the NJAB arbitration procedure. *Id.*

The Union has honored this promise. At no point since 2001 has Local 40

called a strike or picketed M.R.S., as it could have done against a non-signatory

employer. Roche Decl. ¶17.

#### 2.    Interest arbitration for a successor agreement
####        under Article X, section 8

Article X, section 8 obligates the parties to submit any "controversy or

dispute arising out of the failure of the parties to negotiate a renewal of this

agreement" to interest arbitration. M.R.S. admits in its Complaint, ¶16, that it was

bound by this provision:

In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

**(a)** Should the negotiations for renewal of this Agreement become deadlocked in the opinion of the Local Union or of the Local Contractors Association, or both, notice to that effect shall be given to the office of the General President of the Sheet Metal International Association and the national office of the Sheet Metal & Air Conditioning Contractors National Association, Inc.

\* \* \*

Should the President of the Sheet Metal Workers' International Association or the Chairman of the Labor Committee of Sheet Metal & Air Conditioning Contractors National Association fail or decline to appoint a panel member or should notice of failure of panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment board. The unanimous decision of said Board shall be final and binding upon the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach unanimous decision and the parties have received written notification of its failure.

Counterclaim, Ex. A, p. 10, Article X, section 8.

-10-

### 3. Extension of the Agreement during Article X, section 8 proceedings

The Agreement sets an initial expiration date of June 30, 2005. However, the Agreement provides that this expiration date shall not take effect pending completion of any Article X, section 8 proceedings:

**ARTICLE XV**

**Section 1.** This Agreement and Addenda Numbers One through Twenty-eight shall become effective on the First day of July, 2001 and remain in full force and effect until the Thirtieth Day of June, 2005 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party upon written notice, provided, however, that if this Agreement contains Article X, section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, section 8 have been otherwise completed.

Counterclaim, Ex. A, p. 14.

Article X, Section 8(d) provides that any renewal arbitrated by the NJAB shall be retroactive to the date of the initial agreement:

Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

Counterclaim, Ex. A, p.11; Complaint, ¶16.

-11-

### C.     The Parties' 2004-2005 Communications

On December 22, 2004, Roland Levesque of M.R.S. Enterprises sent Local
40 the following notice:  "Pursuant to Article XV of the Sheet Metal Workers
International Association Local No. 40 and The Associated Sheet Metal and
Roofing Contractors of Connecticut Standard Form of Union Agreement and
Addenda, we hereby give our notice to terminate the Agreement on the stipulated
expiration date."  Roche Decl., Ex. E.

On May 17, 2005, Local 40 offered to meet M.R.S. for direct negotiations.
Roche Decl., Ex. F.  Local 40 Business Manager David Roche made an
appointment for June 13, 2005 with Steven Levesque, an executive of M.R.S.
Enterprises.  Steven Levesque later canceled the June 13 meeting, saying that he
had not scheduled the meeting as a negotiation, but merely a courtesy.  Roche
Decl., ¶12.

### D.     NJAB Proceedings

On June 3, 2005, Local 40 filed a Notice of Unresolved Dispute under
Article X, section 8 of the Agreement with the National Joint Adjustment Board.
Counterclaim, Ex. C.

On June 27, 2005, the NJAB heard the matter in Washington D.C.  M.R.S.
appeared with counsel, and argued M.R.S.'s position to the NJAB.  M.R.S. also

submitted a Memorandum to the NJAB in advance of the hearing.  Roche Decl.,

Ex. G.  At no point prior to the issuance of the award did M.R.S. challenge the

NJAB or any of its members for bias or partiality.  Roche Decl., ¶15.

On June 28, 2005, the NJAB issued an award directing the parties to

execute an agreement on the same terms as that reached in 2005 between Local 40

and ASMRCC.  Counterclaim, Ex. C.

M.R.S. refuses to comply with the NJAB decision as a "violation of

established law."  Roche Decl., ¶17; Complaint, ¶25.

## STANDARD OF REVIEW

### A.    The Court Should Apply the Expedited Procedures of the Federal Arbitration Act.

The Court should apply the procedures used in the Federal Arbitration Act

(FAA), 9 U.S.C. §§ 1 *et seq*.[2]  The FAA supersedes the normal operation of the

Federal Rules of Civil Procedure.  *See* Fed.R.Civ.P. 81(a)(3).

The FAA directs that motions to enforce arbitration awards "shall be made

and heard in the manner provided by law for the making and hearing of motions."

---

[2]  FAA procedures should be adopted in review of labor arbitration awards, where they do not conflict with labor law.  *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987).  Expedited confirmation of labor arbitrations is even more important than in commercial cases, because federal labor policy depends on the "speedy resolution of grievances by private mechanisms."  *See id.*, 484 U.S. at 38.

