# Exhibit B

Attached to Roche Declaration
(Case No. 1:05-CV-01823 CKK)

# STANDARD FORM OF UNION AGREEMENT
## SHEET METAL, ROOFING, VENTILATING AND AIR CONDITIONING CONTRACTING DIVISIONS OF THE CONSTRUCTION INDUSTRY

Agreement entered into this **1st** day of **July 1997**, by and between:

<u>Nutmeg Wall Systems</u>,

(Name of Contractor or Contractor's Association)

and each business establishment individually, whether represented by a contractor association or not, hereinafter referred to as the Employer, and Local Union #40 of Sheet Metal Workers' International Association, hereinafter referred to as the Union for **Hartford, New London, Middlesex, Tolland, Windham, New London Counties, Connecticut and Fishers Island New York**.

## ARTICLE I

SECTION 1. This Agreement covers the rates of pay and conditions of employees of the Employer engaged in but not limited to the: (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous and nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems air handling systems regardless of material used including the setting of all equipment and of all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineered drawings or sketches; and (e) all other work included in the jurisdictional claims of the Sheet Metal Workers' International Association.

## ARTICLE II

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a job-site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under the provisions of this Agreement.

## ARTICLE III

SECTION 1. The Employer agrees that none but journeymen, apprentice and pre-apprentices shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a job-site prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by SMACNA and SMWIA shall be provided to the employe

# EXHIBIT #2

## ARTICLE IV

SECTION 1. The Union agrees to furnish upon request by the Employer duly qualified journeyperson, apprentice, pre-apprentice, in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in the Agreement.

## ARTICLE V

SECTION 1. The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

SECTION 2. If during the term of this Agreement the Labor-Management Relations Act of 1947 shall be amended by Congress in such a manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

SECTION 3. The provision of this article shall be redeemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

## ARTICLE VI

SECTION 1. The regular working day shall consist of **as Per Addendum I (7)** hours labor in the shop or on the job between seven (7) a.m. and three-thirty (3:30) p.m. and the regular working week shall consist of five (5) consecutive seven (7) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at as per Addendum I (1 1/2 ) times the regular rate.

Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time.

SECTION 2. **New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day, Good Friday and Veteran's Day** or days locally observed as such, by the state of Connecticut, shall be recognized as holidays. Sunday shall also be recognized as a holiday. **TIME AND ONE HALF (1 1/2) SHALL BE PAID FOR ALL OVERTIME EXCEPT FOR SUNDAYS AND HOLIDAYS WHICH WILL BE PAID AT DOUBLE-TIME (2X).**

SECTION 3. It is agreed that all work performed outside of regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the Union

2

in a vance of scheduling such work. Preference on overtime and holiday work shall be given to men or women on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 4. Shift work and the pay conditions therefore shall be only as provided in written addenda attached to this Agreement. Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be established by the local parties or by the National Joint Adjustment Board on the request of either party, if not locally provided.

## ARTICLE VII

SECTION 1. When employed in a shop or on a job within the limits of **fifteen (15) miles** employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time, and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

SECTION 2. When employed outside of the limits specified in Section 1 of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section 1 of this Article at regular starting time, and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in Section 1 of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by a zone or other method of payment. If this alternative method is used, it will be provided in a written addendum attached hereto.

## ARTICLE VIII

SECTION 1. The minimum rate of hourly wages for journeyperson sheet metal workers covered by this agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article 1 of this Agreement shall be **as per Addendum I and XIV** per hour, except hereinafter specified in Section 2 of this article.

SECTION 2. On all work specified in Article 1 of this agreement, fabricated and/or assembled by journeypersons, apprentices, pre-apprentices sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other local union affiliated with Sheet Metal Workers' International Association, whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the job-site Union shall be paid to the employees employed on such work in the home shop or sent to the job-site.

SECTION 3. The provisions of Section 2 of this Article, Section 2 Article II and Section I of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

| | |
|---|---|
| 1. Ventilators | 6. Mixing (attenuation) boxes |
| 2. Louvers | 7. Plastic skylights |
| 3. Automatic and fire dampers | 8. Air diffusers, grills, registers |
| 4. Radiator and air conditioning unit enclosures | 9. Sound attenuators |
| 5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality | 10. Chutes |
| | 11. Double-wall panel plenums |
| | 12. Angle rings |

3

SECTION 4. The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings for high pressure systems.

SECTION 5. Except as provided in Section 2 and 6 of this Article, the Employer agrees that journeypersons, pre-apprentices and apprentice sheet metal workers hired outside the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

SECTION 6. When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeyperson sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be otherwise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

SECTION 7. In applying the provisions of Sections 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 8. Welfare benefit contributions shall not be duplicated.
When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.
The parties to this Agreement agree to establish a system for contributing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

SECTION 9. Wages at the established rates specified herein shall be paid **as Per Addendum VIII** in the shop or on the job at or before quitting time on **as Per Addendum VIII** of each week, and no more than two (2) days' pay will be withheld. However, employees when discharged shall be paid in full.

SECTION 10. Journeypersons, apprentice, pre-apprentice sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours pay, at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

SECTION 11. Each Employer covered by this Agreement shall employ at least one (1) journeyperson sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

SECTION 12(a). Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay the Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States (IFUS), **(Appendix A)** per hour for each hour worked on or after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made monthly on or before the 20th day of the succeeding month and shall be remitted to IFUS, 4201 Lafayette Center Drive, Chantilly, Virginia, 22021-1209, or for the purpose of transmittal, through **Sheet Metal Workers' Local #40 Fringe Benefit Office, 100 Old Forge Road, Rocky Hill, CT 06067.**

(c). The IFUS shall submit to the Sheet Metal Workers' International Association not less often than semi-annually written reports describing accurately and in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report a financial statement attested to by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the Sheet Metal Workers' International Association upon written request.

(d). Grievances concerning use of IFUS funds for purposes prohibited under Section 12(a) or for violations of other subsections of this Section may be processed by the Sheet Metal Workers' International Association directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceeding results in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The Arbitrator shall be selected by the Co-Chairmen of the National Joint Adjustment Board. The Arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of this Section, including termination of the Employer's obligation to contribute to the IFUS. The authority of the Arbitrator is expressly limited to a determination of a deadlock issue under this section, (Section 12, Article VIII), and no other.

SECTION 13(a). Contributions provided for in Section 13(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support and improve the employment opportunities for employees.
No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay to the **Sheet Metal Industry Fund, Inc.** (the local industry fund), **(Appendix A)** for each hour worked on or after the effective date of this Agreement by each employee of the Employer covered by this Agreement. Payment shall be made monthly on or before the 20th day of the succeeding month.

The Sheet Metal Industry Fund shall remit monthly, $.01 per hour from the hourly contributions received on or after the effective date of this agreement for each hour worked by each employee of the employer covered by this agreement to the Connecticut Construction Industry Labor Management Coalition. This contribution shall continue in force and effect until such time as the dissolution of the CCLMC. In such event the $.01 per hour increment shall be added into the then established contribution rate in effect for the Sheet Metal Industry Fund, Inc. at that time.

(c). The local industry fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements. Further specific detailed information in regard to local industry fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d). Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this section shall be handled under the provisions of Article X of this Agreement. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

SECTION 14. Effective as of the date of this Agreement the Employers will contribute to the National Training Fund for the Sheet Metal and Air Conditioning Industry (NTF), (**Appendix A**) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NTF or for purposes of collection and transmittal through **SMW National Benefits, P.O. Box 79321 Baltimore, Maryland, 21279-0321.**

Effective as of the date of this Agreement, the Employers will contribute to the National Energy Management Institute Committee (NEMI), a jointly administered trust fund, (**Appendix A**) for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMI, or for the purposes of collection and transmittal through **SMW National Benefit Funds, P.O. Box 79321 Baltimore, Maryland, 21279-0321.**

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupation Health Institute Trust (**Appendix A**) for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self-sufficient. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for purposes of collection and transmittal through **SMW National Benefit Funds, P.O. Box 79321 Baltimore, Maryland 21279-0321.**

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the National Training Fund for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and

hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

## ARTICLE IX

SECTION 1. Journeypersons, apprentice and pre-apprentice sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools.

SECTION 2. Journeypersons, apprentice and pre-apprentice sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint

7

Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. * Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairpersons of the National Joint Adjustment Board.

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation.

SECTION 6. In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

SECTION 7. Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

SECTION 8. In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a). Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe re-opener become deadlocked in the opinion of the Union representative(s) or of the Employer('s) representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairpersons of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable

agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairpersons of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairpersons of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairpersons of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b). Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

> **\*All correspondence to the National Joint Adjustment Board shall be sent to the following address: National Joint Adjustment Board, P.O. Box 220956, Chantilly, VA 22022-0956, or 4201 LayFayette Center Drive, Chantilly, VA 22021-1209.**

(c). The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this Section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, telegram or telephone notification.