9 U.S.C. § 6.  This means that Fed.R.Civ.P. 43(e) (which allows courts to resolve

disputed motions on the papers) applies to motions to confirm arbitration awards

instead of Fed.R.Civ.P. 56.  *See Productos Mercantiles e Industriales v. Faberge*

*USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994); *Health Services Management Corp. v.*

*Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992); *Booth v. Hume Publishing, Inc.*, 902

F.2d 925, 932 (11th Cir. 1990); *Legion Ins. Co. v. Insurance Gen. Agency*, 822

F.2d 541, 541-543 (5th Cir. 1987).

The Court should decide the motion summarily, however it is labeled.

"Typically, district courts should establish an expedited schedule for consideration

of petitions to enforce or set aside arbitration awards. . ." *Gilmore v. Int' Union of*

*Operating Engineers*, 899 F.Supp. 652, 658 (D.D.C. 1995) *quoting District 17,*

*United Mine Workers v. Apogee Coal Co.*, 13 F.3d 134, 138 (4th Cir. 1993).  This

expedited procedure is necessary for federal labor arbitration policy.  "If

arbitration is to continue to hold the significant position it now possesses, judicial

enforcement of the decision . . . must follow surely and swiftly." *Apogee Coal*, 13

F.3d at 138.  It would frustrate this policy if the parties had to go through the very

litigation that arbitration is supposed to avoid.  *See also Health Services*

*Management Corp.*, 975 F.2d at 1258, *citing Booth*, 902 F.2d at 932.

**B.    In the Alternative, the Court Should Grant Summary
Judgment Under Rule 56.**

Even if the Court proceeds under Fed.R.Civ.P. 56, it should grant summary

judgment now.  Under the familiar Rule 56 standard allowing the non-moving

party the benefit of all reasonable inferences, *see Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252 (1986), the Court must nevertheless "view the evidence

presented through the prism of the substantive evidentiary burden" on the

opposing party.  *Id.*, 477 U.S. at 254.

This is an extremely heavy burden for M.R.S.  "The party seeking to vacate

an arbitration award faces a steep upward grade."  *Teamsters Local 61 v. United

Parcel Service*, 272 F.3d 600, 606 (D.C.Cir. 2001).  District courts are strictly

limited in their power to review a labor arbitrator's award, and must defer to any

award that "draws its essence from the collective bargaining agreement."  *Major

League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001).

In this case, there are no material factual issues.  The relevant events and

documents are not in dispute.  The dispute is over their legal significance.  "In this

circuit, the interpretation of contracts is considered an issue of law, not fact, and

thus cannot preclude summary judgment."  *Cook v. Babbitt*, 819 F.Supp. 1, 15

(D.D.C. 1993) *citing Pennsylvania Avenue Development Corp. v. One Parcel of

Land*, 670 F.2d 289, 292 (D.C.Cir.1981).  *See also United Mine Workers 1974*

-15-

*Pension Trust v. Pittston Co.*, 984 F.2d 469, 473 (D.C.Cir. 1993) (summary judgment appropriate where interpretation of "evergreen" renewal clause in labor agreement was a matter of law).

## ARGUMENT

### I.     M.R.S. IS BOUND BY THE LOCAL 40 AGREEMENT.

#### A.     M.R.S. Adopted the Agreement.

M.R.S. suggests that it may not have been bound by the Local 40 agreement at all, because it never physically signed the 2001-2005 agreement.  Complaint, ¶¶ 9-10, 18.

 This argument is pointless.  It is unimportant whether M.R.S. physically signed the most recent Local 40 Agreement, since its conduct shows that it adopted that Agreement.  "Adoption of an enforceable labor contract does not depend on the agreement's reduction to writing; instead, circumstances and conduct reveal the existence of a contract."  *Int'l Painters and Allied Trades Pension Fund v. H.W. Ellis Painting Co.*, 288 F.Supp.2d 22, 29 (D.D.C. 2003) (citing cases).

#### 1.     M.R.S. complied with the 2001 Agreement's terms.

M.R.S. complied with the 2001-2005 Agreement's terms, making contributions to Local 40 benefit funds at the 2001 rates, thus obtaining coverage

for its employees through 2005.  Roche Decl., ¶10 and Ex. D.  This participation

in a union benefit fund would have been illegal under 29 U.S.C. §186(c)(5) if

M.R.S. had not been bound by the Local 40 agreement.  *See Brown v. C. Volante

Corp.*, 194 F.3d 351, 354-356 (2d Cir. 1999) (employer contributions to union

benefit fund established its adoption of labor agreement, despite its failure to sign

the most recent version; such contributions were only lawful if employer was

bound by agreement); *Bricklayers Local 21 Apprenticeship Program v. Banner

Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) (citing cases.)

## 2.    M.R.S. referenced the Local 40 Agreement in its termination letter.

M.R.S. may not claim that it was bound to some agreement other than the

Standard Form.  M.R.S. specifically referenced that Agreement in giving notice to

terminate on December 22, 2004:  "Pursuant to Article XV of the Sheet Metal

Workers International Association Local No. 40 and The Associated Sheet Metal

and Roofing Contractors of Connecticut Standard Form of Union Agreement and

Addenda, we hereby give our notice to terminate the Agreement on the stipulated

expiration date."  Roche Decl., Ex. E.  This is as clear an admission as M.R.S.

could have given.