(d). Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

## ARTICLE XI

SECTION 1. All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of eight (8) members, four (4) of whom shall be selected by the Employer, and four (4) by the Union. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice

system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

SECTION 2. The Joint Apprenticeship and Training Committee designated herein shall serve for a period of three (3) years effective July 1, 1997 through June 30, 2000, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

SECTION 3. It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the National Training Fund and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeypersons who will be employed by employers in the Sheet Metal Industry not signatory to a collective bargaining agreement providing for contributions to the National Training Fund and a Local JATC. Therefore, the trustees of the National Training Fund and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeypersons employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training shall include the reasonable value of all National Training Fund and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing National Training Fund materials and programs.

SECTION 4. It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices on the basis of one (1) apprentice for each three (3) journeypersons regularly employed throughout the year. Provided, however, an Employer will not be entitled to a new apprentice if the employer has an apprentice on layoff for lack of work.

SECTION 5. All applicants for apprenticeship shall serve an apprenticeship of up to four (4) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyperson until apprenticeship terms have been completed and they have qualified as journeypersons.

SECTION 6. A graduated wage scale for apprentices shall be established and maintained on the following percentage basis of the established wage rate of journeyperson sheet metal workers:

> First year - First half 40% - Second half 45%
> Second year - First half 50% - Second half 55%
> Third year - First half 60% - Second half 65%
> Fourth year - First half 70% - Second half 75%

This Section shall not have the effect of reducing the wage progression schedule of any apprentice who indentured prior to the effective date of this Agreement.

SECTION 7. The parties will establish on a local basis the SMWIA (Youth-to-Youth/Organizing) program and the procedures to enable all apprentices to participate in the program. The activities of the program that deal with organizing and other traditional union activities shall be funded by the Local Union

10

through a check-off in compliance with the provisions of Section 302(c) of the Labor-Management Relations Act of 1947. Activities that may be funded by Employer contributions shall be so funded if, and to the extent, the parties shall agree locally to sponsor and implement the same.

SECTION 8. The parties agree that the apprentice program shall change from a five year program to a four year program. This program shall incorporate evening class training programs with consideration being given to concentrated day time programming in the future.

## ARTICLE XII

SECTION 1. It is hereby agreed that the Employer may apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant pre-apprentices on the basis of one (1) pre-apprentice for each three (3) apprentices employed by the Employer. However, it is further agreed that an employer may employ at least one (1) pre-apprentice regardless of the number of journeypersons or apprentices employed by him at that time. Any apprentice of the employer on layoff for lack of work at the effective date of this Agreement, must be rehired before said employer is entitled to any additional apprentice or pre-apprentice. Thereafter, the same conditions and ratios shall apply.

In the event the Employer is entitled to employ an apprentice or pre-apprentice and the Union fails to comply with the Employer's written request to furnish a pre-apprentice within forty-eight (48) hours, the Employer may hire such employees and refer them to the Joint Apprenticeship and Training Committee for enrollment.

Pre-apprentices shall be enrolled as applicants for future openings in the apprenticeship program. The Joint Apprenticeship and Training Committee shall evaluate the qualifications of pre-apprentices for such openings during the first year of employment. No pre-apprentices shall be retained beyond one (1) year unless he/she has been found to be qualified as an applicant.

The wage scale for pre-apprentices shall be thirty-five percent (35%) of the wage rate of journeypersons sheet metal workers. Health and welfare coverage shall be arranged on behalf of the pre-apprentices by the Sheet Metal Workers Health and Welfare Fund.

## ARTICLE XIII

SECTION 1. This Agreement, and Addenda Numbers **I through XXIX** attached hereto shall become effective on **1ST DAY OF JULY 1997**, and remain in full force and effect until the **30TH DAY OF JUNE, 2001**, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until the conferences relating thereto have been terminated by either party by written notice, provided however, that, if this Agreement contains Article X, Section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.

SECTION 2. If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision. If negotiations are unsuccessful, the issue may be submitted for resolution by either party pursuant to Article X, Section 8 of this Agreement.

SECTION 3. Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the

11

sponsoring national associations any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

SECTION 4. Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this Agreement.

SECTION 5. By execution of this Agreement the Employer authorizes The Associated Sheet Metal & Roofing Contractors of Connecticut to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of this Agreement.

In witness whereof, the parties hereto affix their signatures and seal this **1st** day of **July 1997**.

**THIS STANDARD FORM OF UNION AGREEMENT HAS PROVIDED FOR THE INCLUSION OF PRE-APPRENTICES AND A REDUCTION OF THE WAGE SCHEDULE FOR NEW APPRENTICES.    THE PURPOSE OF THIS IS TO MAKE CONTRACTORS MORE COMPETITIVE WITH NON-UNION COMPETITION. TO ACHIEVE THAT OBJECTIVE EMPLOYERS AGREE TO MINIMIZE MULTIPLE MARKUPS.**

**Nutmeg Wall Systems**

(Specify Name of Association or Contractor)

By _____

(Signature of Officer or Representative)

Local Union        **#40**

of Sheet Metal Workers' International

Association

_____

(Signature of Officer or Representative)

13

ADDENDA TO THE STANDARD FORM OF UNION AGREEMENT

### *ADDENDUM I*
### *WAGE RATES & WORK DAY*

1. The total contractual hourly obligation of the employer is **(Appendix A)** which represents a $1.05 per hour increase in the total hourly contractual obligation of the employer above the previously established rate. Future increments during the term of this agreement are as follows:

   | | |
   |---|---|
   | July 1, 1998 | $1.05 |
   | July 1, 1999 | $1.10 |
   | July 1, 2000 | $1.15 |

   The complete breakdown of wages and fringe benefit contributions are contained in **(Appendix A)** of this Agreement.

2. Effective July 1, 1997, $0.15 per hour will be added to Local Union #40 Equity Funding from the contractual obligation of $1.05. Future increases in the Local #40 Equity Funding shall be deducted from the increments called for in section 1 of Addendum I as follows:

   | | |
   |---|---|
   | July 1, 1998 | 0.15 |
   | July 1, 1999 | 0.10 |
   | July 1, 2000 | 0.10 |

   *This equity Fund schedule was ratified at the Local Union #40 membership meeting of August 28, 1997.*

3. The regular working day shall consist of SEVEN (7) hours labor in the shop or on the job between seven (7) a.m. and three-thirty (3:30) p.m. The regular working week schedule shall consist of five (5) consecutive seven (7) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. There shall be no split shifts working in the shop or on the job site without prior approval of the Sheet Metal Workers Local No. 40 Business Manager or Business Agent.

4. Overtime shall be paid at the rate of time and one half for all overtime with the exception of Sundays and holidays. Overtime for work performed on Sundays and holidays shall be at the rate of two (2) times the regular rate (double time).

5. The Union reserves the right, if they so desire, to allocate to the Health, Pension, Apprentice and Training Fund, Supplemental Retirement Fund, or any other existing funds, any monies from the increase due July 1, 1997, or at any other such times as increments are called for in the Collective Bargaining Agreement. The Union also reserves the right to change the Work Assessment and the Organizing Fund increments

provided the total hourly contractual obligation to the contractor does not change from what is called for in Section 1 of the Addendum.

### *ADDENDUM II*
*PAYROLL SAVINGS DEDUCTIONS*

1. The Employer shall deduct (**Appendix A**) per hour, for each hour worked from the net weekly earnings for each Journeyperson and Apprentice Sheet Metal Worker covered by the terms of this Agreement.

2. Such deductions shall be forwarded by the Employer to the **Capitol City Federal Credit Union, 485 Ledyard Street, Hartford, Connecticut 06114** or to any other location designated by the parties to this Agreement, no later than the twentieth (20th) day of the month following the month for which deductions are made.

### *ADDENDUM III*
*HEALTH, PENSION AND SUPPLEMENTAL RETIREMENT FUND CONTRIBUTIONS*

1. The Employer shall pay monthly to the Sheet Metal Local Union #40 Health Fund at the rate of (**Appendix A**) per hour for each hour worked by all Journeyperson and at the rate of (**Appendix C**) per hour for Apprentice Sheet Metal Workers in his/her employ. Such contributions shall be forwarded by the Employer to the Sheet Metal Local Union #40 Health Fund no later than the twentieth (20th) day of the month following the month for which contributions are made.