Furthermore, the later paragraphs of M.R.S.'s Complaint contradict its

initial suggestion that it was not bound.  Complaint, ¶¶ 12, 13 (alleging that

M.R.S. was party to the Local 40 Agreement.) M.R.S. admits in particular that its

Agreement contained Article X, Section 8.  *Id*., ¶16.

### 3.    M.R.S. signed the 1998 agreement, and never gave notice to terminate it.

In any event, M.R.S.'s suggestion that it did not sign the 2001-2005

Agreement does not help its position.  If M.R.S. did not adopt the 2001-2005

industry agreement, then its 1998 Agreement continued in effect.

By its terms, the 1998 Agreement continued indefinitely unless the parties

agreed to reopen it on new terms.  *See* Roche Decl., Ex. B (1998-2001

Agreement), Article XIII, Section 1.  In 2001, M.R.S. never gave any notice to

reopen or terminate its Local 40 Agreement.  Roche Decl., ¶7.  It simply adopted

the modifications of the 2001-2005 industry agreement.  *Id*., ¶10.  If M.R.S.

somehow did not adopt the 2001-2005 Agreement, then it is still bound by the

1998 Agreement, which contains the same interest arbitration language.

### B.    M.R.S. Is Bound Even If It Never Belonged to the Multi-Employer Group ASMRCC.

M.R.S. also alleges that it never negotiated with Local 40, but simply

adopted the industry agreement negotiated by ASMRCC, a multi-employer group

to which M.R.S. did not belong.  Complaint, ¶¶ 6-9 .  This makes no difference.

Article X applies to each employer "whether party to this Agreement independently or as a member of a multi-employer bargaining unit." Counterclaim, Ex. A, Article X, p. 8. Individual employers who adopt industry contracts on a "me-too" basis do not enjoy some special exemption from interest arbitration. Even though these employers are not members of the multiemployer group, they are still bound to proceed through NJAB interest arbitration. *West Coast Sheet Metal*, 938 F.2d at 1362; *Architectural Metal Works*, 259 F.3d at 427-428; *Sheet Metal Workers Local 162 v. Jason Mfg., Inc.,* 900 F.2d 1392, 1396-97 (9th Cir.1990).

## II.    M.R.S. HAS NO STATUTORY DEFENSE TO THE ARBITRATION AWARD.

### A.    Employers are Bound By Obligations In §8(f) Agreements: *Deklewa*

M.R.S. argues that the Agreement is a "pre-hire" agreement governed by §8(f) of the National Labor Relations Act, 29 U.S.C. §158(f).

Prior to 1987, federal labor law allowed employers and unions to repudiate §8(f) agreements at any time, even during their term. *See R.J. Smith Construction Co.*, 191 NLRB 693 (1971) *remanded* 480 F.2d 1186 (D.C.Cir. 1973). This changed with the landmark *John Deklewa & Sons*, 282 NLRB 1375 (1987) *enforced* 843 F.2d 770 (3d Cir. 1988). In *Deklewa*, the NLRB held that employers

-19-

and unions may not repudiate §8(f) agreements during their term.  282 NLRB at

1387.  *Deklewa* restored §8(f) agreements to the normal operation of contract law.

The NLRB in *Deklewa* stressed the importance of holding employers to their

exchange of considerations:

> Importantly, this limited obligation is not imposed on unwitting
> employers. Rather, it is a reasonable *quid pro quo* that is imposed
> only when an employer voluntarily recognizes the union, enters into a
> collective-bargaining agreement, and then sets about enjoying the
> benefits and assuming the obligations of the agreement.

*Deklewa*, 282 NLRB at 1387; *Painters Local 970 v. NLRB*, 309 F.3d 1, 5 (D.C.

Cir. 2002) (following *Deklewa*).

### B.    The Duration of §8(f) Obligations Is Defined by Contract, Not By the Statute.

M.R.S. is correct that employers and unions may repudiate further

bargaining with each other once their obligations under the §8(f) agreement

expire.  *See Deklewa*, 282 NLRB at 1386.  However, M.R.S.'s argument begs the

question of <u>when</u> those obligations expire.

The National Labor Relations Act does not fix any term for §8(f)

agreements.  This is determined by the contract – for how long did the parties

agree to exchange considerations?  If the parties agree in advance that their

contract will automatically renew, or that they will submit to an arbitrated

successor agreement, there is nothing unlawful about holding the parties to this

agreement.  *See West Coast Sheet Metal*, 938 F.2d at 1362 (rejecting employer's claim that Article X, section 8 arbitration "coerced" employer into unwanted bargaining for the successor term.)