   "The employer shall pay monthly to the Sheet Metal Workers' Local #40 Health Fund at the rate of ONE DOLLAR AND TWENTY-FIVE CENTS ($1.25) per hour for each hour worked by (a) all pre-apprentices in his/her employ, and (b) all Apprentices in his/her employ who started as pre-apprentices and have not yet become eligible for active members' benefits under the Health Fund, except that the Employer shall pay such rate on at least 125 hours per month for each such pre-apprentice or Apprentice. Those contributions shall be used to provide health benefits to pre-apprentices, but not for their families, in such amounts, at such times and on such terms as may be determined by the trustees of the Health Fund. Contributions shall be due and billed as provided in Section I of Addendum III of this Agreement and the Employer agrees to be subject to and incorporate by reference herein all Trust Agreement provisions and Trust Fund rules, including those on bonding, collection, delinquency, and the Union's work stoppage authority, all as described in said Addendum III."

2. The Employer shall pay monthly to the Sheet Metal Local Union #40 Pension Fund at the rate of (**Appendix A**) per hour for each hour worked by all Journeyperson and at the rate of (**Appendix C**) per hour for Sheet Metal Worker Local Union #40 Apprentices in his/her employ. Such contributions shall be forwarded by the employer to the Sheet Metal Local Union #40 Pension Fund no later than the twentieth (20th) day of the month following the month for which contributions are made.

15

3. The Employer shall pay monthly to the Sheet Metal Workers' Local Union #40 Supplemental Retirement Fund at the rate of **(Appendix A)** per hour for each hour worked by all Journeypersons and at the rate of **(Appendix C)** per hour for Sheet Metal Worker Local Union #40 Apprentices in his/her employ. Such contributions shall be forwarded by the employer to the Sheet Metal Workers' Supplemental Retirement Fund no later than the twentieth (20th) day of the month following the month for which contributions are made.

4. The Sheet Metal Local #40 Fringe Benefit Fund Office will bill each employer by the seventh (7th) of each month per the Fringe Benefit Fund hours report. Monies due per the monthly bill from the Sheet Metal Workers' Local #40 Fringe Benefit Office are due and payable by the twentieth (20th) of each month for all hours worked by all covered employees, and should be sent to the **Sheet Metal Workers' Local Union #40 Fringe Benefit Fund Office, 100 Old Forge Road, Rocky Hill, CT, 06067.**

5. The Employer shall pay monthly to the Sheet Metal Workers' International Pension Fund at the rate of **(Appendix A)** per hour for each hour worked by all Journeypersons and Apprentice Sheet Metal Workers in his/her employ. Such contributions shall be forwarded to the Sheet Metal Workers' International Pension Fund no later than the twentieth (20th) day of the month following the month for which the contributions are made. The Employer agrees to remit payments to the **Sheet Metal Workers' National Pension Fund, Edward F. Carlough Plaza, 601 North Fairfax Street, Suite 500, Alexandria, VA. 22314** for each employee covered by the said Collective Bargaining Agreement according to the Standard Form of Participation Agreement.

6. The Employer agrees to accept and be bound by all rules and regulations of all Trust funds, including the posting of a cash or surety bond if required by the Trustees to protect the payment of contributions, and that the employer will promptly remit contributions when due and be responsible for all costs of collections, including attorney's fees and penalties for delinquency.

   The Employer agrees to accept and be bound by all rules and regulations of all Trust Funds adopted heretofore and thereafter, including the posting of a cash or surety bond when demanded by the Trustees to protect the payment of contributions to all Funds, as well as the Agreement and Declaration of Trust establishing said Funds, incorporated by reference as part of this Agreement.

7. In the event that an employer is delinquent in the payment of the contributions, the Trustees of the respective funds and the Local Union may require the employer to make contributions to the funds on a weekly schedule. The trustees and the Local Union may also require employers who are based outside of the jurisdiction of Local Union #40 to make contributions and reports on a weekly basis, without regard to the

16

payment history of any such employers. There will be a single check disbursement for all Local Union #40 fringe benefit payments.

8. A contributing Employer to the Sheet Metal Workers' Local Union #40 Health, Pension, Payroll Savings Deduction, Apprentice and Training Fund, Supplemental Retirement Fund, Sheet Metal Workers' International Association Pension Fund, National Training Fund to the Sheet Metal and Air Conditioning Industry, Sheet Metal and Air Conditioning Contractors' National Industry Fund of the United States, and Sheet Metal Industry Fund, Inc., National Energy Management Institute, Sheet Metal Occupational Health Institute Trust, Stabilization Agreement of the Sheet Metal Industry, Sheet Metal Workers' Local Union #40 Work Assessment, Local Union #40 P.A.C., and Sheet Metal Scholarship Fund shall be considered delinquent if the monthly payments for the above mentioned Funds are not paid on or before the twentieth (20th) day of the month following the month for which payment is due. A delinquent Employer shall be charged interest at a maximum legal rate per month on the unpaid balance. In the event that a delinquent account is referred to an attorney for collection, a reasonable attorney's fee shall be added to the principal and interest due thereon.

9. The Union may engage in a work stoppage against any Employer who shall fail to make any payment of fringe benefits once in any twelve month period due under the terms of this Agreement and such work stoppage shall not constitute a violation of this Agreement, and all time lost by all employees shall be compensated by the delinquent Employer.

10. Notwithstanding any other provision of this Agreement, for the purpose of the provisions of Addendum III, Health, Pension and Supplemental Retirement Fund Contributions, regarding contributions by the Employer to the Sheet Metal Workers' Local Union #40 Pension Fund (the "Pension Fund"), to the Sheet Metal Workers' Local Union #40 Supplemental Retirement Fund and to each other local or national fringe benefit fund referred to in this Addendum III, persons in the employ of the Employer who qualify as "Sheet Metal Superintendents" shall be members of the bargaining unit and shall be covered by this Agreement. The term "Sheet Metal Superintendents" shall include each person who is a member of the Union working in a capacity which contributes to the sheet metal trade and the work covered by this Agreement.

Contributions for Sheet Metal Superintendents shall be subject to the administrative rules of the Funds regarding acceptance or return of contributions as the fund may deem necessary to protect its status for tax purposes, reporting of contributions and auditing of payroll records.

17

11. To insure uniform compliance with the Wage and Fringe Benefit provisions of this Agreement, the parties agree that a Representative of the Union/Management, or any auditor designated by Union/Management shall have the right to review all payroll, monthly fringe benefit reports (for either or both home and job site local), time tickets, etc. necessary to validate compliance with the wage equalization provisions of this Agreement.

Such review shall be made only after written notice to the individual employer under review and shall not unduly interfere with the operation of the employer. This requirement shall be applicable to all contractors bound by the Collective Bargaining Agreement, including out-of-town contractors who perform work in the area under a Participation Agreement or Reciprocal Agreement.

### *ADDENDUM IV*
### *TRAVEL EXPENSE*

Travel pay shall be paid at the rate  of THIRTY CENTS (.30) per mile for all miles over fifteen (15) miles.  This will be true free zone with no mileage paid  inside the fifteen (15) mile zone.  Maximum travel expense per  day will not exceed TEN DOLLARS AND FIFTY CENTS ($10.50).

(Example: If the job site is 18 miles from the employee's house or shop, which ever is closer, mileage would be 18 miles - 15 miles free zone = 3 miles x $.30/miles x 2 = $1.80.)

(A) All miles shall be measured in miles actually traveled by the shortest practicable route.

(B) The employer agrees to pay all tolls paid by each employee traveling over the shortest practicable route to the job.  No tolls shall be paid by the Employer when the job is within the FIFTEEN (15) mile free zone.

(C) No man shall be permitted to ride on any truck except in the cab of said truck, or when the truck is equipped to carry passengers according to the state law.

### *ADDENDUM V*
### *ROOM AND BOARD*

1. Room and Board will not be paid within the jurisdiction of Local Union #40.

2. Room and Board, both of good quality, shall be paid for by the Employer on a SEVEN (7) day basis to all employees actually rooming and boarding at or near a  job site.

3. A sum sufficient to meet expenses shall be advanced to all employees sent out on Room and Board jobs.

4. Employees traveling to and from a Room and Board job shall be compensated at the rate of THIRTY CENTS ($.30) per mile at the start of the job, completion of job, and any interruption of job, or the Employer shall furnish good quality transportation to the job.

5. Employees traveling to and from a Room and Board job shall be compensated for time spent traveling at the regular hourly rate at start of job, completion of job, and any interruption of job.

### ADDENDUM VI
#### UNION STEWARDS

1. The Union Steward on the job or in the shop, shall be appointed by the Business Manager.

2. A Steward in the shop shall have THREE (3) years of employment with the Employer to be eligible, unless there are no other Journeypersons available.

3. Each such Steward, if qualified to perform the work, shall be the last man other than the Foreman to be discharged.

4. The Union Steward shall not be discriminated against, transferred from the job site or shop without the permission of the Business Manager or Business Representative or discharged for the performance of duties as such working steward.

5. Any dispute arising over the interpretation of this Section shall be subject to adjustment under the provisions of Article X of the Standard Form of Union Agreement within FORTY-EIGHT (48) hours.

      a) It is further agreed that there shall not be work or compensation stoppage for the Steward until such a meeting is held and a decision is made.