The NLRB has repeatedly upheld Article X, section 8 interest arbitration against employers (like M.R.S.) who claim *Deklewa* gives them a right to repudiate the arbitrated successor agreement:

> The [NLRB] has found that *Deklewa* does not preclude a finding that an 8(f) agreement may, in appropriate circumstances, automatically renew.  [cit om.]  Similarly, we find that it does not preclude the inclusion of an interest arbitration provision. Like a provision for automatic renewal, an interest arbitration provision contemplates a renewal of the agreement.  It differs principally by leaving open the terms and prescribing a means of resolving disputes arising from the failure to negotiate the renewal.
>
> Here, the interest arbitration clause requires submission to NJAB following any "failure of the parties to negotiate a renewal of this Agreement."  Thus, the clause, at least arguably, binds the Employer to a renewal of the agreement and to the NJAB resolution of disputes concerning that renewal. In these circumstances, it may be argued that the parties have agreed to extend their voluntary contractual relationship beyond the expiration date and that the *Deklewa* privilege to repudiate had not yet been triggered at the time of the NJAB submission.

*Sheet Metal Workers Local 20 (Baylor Heating and Air Conditioning)*, 301 NLRB 258, 260 (1991); *see also Sheet Metal Workers Local 162 (Dwight Lang's Enterprises)*, 314 NLRB 923, 927 (1994).

The federal courts agree with the NLRB.  *Architectural Metal Works*, 259 F.3d at 429 ("extension" clause of Sheet Metal Workers agreement binds employer to contract arbitrated through Article X, Section 8); *Beach Air Conditioning*, 55 F.3d at 478 (same); *Tampa Sheet Metal*, 786 F.2d at 1460-61 (same); *see also Joyce v. Silveri Tile Co.*, 66 F.Supp.2d 1, 2 (D.D.C. 1999) (employer is not free to repudiate successor agreement where "the employer obligates itself, through a renewal clause, to succeeding agreements.")

### C.    Article XV Extended the Contract for the Duration of NJAB Arbitration Proceedings.

M.R.S. begs the question when it claims a right to repudiate its Agreement on "expiration."  Although the Agreement generally speaks of June 30, 2005 as the expiration date, the parties agreed in Article XV, Section 1 that their Agreement would extend <u>past</u> June 30, 2005, through the completion of any Article X, Section 8 proceedings.

M.R.S.'s claim to repudiate "on expiration" therefore misses the point. M.R.S. had already <u>agreed</u> to an automatic extension of the expiration date where Article X, section 8 proceedings had not completed.  This contractual extension of the Agreement's term prevents the Employer from repudiating interest arbitration. *Beach Air Conditioning*, 55 F.3d at 478; *Electrical Workers Local 367 v. Graham County Electrical Cooperative*, 783 F.2d 897, 899 (9th Cir. 1986).

The Local 40 Agreement makes this waiver of the right to repudiate even clearer in Article XV, Section 4:

> Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this Agreement.

This is a clear and unmistakable waiver of any right to repudiate during Article X, section 8 proceedings to modify the Agreement. Such a provision is an effective waiver of an employer's rights under *Deklewa* to terminate the agreement. *See Northern Pacific Sealcoating, Inc.*, 309 NLRB 759, 759-760 (1992) (employer may waive rights under *Deklewa* by contract.)

**D.    The Right to an Arbitrated Successor Agreement Accrues When the Promise is Made, Not When it is Performed.**

**1.    Interest arbitration is part of the exchange of considerations.**

M.R.S. apparently argues that the Union's right to interest arbitration was voided by M.R.S.'s announced intent to "terminate" the Agreement. At face value, this notice to terminate is nothing more than the demand to negotiate new terms contemplated by Article X, section 8. Yet M.R.S. appears to claim something more – that by announcing its intent to "terminate," M.R.S. could unilaterally cancel all obligations that might be performed after June 30, 2005.

-23-

This argument has no merit.  Since Article X, section 8 is a promise in advance to renew the agreement on arbitrated terms, a party may not unilaterally cancel it any more than any other duty under the contract.  *See Jason Manufacturing*, 900 F.2d at 1397 (interpreting Article X, section 8: "[T]ermination brought about by notice [] is no different from termination as a result of expiration of the agreement . . . The addendum under which Jason gave its notice to terminate did not abrogate the obligation incurred in the main agreement to negotiate, and if negotiations failed, to arbitrate."); *American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 104,* 794 F.2d 1452, 1455 (9th Cir.1986) ("[W]e find no indication in the language of the [Sheet Metal Workers standard] agreement that timely notice of termination of the contract or termination itself would cancel interest arbitration obligations."); *Tampa Sheet Metal*, 786 F.2d at 1460-61 (even though employer terminated the agreement prior to the union's invocation of Article X, section 8, its agreement to be bound by an arbitrated successor agreement nevertheless continued.)

The D.C. Circuit follows this rule:  "We have no reason to question the propriety of an employer agreeing to be bound to contractual duties beyond the life of a specific collective bargaining agreement." *United Mine Workers 1974 Pension Trust v. Pittston Co.*, 984 F.2d 469, 474 n.6 (D.C.Cir. 1993) (enforcing

-24-

employer obligations under "evergreen" clause requiring ongoing contributions after the fixed term of a labor agreement.)