6. No Shop Steward shall have the authority to stop any work.

7. The Steward, if qualified to perform the work, shall be employed on all overtime worked in the shop or on the job where he/she is acting as Steward. However, the Steward shall not replace any employees already working on the job, whether in the shop or on the job.

8. The Employer shall be notified by the Union when Stewards are appointed by the Union.

19

9.  The Stewards, both in the shop or on the job, shall be the first person other than the Foreperson to return to work in the shop or on the job after a layoff or temporary interruption of work, which consists of less than THIRTY (30) regular working days, unless the Steward is elsewhere employed at the time work resumes.

10. The Shop Steward will be provided information on territories of jobs, job numbers and local union areas.

### *ADDENDUM VII*
*FOREMEN (man/woman)*

1.  It is mutually agreed that the minimum pay for Foremen (man/woman) shall be ONE DOLLAR ($1.00) per hour above the rate paid to Journeypersons on all wage rates. Example/ Full Rate, Prevailing Rate, Addendum XXIX and any Resolution #78 Relief Projects.

2.  Any or all foremen (man/woman) shall be a Sheet Metal Journeyperson, and NOT from another craft.

3.  All contractors working within the jurisdiction of Local Forty signatory to any Sheet Metal Workers' International Association and Standard Form of Union Agreement, shall employ at least one Journeyperson member of Local Forty as a Foreman (man/woman) for every FOUR (4) Journeypersons employed on the job at a rate of pay ONE DOLLAR ($1.00) per hour above the regular Journeyperson rate. When there are TWO (2) or more Local Forty Foremen (man/woman) employed as Foremen (man/woman) by said Contractor on the job, one Local Forty Journeyperson shall be employed as a General Foreman (man/woman) by the Contractor at a rate of pay ONE DOLLAR AND FIFTY CENTS ($1.50) per hour above the regular Journeyperson rate for all wage rates.

### *ADDENDUM VIII*
*MISCELLANEOUS*

1.  Wages at the established rates shall be paid in the shop or on the job before noon on Thursday. Should Thursday be a holiday, employees shall be paid in the shop or on the job on or before quitting time on Wednesday. Failure to pay by noon on Thursday will be compensated for by ONE (1) hours pay or ONE (1) hour off with pay at the rate employee is earning. When employees are laid off, they shall be paid in full immediately, or shall receive a full days pay for each working day that they wait for their pay. At the direction of the Joint Adjustment Board, the Contractor employing Journeyperson Sheet Metal Workers and Apprentices must pay in United States currency. Any violation of this section shall be subject to review and decision by the Joint Adjustment Board.

2. Any member that received an incorrect pay will be compensated for the incorrect amount not later than Friday in the same work week that the shortage occurred.

3. Whenever possible, the contractor shall post the wage rates for Addendum XXIX and Resolution #78 work on the job site and must post the wage rates in the shop.

4. Layoff Language: The contractor shall be obligated to provide Sheet Metal Local #40 SEVEN (7) hours notification of layoff of Local #40 members. The Employer shall be obligated to provide the Local #40 member with one hour notification of layoff and shall provide the worker the opportunity to leave the job site or shop at that time with the understanding that the employee will be paid in full for the full day's wages on the day on which the layoff occurred.

5. No Journeyperson or Apprentice shall be required to go through a legally established picket line. No employee shall be disciplined or discharged for such refusal.

6. It is mutually agreed that Journeyperson and Apprentice Sheet Metal Workers' shall abide by all OSHA regulations.

7. It is mutually agreed that all Employers shall provide adequate tool chests or sheds on jobs in the field so the Employer's and employee's tools can be safely and reasonably stored when not in use. The Employer will also provide a First Aid kit on all jobs.

8. In the event that the Employer or Contractor is not subject to the Unemployment Compensation Act of the State of Connecticut, he/she shall voluntarily subject themselves to the provisions of said Act as provided therein, and he/she shall continue to be subject to its provisions throughout the life of this Agreement.

9. The Employer or Contractor agrees that he/she shall carry Workmen's Compensation throughout the life of this Agreement as specified in the statutes of the State of Connecticut, regardless of the number of employees. The employer shall cause Certificates of Liability to be filed with the Union by an insurance carrier recognized to do business in the State of Connecticut.

10. The Business Representatives of the Union shall have the privilege, at all times, of going through shops or premises or buildings where work is being performed, to examine the cards of members employed there and transact any other business he/she may have to perform.

11. Parking in the Metropolitan areas only, shall be paid by the employer upon presentation of stamped receipt for parking expense. Parking will be paid on the basis of the least expensive parking available within the Metropolitan area where the job site is located.

12. The Employer agrees that there will be no shutdown of his/her operation in either shop or job on the day immediately following a holiday between Monday and Friday of any week unless:

   a) Journeypersons & Apprentice members employed by the Employer, vote at a **SECRET BALLOT** election held in the shop, and on each individual job, and conducted by the Shop Steward and/or the Job Steward,   not   to work on said day.

   b) If the vote at a **SECRET BALLOT** election is taken in a timely manner, and some jobs vote to shutdown, including the shop, then employees who voted to work may be assigned to work on projects that will remain open.

   c) The General Contractor shuts the job down.

   d) There is no work available in the shop or on the job- site.

13. The Employer agrees that he/she will allow his/her employees to fill out the job reporting forms devised by the Union for that purpose.

14. It is agreed that this Agreement shall not be entered into with any but duly recognized Sheet Metal Contractors.   A duly recognized Sheet Metal Contractor shall be interpreted to be any Sheet Metal Contractor capable of performing work covered in Article 1, Section I of the Standard form of Union Agreement.

15. It is mutually agreed that the 3 to 1 Apprentice ratio shall not be exceeded in either shop or job.

16. Employers agree Foremen (man/woman) and Journeypersons are covered by all terms and conditions of the Collective Bargaining Agreement.

17. There will be a TEN (10) minute coffee break between the hours of 7:00 A.M. and 12 NOON.

18. Any Contractor working within the jurisdiction of Local Union #40 and employing FOURTEEN (14) or more journeypersons on a single job site shall furnish a shanty for the employees on that job site.

19. Computer Language - The preparation of all required forms or computer take-off sheets taken from architectural and engineering drawings or shop and field sketches, the inputting of information into the computer after it has been prepared shall be the work of sheet metal workers.   The operation of the cutting table, including the installation of punch tapes shall be the work of sheet metal workers.

20. Owner Member - Language Bargaining unit employees hereunder shall include Owner/Members, i.e. employees of incorporated employer who: (a) are officers, directors, or majority stockholders of an incorporated employer; (b) perform work

covered by the terms of this Agreement; and (c) are listed on the Registration Statement filed with the Sheet Metal Workers' National Pension Fund. Contributions on behalf of Owner/Members shall be made to the National Pension Fund for all hours for which the Owner/Member is paid or entitled to payment. In any event, however, no less than the minimum regular hours per week as required by this Agreement for all bargaining unit employees shall be paid. The term "minimum regular hours per week" shall be defined as the number of hours per week for which an employee received straight time wages.

**Local #40 Area Owner Members:** Signatory contractors who fall under the category of owner-members shall be subject to special rules and provisions established from time to time by the Trustees of the Sheet Metal Local Union No. 40 Fringe Benefit Funds that are applicable only to this classification of signatory contractors.

21. There shall be instituted a four (4) year apprenticeship training program for all Apprentices. All local fringe benefits for all apprentices that are to be pro-rated, will be pro-rated by their percentage of earnings in the apprenticeship program **(Appendix C).**

22. To insure uniform compliance with the contribution requirements of the Fringe Benefit, Union and Industry Funds established under this Agreement, the parties agree that a representative of the Union shall have the right to review all payroll and contribution records of the Employers as well as contribution records of the various Fringe Benefit, Union and Industry Funds provided for in this Agreement. Such reviews shall be made only after written request to the individual Employer under review or to the particular Fund Administrator and shall not unduly interfere with the operation of the Employer or the Funds. This requirement shall be applicable to all contractors directly signatory to the Collective Bargaining Agreement as well as out-of-town contractors who perform work in the area under a Participation or Reciprocal Agreement.

### *ADDENDUM IX*
### *SHEET METAL INDUSTRY APPRENTICE AND TRAINING FUND*

1. The Employer shall pay monthly to the Sheet Metal Industry Apprentice and Training Fund, the sum of **(Appendix A)** per hour for each hour worked by all Journeyperson and Apprentice Sheet Metal Workers' in his/her employ. This fund shall be used to conduct programs of Industry Education, and Training, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical skills and job opportunities for Journeypersons and Apprentice Sheet Metal Workers. Such fund shall be administered and controlled jointly by a committee of an equal number of Employer and Union Trustees as provided by Section 302(c) of the Taft-Hartly Act.