### 2.    The right to an arbitrated successor agreement accrues when it is made, not when it is performed.

The obligation to submit to a successor agreement accrues when the promise is made, not when the parties must perform it.  For example, in *E.F. Etie Sheet Metal*, 1 F.3d at 1473-75, an employer belonged to a multiemployer association that signed the Standard Form on its behalf, providing for interest arbitration for the next agreement.  During the term of the agreement, the employer withdrew from the association and notified the union that it was terminating the agreement "at the earliest possible time."  1 F.3d at 1472.  After the expiration date, the union won a default Article X, Section 8 award from the NJAB, and sued to enforce it.  The employer counterclaimed, alleging the Union's effort to enforce interest arbitration was illegal coercion of its right to refuse further bargaining. The Fifth Circuit rejected this argument, because the employer's interest arbitration duty attached when the agreement was signed:

> While Etie was a member of an employer organization it became subject to an interest arbitration clause that bound it in later negotiations.  Requiring an employer to honor obligations it incurred while an organization member forces no membership.

1 F.3d at 1473.  The Fifth Circuit pointed out that the interest arbitration promise is given in consideration for union promises, like wage concessions and a no-strike pledge, that the employer enjoys during the term of the contract.  *E.F. Etie Sheet Metal*, 1 F.3d at 1474-75.

This is certainly the case here.  If it had not been bound by Article X, section 8(a), the Union could have called a strike and picketed M.R.S. after July 1, 2005 to pressure it into a contract.  *See NVE Constructors, Inc. v. NLRB*, 934 F.2d 1084, 1087 (9th Cir. 1991) (unions may lawfully strike and picket to pressure non-union employers into §8(f) agreements).  Having obtained immunity from Local 40 picketing and strike activity, Roche Decl. ¶17, M.R.S. may not renege on its corresponding promise to abide by the NJAB arbitration.

## III.  M.R.S. HAS NO CONTRACTUAL DEFENSE TO THE NJAB AWARD.

### A.  M.R.S.'s Refusal to Negotiate Does Not Preclude Interest Arbitration.

M.R.S. argues that it refused to engage in negotiations at all, and so the "deadlock" that Article X, section 8 requires never occurred.  Complaint, ¶¶17, 19.

### 1. Whether the procedural conditions for interest arbitration have been satisfied is for the arbitrator, not the Court.

The NJAB disagreed with M.R.S.'s construction of the agreement.  The NJAB ruled:  "A review of the record demonstrated that all procedural requirements had been met."  Counterclaim, Ex. C.

It was for the NJAB, as arbitrator, to decide whether the procedural prerequisites of Article X, section 8 were satisfied.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), *citing John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964).  In *Howsam*, the Court resolved a circuit split to hold that the fulfillment of conditions precedent to arbitration is a matter for the arbitrator, not the courts, to decide.  537 U.S. at 85.

This rule applies here.  Whether M.R.S.'s refusal to negotiate created a "deadlock" under Article X, section 8 was an issue of procedural arbitrability, which *Howsam* reserves to the arbitrator.

### 2. Even where courts independently review the issue, they reject M.R.S.'s reading of "deadlock."

Before *Howsam*, the circuits were divided on whether arbitrators or the courts had the final say on whether Article X, Section 8's procedural steps had been satisfied.  *Compare Tampa Sheet Metal*, 786 F.2d at 1461 (Eleventh Circuit deferring to question to arbitrator) *with Architectural Metal Works*, 259 F.3d at

429 and *Beach Air Conditioning*, 55 F.3d at 477(Sixth and Ninth Circuits deciding

issue without deference to arbitrator.)  After *Howsam*, the Eleventh Circuit's

approach in *Tampa Sheet Metal* is correct:  the arbitrator has the final say.

However, the Court need not reach this issue.  Even in the Sixth and Ninth

Circuits, the courts have rejected M.R.S.'s argument on their own reading.

The requirement of a "deadlock" in Article X, section 8 is satisfied where an

employer refuses to negotiate at all.  As Judge Kozinski wrote for the Ninth

Circuit:  "An employer cannot escape the interest arbitration clause by refusing to

negotiate, because the contract imposes not only a duty to accept a settlement

imposed by the arbitrators once negotiations fail, but also a duty to negotiate in the

first place."  *Beach Air Conditioning*, 55 F.3d at 477 (citing cases).  *See also*

*Architectural Metal Works*, 259 F.3d at 429 (Sixth Circuit enforcing Article X,

section 8 award after employer refused to negotiate); *Dane Sheet Metal*, 932 F.2d

at 582 (same); *Baylor Heating*, 877 F.2d at 556 (same in Seventh Circuit).

This is the only sensible reading, because the first paragraph of Article X,

section 8 provides that interest arbitration shall settle "any controversy or dispute

arising out of the failure of the parties to negotiate a renewal of this agreement."

Its reference to a negotiating "deadlock" makes no sense unless that phrase

encompasses any "failure of the parties to negotiate a renewal of this agreement."