2. Sheet Metal Industry Apprentice and Training Fund contributions shall be forwarded by the Employer to the Fund by the twentieth (20th) day of the month following the month for which contributions are made.

### *ADDENDUM X*
### *FAN MAINTENANCE*

1. In the temporary operation of fans or blowers in a new building, or in an addition to an existing building, for heating and/or air conditioning, prior to the completion of the duct work in connection herewith, Journeyperson Sheet Metal Workers shall have the jurisdiction in the temporary operation and/or maintenance of such fans or blowers, and they shall work in full shifts of not less than SEVEN (7) hours nor more than EIGHT (8) hours each, and will receive single time wages for all time so employed on this work including nights, Saturdays, Sundays and holidays, on full shifts.

2. All temporary operations and/or maintenance shall be paid for at single time except for less than a full shift outside of regular hours, and then double time shall be paid.

3. In the temporary operation and/or maintenance of fans and blowers, the jurisdiction of Sheet Metal Workers Local Union #40 shall continue.

      a) Until a system and/or systems are accepted by the Owner or his/her representative after having been tested and balanced.

      b) Each area in a building shall be considered as substantially completed for the purpose of stopping fan maintenance when all core work, toilets, elevator machine rooms, perimeter systems and fan rooms are installed in the area, and the public corridor and perimeter of the building is plastered to the ceiling height, or a substitute for plaster is used on either the public corridor or the periphery or perimeter of the building. The plastering requirements shall be waived where the plastering is not done because the area is not rented.

4. The number of Journeyperson Sheet Metal Workers required for each shift of fan maintenance shall be based on the assignment of one person to maintain a reasonable number of units to operate, heating, ventilating, air conditioning, or exhaust systems.

5. No man or woman engaged in fan maintenance shall work in excess of FORTY (40) hours in any workweek.

24

6. Elevator service must be maintained at all times when fan maintenance is in operation above the sixth floor of any building.

7. Journeyperson Sheet Metal Workers employed on temporary operation and/or maintenance shall tighten belts, lubricate and perform all service work necessary to protect the equipment being maintained.

8. The jurisdiction of Local Union #40 shall apply to the operation and/or maintenance of fans and blowers only for new systems installed in an existing building or when an old system is, in effect, completely replaced by a more complete and modern system.

9. Journeyperson Sheet Metal Workers shall not be employed for the sole purpose of operating and/or maintaining fans or blowers, during any period when such fans or blowers are operated for the sole purpose of testing or adjusting a heating, ventilating, or air conditioning system.

### *ADDENDUM XI*
### *IN-PLANT WORK*

This work shall refer to all Sheet Metal Work fabricated and/or installed in or on any existing manufacturing or fabricating facility and office area within the confines of the aforementioned structures.

a). The normal SEVEN (7) hour workday between the hours of 7:00 a.m. and 5:00 p.m. shall apply.

b). Overtime worked performed shall be at the rate of time and one half (1 1/2) the hourly wage rate on weekdays and Saturdays. Work performed on Sunday and holidays shall be at TWO (2) times the hourly wage rate.

c). In plant work covered by this Addendum, the crew make up for the job site only shall be as follows:

Crew #1 -  man/woman #1 Journeyperson; man/woman #2 Apprentice and #3 Pre-Apprentice

Crew #2  -  man/woman #1 Journeyperson; man/woman #2 Apprentice; man/woman #3 Pre-Apprentice; person-power needs beyond the above indicated Crew #2 will be filled per the Standard Form of Union Agreement.

25

### *ADDENDUM XII*
### *SHIFT WORK*

1. 15% Increase of money in envelope - 2nd shift.
   20% Increase of money in envelope - 3rd shift.

   Shift work to be considered Monday through Friday only, with a minimum of three (3) days. Any Signatory contractor to this Agreement may utilize their existing work force for the 2nd or 3rd shift. If the employer utilizes any existing employee's for the 2nd or 3rd shift, they must replace that employee from the Union Office for the first shift. The employer will have the right to refuse the first referral. Foremen (man/woman) for shift work shall be supplied by the employer. Referral employees shall remain employed until an equal reduction in the work force from the 2nd or 3rd shift takes place.

2. Shift work will be performed in accordance with the currently existing agreement. Not withstanding the foregoing, it may be necessary to schedule work and it may be performed in a manner that causes the least disruption to the project. Therefore, the purpose is that a second shift and/or third shift may be established as the first shift. This may require an adjustment of the starting time of those shifts -- only with documentation of bid conditions and with the permission of the Business Manager or the Business Representative.

3. Shift work provisions for addendum XXIX work shall be the same shift work provisions applicable in this Addendum.

### *ADDENDUM XIII*
### *PRODUCTION WORK*

The Employer who desires to engage in production work in his/her shop shall be subject to the terms of this Agreement, unless he/she shall negotiate with the Union a plan or Agreement which will modify or amend the terms of this Agreement.

### *ADDENDUM XIV*
### *INCREASES*

1. Refer to Addendum I for wages provided for in this Agreement.

2. All monies due under this provision of this Agreement shall be due and payable within TEN (10) days of the allocation of monies due.

3. Failure to make payment of monies described herein within TEN (10) days shall constitute a violation of this Agreement, and the Union shall have the right to strike

said delinquent Employer, and said work stoppage shall not be a violation of this Agreement.

4.   The Employer also agrees that all employees engaged in a work stoppage as described in the above clause shall be compensated in full for all time lost by the employees of the delinquent Employer.

### ADDENDUM XV
### STABILIZATION AGREEMENT OF SHEET METAL INDUSTRY

1.   It is agreed that the Employer shall make monthly payments of an amount equal to THREE PERCENT (3%) of the gross earnings of each employee subject to this Agreement to the National Stabilization Agreement of Sheet Metal Industry (SASMI). Gross earnings, for the purpose of this Agreement, shall mean (a) total wages paid to an employee by the Employer which are reportable by the employee for Federal Income Tax purposes, and (b) any and all contributions paid by such Employer on behalf of the employee to a Pension, Supplemental Retirement, and/or Health Fund.

2.   The Employer agrees to adopt the National SASMI Trust as presently constituted and as the same may be amended from time to time, to be bound by all rules and regulations of the plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time, and to sign the Standard Participation Agreement prescribed by the Trustees as a condition of becoming party to and participant in such Trust.

### ADDENDUM XVI
### P.A.L.

The employer agrees to honor political contribution deduction authorizations from its employees who are Union members on a form provided by the Local Union for this purpose.

### DUES CHECK-OFF AUTHORIZATION

The employer agrees to honor dues-check off deductions from its employees who are Union members that sign the following form:

You are hereby authorized and directed to deduct from my wages, commencing with the next payroll period, an amount equal to dues and initiation fees as shall be certified by the Sheet Metal Workers' Local Union #40 and remit to same said Local Union. This authorization and assignment is made in consideration for the cost of representation and collective bargaining and is not contingent upon present or future membership in the Union.

27

This assignment, authorization and direction shall be made irrevocable for a period of one year from the date of delivery hereof to you, or until the termination of the Collective Bargaining Agreement between the Company and the Union which is in force at the time of the delivery of this authorization whichever occurs sooner. I agree and direct that this assignment, authorization, and directive shall be automatically renewed and shall be irrevocable for successive periods of one year each for the period of such succeeding applicable Collective Bargaining Agreement between the Company and the Union whichever shall be shorter, unless canceled by written notice sent by registered or certified mail signed by me and postmarked or received by the Company and the Union, not more than TWENTY (20) days and not less than TEN (10) days prior to the expiration of each period of one year or of each Collective Bargaining Agreement between the Company and the Union whichever occurs sooner.

This authorization is in compliance with and is made pursuant to the provisions of Section 302 (c)(4) of the Labor Management Relations Act of 1974 as amended.

**OR**

The employer agrees to honor Dues Check-Off deduction authorization from its employees who are Union members on a form provided by the Local Union

### *ADDENDUM XVII*
*INTEGRITY CLAUSE*

A "bad-faith Employer" for the purposes of this Agreement is an Employer that itself, or through a person or persons subject to an owner's control, has ownership interests (other than a non-controlling interest in a corporation whose stock is publicly traded) in any business entity that engages in work within the scope of SFUA Article 1, hereinabove using employees whose wage package, hours and working conditions are inferior to those prescribed in this Agreement or, if such business entity is located or operating in another area, inferior to those prescribed in the Agreement of the sister local union affiliated with Sheet Metal Workers' International Association, AFL-CIO in that area.

An Employer is also a "bad-faith Employer" when it is owned by another business entity as it's direct subsidiary or as a subsidiary of any other subsidiary within the corporate structure thereof through a parent-subsidiary and/or holding-company relationship, and any other business entity within such corporate structure is engaging in work within the scope of SFUA Article I, hereinabove using employees whose wage package, hours, and working conditions are inferior to those prescribed in this Agreement or, if such other business entity is located or operating in another area, inferior to those prescribed in the Agreement of the sister local union affiliated with Sheet Metal Workers International Association, AFL-CIO in that area.