-28-

### B.    The Court Should Make its Construction of Article X, Section 8 Uniform With Other Federal Courts.

The most important canon of construction in the federal law of labor

contracts is consistency.  Nationwide labor agreements should not be interpreted

differently between different jurisdictions:

> [S]ubstantive principles of federal labor law must be paramount in the
> area covered by the statute.  The possibility that individual contract
> terms might have different meanings under state and federal law
> would inevitably exert a disruptive influence upon both the
> negotiation and administration of collective agreements.

*Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-104 (1962).  The Sixth

Circuit noted this interest in *Dane Sheet Metal*, 932 F.2d at 582: "[A]t least three

courts of appeals have held that [the Sheet Metal Workers standard agreement] can

require interest arbitration following the expiration of the original contract term.

We are aware of no decision to the contrary, and we should be reluctant to create

an inter-circuit conflict where none now exists."

For the same reason, parties like M.R.S. are deemed to negotiate against a

background of existing decisional law.  *Local Union 1395, IBEW v. NLRB*, 797

F.2d 1027, 1033 (D.C. Cir. 1986) ("collective bargaining agreements must be read

in light of the realities of labor relations and considerations of federal labor policy,

[cit.om] which make up the background against which such agreements are

entered.")  The prevailing judicial construction of Article X, section 8 was known

-29-

in the sheet metal industry when M.R.S. agreed to that provision.  M.R.S. cannot

ask the Court for a unique exception here.

## IV.    M.R.S. HAS NO VIABLE CHALLENGE TO THE NJAB'S "PARTIALITY."

### A.    M.R.S. Failed to Raise Any "Partiality" Objection To The NJAB.

M.R.S. never objected to the supposed partiality of the NJAB or any of its

members prior to the NJAB's award.  See Roche Decl, Ex. G (M.R.S.'s pre-

hearing Memorandum); Roche Decl., ¶15.

This waives the objection.  "It would undermine the arbitral process to

permit an employer with an industry-represented panel to await the outcome of an

arbitration before deciding to cry bias. [cit.om.] We cannot accept that parties have

a right to keep two strings in their bow – to seek victory before the tribunal and

then, having lost, seek to overturn it for bias never before claimed."  *JCI*

*Communications, Inc. v. Electrical Workers Local 103*, 324 F.3d 42, 52 (1st Cir.

2003).  Judge (now Justice) Kennedy enforced this waiver rule in an Article X,

section 8 case,  *Sheet Metal Workers Local 420 v. Kinney Air Conditioning Co.,*

756 F.2d 742, 746 (9th Cir. 1985) (employer waived bias claim when it charged

the NJAB with "partiality" only after the NJAB ruled.)

-30-

### B.    M.R.S. Agreed to the Contract Arbitration Procedure.

M.R.S.'s objection is meritless in any case.

Joint union-management adjustment boards are common in labor

agreements.  They have the same authority under federal labor law as third-party

arbitrators.  *See General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 518-519

(1963).  If M.R.S.'s argument were accepted, no joint board could ever arbitrate

grievances, because its members would always be "partial."

The problem with M.R.S.'s argument is that it knowingly <u>agreed</u> to this

bipartite procedure when it adopted the Local 40 Standard Form of Union

Agreement.  The Employer may not be heard to attack the fairness of a procedure it

voluntarily agreed to.  *JCI Communications*, 324 F.3d at 51-52; *Kinney Air*

*Conditioning,* 756 F.2d at 746.  "[P]artisan arbitrators are generally permissible if

that is what the parties' arbitration clause contemplated."  *JCI Communications*,

324 F.3d at 51, *citing Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d

815, 821 (8th Cir. 2001).

Since *Kinney*, the courts have repeatedly rejected the argument M.R.S.

makes here against joint sheet metal industry boards:

> Finally, Goss [the employer] argues that the [arbitration board's]
> decision should be reversed because the board was biased since the
> labor representatives on the board were Union agents and the
> management representatives were employed by businesses in

competition with Goss. Goss's argument is fundamentally flawed. Given that the collective bargaining agreement clearly provides that all appeals from unresolved grievances will be arbitrated by representatives of the Union and the local employers' association, which is traditionally composed of management representatives engaged in the sheet metal industry, it is difficult to imagine who else Goss would have expected to arbitrate its dispute. Goss received exactly what it bargained for. *Cf. Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 679 (7th Cir.) ("The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen."), *cert. denied,* 464 U.S. 1009 (1983).

*Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Local 104*, 933 F.2d 759, 764-765 (9th Cir. 1991). *See also Jason Manufacturing*, 900 F.2d at 1398.

## V.    THE COURT SHOULD ENFORCE THE AWARD.

### A.    The Court May Clarify That the NJAB Award Is Not Perpetual.

The NJAB award only imposes <u>one</u> more contract term on M.R.S. It does not bind M.R.S. to a perpetual obligation.