Any Employer that signs this Agreement or is covered thereby by virtue of being a member of a multi-employer bargaining unit expressly represents to the Union that he/she is not a "bad-faith Employer" as such term is defined in Section 1, hereinabove and, further, agrees to advise the union promptly if at any time during the life of this Agreement said Employer changes its mode of operation and becomes a "bad-faith Employer". Failure to give timely notice of being or becoming a "bad-faith Employer" shall be viewed as fraudulent conduct on the part of such Employer.

In the event any Employer signatory to or bound by this Agreement shall be guilty of fraudulent conduct as defined above, such Employer shall be liable to the Union for liquidated damages at the rate of $500 per calendar day from the date of failure to notify the Union until the date on which the Employer gives notice to the Union. The claim for liquidated damages shall be processed as a grievance in accordance with, and within the time limits prescribed by, the provision of SFUA Article X.

### *ADDENDUM XVIII*
*WORK ASSESSMENT - JOURNEYPERSONS*

The Employer shall deduct Work Assessment (**Appendix A**) for each hour worked for all journeyperson sheet metal workers in their employ. The Union reserves the right to allocate and administer (**Appendix A**) from the Work Assessment or whatever is determined by the Union for the Youth-to-Youth Program (Organizing Fund). This deduction shall be made from envelope wages and shall be forwarded to the **Business Office of Sheet Metal Workers' Local Union #40, 100-A Old Forge Road, Rocky Hill, CT. 06067**, no later than the twentieth (20th) day of the month following the month for which contributions are made.

### *ADDENDUM XIX*
*RECOGNITION CLAUSE*

In as much as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the employees' exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election and expressly waives any right it may have to do so.

### *ADDENDUM XX*
*SUB-CONTRACTING*

1. The Employer shall not sub-contract, sublet, delegate or assign to any firm, individual or corporation outside the jurisdiction of the Union, any work covered under Article I

- Section I of the Standard Form of Union Agreement, except with the written consent of the Union.

2. When Signatory contractors in the Local Union #40 area subcontract to other signatory contractors (in the jurisdiction of SMW Local Union #40) they will be required to provide notification of such subcontracting to the Business Manager or Business Agent of the Local Union. Nothing in this language shall be construed to mean that the contractor must obtain permission to subcontract. The objective of this language is solely for purposes of advising the local union that subcontracting work to other signatory contractors is taking place.

### ADDENDUM XXI
### SCHOLARSHIP FUND

The Employers will contribute to the Scholarship Foundation, Inc. per **(Appendix A)** per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the TWENTIETH (20th) day of the succeeding month and shall be remitted as designated by the Secretary-Treasurer of the Foundation.

### ADDENDUM XXII
### ELECTRIC LIFTING HOISTS

The Employer agrees to employ only Union Sheet Metal Workers for the intermittent operation of electrical hoists used for any work described in Article I - Section I of the Standard Form of Union Agreement.

### ADDENDUM XXIII
### SHEET METAL WORKERS' LOCAL UNION #40 P.A.C.

The employer agrees to honor political contribution deduction authorizations from its employees who are Union members that sign the appropriate form provided by the Local Union as follows:

### VOLUNTARY AUTHORIZATION OF CONTRIBUTION
### FROM PAYROLL TO THE SHEET METAL WORKERS
### LOCAL UNION #40 POLITICAL ACTION COMMITTEE

I hereby authorize the Employer to deduct from my paycheck TWO CENTS ($.02) for each hour worked and to forward that amount to SMWLU #40-PAC. This authorization is signed voluntarily and with the understanding that my voluntary contributions to SMWLU #40-PAC will be used to make political contributions and expenditures in connection with federal, state and local elections. I am aware that the contribution is subject to the prohibitions and limitations of the Federal Election Campaign Act that the suggested TWO CENTS ($.02) an hour

donation is only a guideline, that I am free to contribute more or less than the suggested amount without reprisal and the SMWIA and its affiliated local unions will not favor or disadvantage me by reason of the amount of my contribution or my decision not to contribute. This authorization may be revoked at any time by mailing notices of revocation by United States Registered or Certified Mail, Return Receipt Requested, to the Treasurer, **SMWLU #40-PAC, 100-A Old Forge Rd. Rocky Hill, CT. 06067** and to my Employer. Contributions or gifts to SMWLU #40-PAC are not deductible as charitable contributions from federal income tax purposes.

### *ADDENDUM XXIV*
### *ARCHITECTURAL/SHEET METAL MAKE-UP DAY*

With respect to the Architectural/Sheet Metal Work performed under this agreement, the following terms and conditions shall apply:

a) Effective October 1st through May 15th of each year, a "Saturday Make-Up Day" will be provided for Local #40 employees of Local #40 area Architectural Sheet Metal contractors only, who lose in the field, seven (7) or more hours in a given work week due to inclement weather.

b) Resolution #78 will be available through the Local #40 Business Manager or Agent between May 16th and September 30th of each year for a make-up day in the field for projects within the Local #40 jurisdiction only.

c) The rate of pay on such "Saturday Make-Up Day" shall be at the rate of time and one half for the first three and one-half hours of the day, and straight time for the next three and one-half hours of the day,

d) The "Saturday Make-Up Day" shall be a full seven (7) consecutive hours. Employees working on a project for which a make-up day is required shall be given the first opportunity for working the make-up day. No employee shall be penalized in any fashion for refusal to work on the "Saturday Make-Up Day".

### *ADDENDUM XXV*
### *REFERRAL SYSTEM*

Every 5th new hire will be referred to the contractor by Sheet Metal Workers' Local Union #40 Business Office. The contractor will have the right to refuse the first referral. After the first referral, and in the event the contractor and the local union cannot agree on acceptance of a referral by the local union, the matter will be referred to the Local Joint Adjustment Board for resolution.

31

## *ADDENDUM XXVI*
### *FAVORED NATIONS CLAUSE*

Should it be found that more favorable conditions exist for work to be performed within jurisdiction of Sheet Metal Workers' Local Union #40, then said conditions shall be made available to all signatory contractors performing work of a similar nature. The conditions of the Favored Nations Clause shall be applicable to all categories of work covered under the terms and conditions of this collective bargaining agreement.

## *ADDENDUM XXVII*
### *TESTING AND BALANCING*

Testing and balancing uses a specialized field of Local Union #40 employees, therefore all aspects of the Union Agreement as written for sheet metal workers may or may not apply to testing and balancing employees and the testing and balancing contractors. The regular working day shall consist of seven (7) hours labor on the job site between 6:00 AM and 6:00 PM.

There are certain areas, specifically as follows, that should be incorporated since they apply strictly to the testing and balancing employees and the testing and balancing contractors.

### **Local Union #40 Apprentice and Training Fund Contributions**

Local Union #40 Apprentice and Training Fund Contributions per Addendum IX of the current contract **(Appendix A)** will not be paid to Local Union #40, but will be used by the testing and balancing contractor for "in-house" training until Local Union #40 Joint Apprentice & Training Committee have initiated a bonafied program resulting in sufficient and adequate training to provide Certified T.A.B. technicians. This is in agreement with the existing conditions since testing and balancing contractors are presently, and have been since at least 1969, providing the training and all related costs.

### **T.A.B. Technician Apprenticeship Program**

The testing and balancing contractors apprentice program as registered and authorized by the state of Connecticut Labor Department is as follows:

Apprenticeship term............................................................3.5 / 4 years, 8,000 hours

Wages are a percentage of then current sheet metal workers hourly rate, with fringe benefits pro-rated per the contract using the following schedule;

Start ...............................................................................50%
6 month review.................................................................55%
1 year review ...................................................................60%
1.5 year review ................................................................65%
2 year review ...................................................................70%
2.5 year review ................................................................75%
3 year review ...................................................................80%
3.5 year review +/- pass written Cert. Exam........................90%
4 year +/- pass field Cert. Exam............100% plus...............$.25/hr*

*Premium per International's Agreement recognizing Balancing Technicians' additional skills.

After the 3 year review, specific preparation classes for the National Certification Exam would be given over an approximately 4 month period. The written exam would then be taken at the next available scheduled time. After successful completion of the written portion, the field portion would be scheduled per the National Certification Board's rules and successful completion of that would finalize the Apprenticeship and earn the journeyperson balancing technicians' pay scale.

The post 3 year review time frame would be dependent on the Union's schedule for the Certification Exam and the candidate's preparation and ability to pass it. The added time in the apprenticeship would allow for retaking each portion of the Exam, if needed, and would reward the candidate based on his/her performance. A well prepared candidate could complete the program in approximately 3 years, 7 months.