Interest arbitration can only occur once after the employer objects. *See Architectural Metal Works*, 259 F.3d at 430-431; *Beach Air Conditioning*, 55 F.3d at 478; *American Metal Products*, 794 F.2d at 1457. While the NJAB award does not expressly remove Article X, section 8 from the successor agreement, the award must be read against this background. If the Court deems it necessary, it may clarify that Article X, Section 8 does not continue in the arbitrated agreement, by severing

-32-

this provision and enforcing the remainder.  This is what the courts did in *Architectural Metal Works*, 259 F.3d at 430, *Beach Air Conditioning*, 55 F.3d at 478, and *American Metal Products*, 794 F.2d at 1457.  The present agreement, like the agreements in those cases, contains severability language that permits the Court to enforce all other provisions if any one provision is unenforceable.  *See* Article XV, Section 2, Counterclaim, Ex. A, p. 14.  The Court may therefore clarify that the NJAB award does not impose Article X, section 8 as a perpetual obligation.

**B.    The Court Should Award the Union its Attorneys' Fees Pursuant to Article X, Section 6 of the Agreement**.

The Court's Order should also award Local 40 its attorneys' fees under the contractual fee-shifting provision of Article X, section 6:

> In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Executive Board, Panel or the National Joint Adjustment board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law.  If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

Counterclaim Ex. A, p. 10, Article X, section 6.

Such a contractual fee provision authorizes fees for any covered proceedings, including counterclaims.  *Singer v. Shannon & Luchs Co.*, 670 F.Supp. 1024, 1028

-33-

(D.D.C. 1987) (enforcing contractual attorneys' fee clause in favor of party prevailing on counterclaim.)

The Court should therefore order that Local 40 recover its reasonable attorneys' fees and costs, to be documented in an application under Fed.R.Civ.P. 54(d)(2) and Local Civil Rule 54.2(a). *See Minkoff v. Clark Transfer, Inc*., 841 F.Supp. 424, 431-432 (D.D.C. 1993) (outlining procedure for fee recovery under contractual attorneys' fee clause.)

## <u>CONCLUSION</u>

The Court should grant the Union's Motion to Confirm the Arbitration Award. The Court should award the Union its costs and reasonable attorneys' fees expended to secure M.R.S.'s compliance with the NJAB's award pursuant to Article X, section 6 of that Agreement.

Dated:   November 17, 2005         Respectfully submitted,


         */s/ Michael Anderson*
         Michael T. Anderson (DC Bar 459617)
         Arlus J. Stephens (DC Bar 478938)
         Davis, Cowell & Bowe LLP
         1701 K Street NW, Suite 210
         Washington, DC 20006
         (202) 223-2620
         (202) 223-8651 (fax)

         Attorneys for Defendant/Counterclaimant
         Sheet Metal Workers Int'l Assn. Local 40

-34-

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

M.R.S. ENTERPRISES, INC.,     )
          )
    Plaintiff and Counterdefendant,   )
          )
        v.       )     Case No. 1:05-CV-01823 CKK
          )
SHEET METAL WORKERS'    )
INTERNATIONAL ASSOCIATION,  )
LOCAL 40,       )
          )
    Defendant and Counterclaimant.  )
_____)

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF COUNTERCLAIMANT SHEET METAL WORKERS' LOCAL 40'S MOTION TO CONFIRM ARBITRATION AWARD
### [Local Rule 56.1]

As we explain in our Memorandum in Support of Motion to Confirm, this Motion is properly resolved using the expedited procedures of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*., rather than Fed.R.Civ.P. 56.

Nevertheless, in the event the Court treats this a Rule 56 Motion, we supply the following statement of material facts in accordance with Local Civil Rule 56.1:

1.    Sheet Metal Workers Local 40 in Connecticut has a longstanding collective-bargaining relationship with the Associated Sheet Metal and Roofing Contractors of Connecticut (ASMRCC), a multi-employer bargaining group. (Roche Decl., ¶1)

2.     The ASMRCC and Local 40 negotiate a collective-bargaining agreement every three to five years.  This agreement is known as the "Sheet Metal Workers International Association Local No. 40 and the Associated Sheet Metal and Roofing Contractors of Connecticut Standard Form of Union Agreement." (Roche Decl., ¶1)

3.     Many of the provisions of this agreement, including Article X, Section 8, are used in standardized Sheet Metal Workers agreements nationwide. (Roche Decl., ¶1)

4.     Several employers who are not members of the ASMRCC, including M.R.S. Enterprises, sign the Standard Form of Union Agreement on a "me-too" basis.  This means that the independent employer does not join the ASMRCC, but it agrees to be bound by the same Standard Form of Union Agreement that the ASMRCC has negotiated with Local 40.  (Roche Decl., ¶3)

5.     From 1987 until 2005, the Standard Form of Union Agreement negotiated with the ASMRCC was the only collective-bargaining agreement Local 40 maintained with any building trades employer.  The members of the ASMRCC, and the independent "me-too" employers, all agreed to adopt the same Standard Form of Union Agreement.  (Roche Decl., ¶4)

2

6.    Roland O. Levesque, President of M.R.S. Enterprises signed the Local 40 Standard Form of Union Agreement for successive contract terms beginning in 1987.  (Roche Decl., ¶5 and Exs. A and B.)