The following typical schedule of work experience as per Connecticut State Apprentice Council Testing and Balancing Technician DOT #007.181.010 is intended as a guide. It need not be followed in any particular sequence, and it is understood that some slight adjustments may be necessary in the hours allotted for different work experience. In all cases, the apprentice is to receive sufficient experience to make him/her fully competent in all work processes, which are a part of the trade.

.............................................................................................**HOURS**
A. Orientation .....................................................................100
B. Safety Requirements .........................................................100
C. Instrumentation (Case & Calibration) ...................................100
D. Electrical (as related to balancing)......................................200
E. Job Writing ....................................................................350

33

F. Job Starting ........................................................................600
G. Air Balancing Operations .....................................................3450
      1. Heating and Ventilation
      2. Exhaust
      3. Air Conditioning
H. Hydronic Balancing Operations ...........................................2100
      1. Cooling Towers
      2. Chillers
      3. Pumps
      4. Coils
      5. Flow Meters
      6. Terminal Devices
I. Sound Testing - All Equipment ............................................500
J. Related Instruction...............................................................500
................................................TOTAL......................................8000

### 1.5 Year Apprenticeship Program

If it is found that journeyperson Local Union #40 sheet metal worker has the skills and desire to enter the testing and balancing field, the following program is established for these members:

This position is based on the program developed for sheet metal workers who are "graduates" of a balancing class provided by Sheet Metal Workers' Local Union #40. It consists of the following:

- registering as an Apprentice Balancing Technician at the 65% level of the current Union scale (the 1.5 year level), for a 90 day probation period,

- after a successful review for both the employee and employer, continue with the equivalent of the last two years of the apprenticeship program:

    1. Next 6 months at the 70% level,
    2. Following 6 months at the 80% level
    3. another, approximately 6 months at the 90% (until passing the National Certification written Exam),
    4. 95% level from passing written exam through successful completion of the field exam,
    5. Upon attaining National Certification TAB Technician status, pay will be 100% of Union scale plus $.25 per hour increment for specialized expertise.

- complete Union benefit package during apprenticeship, including the full health package, (NOTE: the Supplemental Retirement Fund

contribution is pro-rated, and therefore is a "decrease" in benefit. All other benefits remain the same.)

- participation in TAB Training Program, conducted by the employer,

- specialized instrumentation, tools and paperwork provided by the employer to perform the work.

### Apprentice Ratio

Apprenticeship ratio typically is 1:1 for testing and balancing contractors since the majority of projects require only one technician and thus any training of apprentices would be on a one to one basis. The requirement for apprentices is usually based upon the project size and the future requirements for trained testing and balancing technician journeyperson.

### Travel & Transportation of Equipment

It shall be permissible for the employee to transport in the employee's vehicle, if the employee so desires, the necessary instruments, tools, balancing devices and step ladder required to perform the balancing procedures. Said instruments and tools etc. are to be provided by the employer, except those set forth as hand tools in Article IX of the Standard Form of Union Agreement. Each employee shall sign out for the instruments and be fully responsible for their return when not in use.

Travel expenses for employees of testing and balancing contractors, since employees normally carry instrumentation and equipment, shall be as follows:

The testing and balancing employer agrees to compensate employees at the rate of **thirty cents ($.30)** per mile each way for all miles traveled from shop to job, or home to job, whichever is less, provided that the distance traveled is greater than **fifteen (15) miles.** There is no **"FREE ZONE"** for employees traveling beyond the **fifteen (15) miles.** [Example: Job is **Twenty five (25) miles** from shop and **Thirty-Five (35) miles** from employees home – employee is to be paid **25 X 2 = 50 X $.30 or fifteen dollars ($15.00)** for travel.] The maximum travel to be paid per day shall be **thirty dollars ($30.00).** This schedule is based on a full seven (7) hour day on the job.

The contractor may furnish employees with contractor owned vehicles. Employees furnished with contractor owned vehicles that are used daily for traveling from home to job or shop and from job or shop to home shall not be paid mileage providing the contractor pays all expenses for that vehicle. The full seven (7) hour day on the job still applies.

35

### ADDENDUM XXVIII
January 27, 1995
*NON DISCRIMINATORY POLICY*

There shall be no discrimination in the referral, hiring, placement, classification, upgrading, layoff, or termination of employment of any person by reason of race, creed, color, sex, national origin, or membership or non-membership in the union.

### *ADDENDUM XXIX*
*MARKET RECOVERY PROGRAM*

. There shall be no work stoppages or jurisdictional disputes on projects covered under this Addendum.

. Work covered under this addendum shall not exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000) for straight line Sheet Metal duct work on a given project on which there is open shop competition. Architectural sheet metal work other than gutters and leaders are not covered under this addendum. In the event that the provisions of this Addendum are not sufficient to meet open shop competition on projects beyond the defined scope of this addendum, the Business Manager or Business Agent of Sheet Metal Workers' Local Union #40 shall be empowered under the terms of Resolution #78 of extend the provisions of this Addendum. There shall be no Resolution #78 Relief Granted with respect to contributions to the Sheet Metal Industry Fund Inc.

. Under the terms of this Addendum there shall be an EIGHT (8) hour work day - FORTY (40) hour work week.

. There shall be no travel provisions (travel expense) under this addendum.

. The journeyperson/apprentice ratio under this agreement shall be on a ONE to ONE (1:1) basis.

. Local #40 members manning this work shall first be utilized from the employer's existing work force if possible. The third and fourth men/women/ working on projects covered by this addendum, and all other new hires will be by referral from the Business Office of Sheet Metal Workers Local Union #40.

. The total hourly contractual obligation of the contractor employing workers under this addendum shall be **(Appendix B).**

. In the event there is any misuse of this Addendum, the Employer in question shall pay all wages and fringe benefits as per the Building Trades Agreement (Master Agreement), plus a 25% fine based on the total package differential, with all of the fines going to the Sheet Metal Local #40 Industry Apprentice and Training Fund.

. With respect to the Architectural/Roofing Contractors, the following provisions shall apply under this Addendum:

    a) Work covered under this Addendum at the wage rate called for in **(Appendix B)** of this agreement shall be limited to gutters and leaders.

    b) On architectural sheet metal work covered under this Addendum, the work shall consist of FIVE (5) consecutive SEVEN (7) hour days totaling THIRTY FIVE (35) hours on the job site, and there shall be no travel pay provisions for this type of work.

FOR THE EMPLOYER:
Nutmeg Wall Systems

_____

DATE __5/7/98__

FOR THE UNION:
Sheet Metal Workers Local Union #40

_____

DATE __4/13/98__

# APPENDIX A

## Wages are effective January 1, 1998

| | |
|---|---:|
| Envelope...................................... | $22.62 |
| Deductions from envelope | |
| Work Assessment................................ | .55 |
| Organizing........................................... | .06 |
| Brother to Brother............................... | .03 |
| Equity Funds........................................ | .30 |
| **Total Assessment** | .94 |
| Payroll Savings.................................... | .61 |
| **Total Envelope Deduction** | **$1.55** |

| **Local Fringe Benefits** | |
|---|---:|
| Local Health Fund............................... | 5.00 |
| Local Pension...................................... | 1.93 |
| Local Pension COLA........................... | .16 |
| S.R.F.(Supplemental Retirement Fund) | 2.45 |
| Local Appr. & Tr. Fund...................... | .49 |
| Local Industry Fund........................... | .33 |
| National Industry Fund..................... | .05 |
| * Found. Fair Contracting...................... | .05 |

| **International Fringe Benefits** | |
|---|---:|
| SASMI.................................................. | .98 |
| National Pension................................. | .51 |
| National Tr. Fund................................ | .07 |
| NEMI................................................... | .03 |
| Occupational Health........................... | .02 |
| Scholarship Fund................................ | .01 |
| **Total Package** | **$34.70** |

# APPENDIX B

## Market Recovery
## Effective January 1, 1998

Envelope……....................................... **16.97**
**Deductions from envelope**
Work Assessment…........................... .50
    **Total Assessment**      **.50**
Payroll Savings…............................. .50
    **Total Envelope Deduction**      **1.00**