7.    Roland Levesque signed the Agreement on behalf of Nutmeg Wall Systems, the predecessor in interest of M.R.S. Enterprises.  (Roche Decl., ¶5)

8.    On January 8, 2001, Mr. Levesque copied Local 40 with a letter to the Sheet Metal Workers International Association notifying as follows:  "Nutmeg Wall Systems, Inc. ceases to exist.  All Nutmeg labor and contracting obligation will be absorbed into M.R.S. Enterprises, Inc.  In the past we conducted our business under MRS and Nutmeg was the labor group."  (Roche Decl., ¶6 and Ex. C.)

9.    M.R.S. never sent Local 40 any notice to reopen or terminate its Agreement or reopen negotiations in 2001, or at any time thereafter until December 22, 2004.  (Roche Decl., ¶7)

10.    In 2001, Local 40 and the ASMRCC executed a new Standard Form of Union Agreement for 2001-2005.  (Roche Decl., ¶8)

12.    The 2001-2005 Agreement provided for an annual wage increase of $2.50 per hour for journeyman sheet metal workers above the 1998-2001

3

Agreement, and an increase in fringe benefit contributions to the Local 40 Benefit funds above the 1998-2001 Agreement.  (Roche Decl., ¶8)

13.    M.R.S. Enterprises did not physically sign the 2001-2005 Standard Form of Union Agreement.  Prior to this lawsuit, however, no representative of M.R.S. ever said that any failure to sign reflected M.R.S.'s intent not to adopt the Agreement.  (Roche Decl., ¶9)

14.    From 2001 through 2005, M.R.S. complied with all terms of the 2001-2005 Standard Form of Union Agreement, including all wage increases, remittance of union dues, and contributions to the Local 40 benefit funds at the increased rates.  (Roche Decl., ¶10)

15.    On December 22, 2004, Roland Levesque of M.R.S. Enterprises sent Local 40 a letter stating:  "Pursuant to Article XV of the Sheet Metal Workers International Association Local No. 40 and The Associated Sheet Metal and Roofing Contractors of Connecticut Standard Form of Union Agreement and Addenda, we hereby give our notice to terminate the Agreement on the stipulated expiration date."  (Roche Decl., ¶11 and Ex. E.)

16.    On May 17, 2005, Local 40 sent M.R.S. Enterprises a letter proposing a negotiations meeting.  (Roche Decl., ¶12 and Ex. F.)

17.     Local 40 Business Manager David Roche later made an appointment for June 13 with Steven Levesque, an executive of M.R.S. Enterprises.  Steven Levesque later canceled the June 13 meeting, saying that he had not scheduled the meeting as a negotiation, but merely a courtesy.  (Roche Decl., ¶12)

18.     On June 3, 2005, Roche filed a "Notice of Unresolved Dispute" under Article X, Section 8 of the Agreement with the National Joint Adjustment Board (NJAB).  The NJAB set the matter for arbitration on June 27, 2005 in Washington, D.C.  (Roche Decl., ¶13)

19.     On June 23, 2005, M.R.S. Enterprises submitted a pre-hearing Memorandum to the NJAB.  (Roche Decl., ¶14 and Ex. G)

20.     On June 27, 2005, the NJAB heard the matter in Washington D.C. Roland Levesque and James F. Grosso appeared for M.R.S.  Local 40 business representative Luke J. Ford and Roche appeared for Local 40.  (Roche Decl., ¶15)

21.     During that hearing, neither Mr. Levesque or Mr. Grosso ever challenged the NJAB or any of its members for bias.  No representative of M.R.S. ever raised the issue of partiality or bias before the NJAB's award.  (Roche Decl., ¶15)

/ / /

/ / /

22.    On June 28, 2005, the NJAB issued an award directing the parties to execute an agreement on the same terms as that reached between Local 40 and ASMRCC.  (Roche Decl., ¶16 and Counterclaim, Ex. C.)

23.    Since July 1, 2005, M.R.S. has failed to honor the NJAB award. (Roche Decl., ¶16)

24.    At no point between 2001 and the present has Local 40 called a strike against M.R.S. Enterprises, conducted picketing against M.R.S., or engaged in any similar form of economic pressure against M.R.S.  (Roche Decl., ¶17)

Dated:  November 17, 2005          Respectfully submitted,


  *s/ Michael T. Anderson*
Michael T. Anderson (DC Bar 459617)
Arlus J. Stephens (DC Bar 478938)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
(202) 223-2620
(202) 223-8651 (fax)

Attorneys for Defendant/Counterclaimant
Sheet Metal Workers Int'l Assn. Local 40

50\C:\DCB\MTA\MRS40 statement facts-2.wpd
11/17/2005\09:48:12 USM40 4930

6