### Local Fringe Benefits

Local Health Fund…......................... 3.61

Local Pension…............................... .95

Local Pension COLA….................... .05

S.R.F.(Supplemental Retirement Fund) 1.50

Local Appr. & Tr. Fund…................ .25

Local Industry Fund….................... .25

### International Fringe Benefits

SASMI…......................................... .71

National Pension….......................... .51

National Training Fund…................ .07

National Industry Fund…................ .05

NEMI…........................................... .03

Occupational Health….................... .02

Scholarship Fund…......................... .01

    **Total Package**      **24.98**

# PRO RATED APPRENTICE WAGES

EFFECTIVE DATE:   JULY 1, 1997 THROUGH JUNE 30, 1998

| % | POCKET WAGES | LOCAL FRINGE BENEFITS | | | | | | INTERNATIONAL FRINGE BENEFITS | | | | | | | TOTAL WAGES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | HEALTH FUND | LOCAL PENSION | S.B. FUND | LOCAL A&I | LOCAL INDUST | F.F.C. | NTF | NATL PENSION | NATL SASMI 3% | SCHOLAR FUND | NEMI | OSHA | NATL INDUS | |
| 40% | $9.05 | $2.00 | $0.85 | $0.98 | $0.20 | $0.13 | $0.05 | $0.07 | $0.48 | $0.40 | $0.01 | $0.03 | $0.02 | $0.05 | $14.31 |
| 45% | $10.18 | $2.25 | $0.95 | $1.10 | $0.22 | $0.15 | $0.05 | $0.07 | $0.48 | $0.45 | $0.01 | $0.03 | $0.02 | $0.05 | $16.01 |
| 50% | $11.31 | $2.50 | $1.06 | $1.23 | $0.25 | $0.17 | $0.05 | $0.07 | $0.48 | $0.50 | $0.01 | $0.03 | $0.02 | $0.05 | $17.71 |
| 55% | $12.44 | $2.75 | $1.17 | $1.35 | $0.27 | $0.18 | $0.05 | $0.07 | $0.48 | $0.55 | $0.01 | $0.03 | $0.02 | $0.05 | $19.41 |
| 60% | $13.57 | $3.00 | $1.27 | $1.47 | $0.29 | $0.20 | $0.05 | $0.07 | $0.48 | $0.59 | $0.01 | $0.03 | $0.02 | $0.05 | $21.11 |
| 65% | $14.70 | $3.25 | $1.38 | $1.59 | $0.32 | $0.21 | $0.05 | $0.07 | $0.48 | $0.64 | $0.01 | $0.03 | $0.02 | $0.05 | $22.81 |
| 70% | $15.83 | $3.50 | $1.48 | $1.72 | $0.34 | $0.23 | $0.05 | $0.07 | $0.48 | $0.69 | $0.01 | $0.03 | $0.02 | $0.05 | $24.51 |
| 75% | $16.97 | $3.75 | $1.59 | $1.84 | $0.37 | $0.25 | $0.05 | $0.07 | $0.48 | $0.74 | $0.01 | $0.03 | $0.02 | $0.05 | $26.21 |
| 100% | $22.62 | $5.00 | $2.12 | $2.45 | $0.49 | $0.33 | $0.05 | $0.07 | $0.48 | $0.98 | $0.01 | $0.03 | $0.02 | $0.05 | $34.70 |
| AVG. | | | | | | | | | | | | | | | |

NOTE:  ALL UNDERLINED & BOLD ITALIC CONTRIBUTIONS LISTED ABOVE ARE TO BE PRO-RATED AT APPRENTICES CURRENT PERCENTAGE

NOTE: SASMI'S CONTRIBUTIONS ARE CALCULATED ON (1) POCKET WAGES (2) HEALTH FUND (3) ANNUITY FUND (4) LOCAL & NATIONAL PENSION & COLA FUNDS

NOTE: $.61 PER HOUR IS TO BE DEDUCTED FROM AFTER TAX WAGES AND DEPOSITED INTO APPRENTICES' PERSONAL ACCOUNT AT CAPITOL CITY FEDERAL CREDIT UNION

NOTE:  NO WORK ASSESSMENT OR DUES ARE TO BE DEDUCTED FROM APPRENTICES' WAGES

NOTE:  APPRENTICES ARE NOT SUBJECT TO ANY WAGE REDUCTIONS IN REGARDS TO RESOLUTION #78, ADDENDUM #30, DAVIS-BACON (PREVAILING WAGE) OR ANY OTHER REDUCED WAGE RATES

NOTE:  E   ..ECTIVE JANUARY 1, 1998, $0.03 WILL BE REMOVED FROM THE LOCAL PENSION FUND AND TRANSFERRED TO THE NATIONAL PENSION FUND.

# SHEET METAL WORKERS'
## LOCAL UNION FORTY
### BY LAW WORKING RULES

1. All members of Local Forty sent by the Employer to perform work in the jurisdiction of another local union shall report to a representative or official of that Local Union **before** starting work.

2. No member shall use his own power tools or any equipment other than the recognized hand tools of the trade on any job or in any shop.

3. All members shall obtain a Trust Fund slip or clearance from the office of Local Forty **before** going to work to insure their Welfare, Pension and Supplemental Retirement Fund payments. Failure of any member to notify the Local Union Office when changing employers will result in an appearance before the Executive Board and will be subject to fine.

4. Members must not work with any apprentice who is delinquent in his dues.

5. Members must not solicit work on any job site. Violation will result in an appearance before the Executive Board and subject to fine.

6. The dues of Local Union Forty must be paid quarterly in **advance** or by the end of the first month in each quarter. Any member in violation shall pay a fine of ten dollars ($10.00) per quarter and shall be suspended if dues are not paid after the second month of each quarter.

7. A quorum for regular meetings shall be fifteen (15) members.

8. It shall be the responsibility of each journeyperson to report his overtime to the Union Office at once.

9. No member shall engage in any conduct which is detrimental to the best interest of this Association or Local Union thereof of which will bring said unions into disrepute.

10. All other laws, rules or regulations not contained herein, and which are part of the Constitution of the Sheet Metal Workers' International Association, shall automatically become a part of these working rules.

11. Members shall be called alphabetically to picket. **Any member called to picket shall be responsible for picketing or arranging for another Local Union Forty member to replace him/her.** Any member who fails in this duty shall be subject to appear before the Executive Board and fined accordingly.

All Brothers and Sisters from other Sheet Metal Workers' International Association Locals and other trades now working within the jurisdiction of Local Union Forty, shall perform picketing under the same rules and regulations as Local Forty members.

12. Any member working out of the jurisdiction of Local Union Forty shall report any overtime worked to the Local he or she is working in.

13. It shall be the responsibility of all members to inform the Union office when he or she is laid off. Members names will be placed on the unemployed list the day they call in. They will not be given a place on the list dated back to the time of layoff.

14. Any members elected to any Fund Trustee position must relinquish his or her position if they decide to take a withdrawal card or begin receiving a pension from the SMW Local #40 Pension Fund, before their elected term is completed. A letter of resignation will be required and will take effect on or before withdrawal or retirement becomes official. Vacant positions will be filled by an election of the body/membership.

15. To be eligible for election as a Union Trustee on the Funds, a member must be an active working member in Local #40 or available for such work. Members on a withdrawal card or retirees who are receiving a pension from the SMW Local #40 pension fund, are not eligible for nomination or election as a Union Trustee on the Funds.

16. To be eligible for elections as a Union Trustee on the Funds, a member must meet the same qualifications that the Local Union #40 Officers, Business Manager and Business Representative are required to meet, according to the Constitution and ritual of the Sheet Metal Workers' International Association.

**SHEET METAL WORKERS' LOCAL NO. 40**

**FRINGE BENEFIT FUNDS**

**PARTICIPATION AGREEMENT**

The undersigned Employer hereby agrees to contribute to the Trust Funds for each hour worked by the Employer's Covered Employees within the territorial jurisdiction of Sheet Metal Workers' Local No. 40 (the "Local"), or as otherwise provided in the Local's Collective Bargaining Agreement.

"Trust Funds" shall mean the respective jointly managed trust funds providing fringe benefits to which contributions are required under the terms of the Collective Bargaining Agreement to which the Local is a party.

"Covered Employees" shall mean those employees of the Employer who are performing work covered by the Collective Bargaining Agreement in effect between the Local and the Associated Sheet Metal and Roofing Contractors of Connecticut.

The Employer agrees to be bound by all terms and conditions of the Declaration of Trust of each Trust Fund and the actions of the Trustees thereunder. The Employer agrees that it will make the required contributions at the rates and in the manner prescribed from time to time by the rules and regulations of each Trust Fund and the Collective Bargaining Agreement.

This Agreement shall apply to all past contributions made by the Employer to the Trust Funds and such contributions shall be deemed to have been made under this Agreement.

It is understood and agreed that the Trustees of each Trust Fund may take such steps to enforce collection of fringe benefit contributions and to remedy delinquencies as may be set forth in the Declaration of Trust for the applicable Trust Fund or as may be provided under Connecticut law.

By: _____
Authorized Officer Signature


Nutmeg Wall Systems
_____
Name of Contractor



Date: 5/7/98


By: _____
Sam Giglio, Business Manager
Sheet Metal Workers' Local 40
Authorized Union Official

Date: 4/13/98

By: _____
John McBrearty Business Agent
Sheet Metal Workers' Local 40
Authorized Union Official

Date: 4/13/98

By: _____
Robert K. Hertel
Fund Administrator
Fringe Benefit Funds

Date: 4/13/98