# Exhibit G

Attached to Roche Declaration
(Case No. 1:05-CV-01823 CKK)

NATIONAL JOINT ADJUSTMENT BOARD
FOR THE SHEET METAL INDUSTRY

```
***************************************************
IN THE MATTER OF                                  *
                                                  *
M.R.S. ENTERPRISES, INC.                          *
                                                  *
AND                                               *
                                                  *
SHEET METAL WORKERS' INTERNATIONAL                *
UNION LOCAL NO. 40                                *
***************************************************
```

## MEMORANDUM OF M.R.S. ENTERPRISES, INC.

M.R.S. Enterprises, Inc. herewith responds to the submission of Sheet Metal Workers' International Association Local 40 (Local 40) pursuant to Article X, Section 8, of the expiring collective bargaining agreement alleging an impasse in negotiations.

### FACTS

M.R.S. Enterprises, Inc. (M.R.S.) became signatory to the National Siding and Decking Agreement on or about 1987. At approximately the same time, M.R.S. joined the National Siding and Decking Contractors Association (NASDC). M.R.S. is engaged solely in the erection of composite metal panels and other siding and decking work. M.R.S. does not perform heating, ventilating and air conditioning work, or other sheet metal work contained in the jurisdictional

claims of the sheet metal worker. For several years, M.R.S. was signatory to only the National Siding and Decking Agreement and was not signatory to any sheet metal worker local agreement. Approximately seven years ago, M.R.S. executed a collective bargaining agreement with Local 40 in Connecticut and four years ago executed a collective bargaining agreement with Local 17 in Massachusetts. The only reason for executing the local agreements was that it was a requirement for being signatory to the National Siding and Decking Agreement. M.R.S. executed the Local 17-Massachusetts Agreement because it had work at Logan Airport. At no time did M.R.S. ever belong to the Associated Sheet Metal and Roofing Contractors of Connecticut (ASMRCC) or the Sheet Metal and Air Conditioning Contractors of North American, Boston Chapter (SMACNA). M.R.S. always negotiated its National Siding and Decking Agreement through NASDC. Because M.R.S. is a siding contractor, it never participated in any negotiations with either Local 40 or Local 17 over the terms and conditions of the local sheet metal worker agreements. M.R.S. also never gave its bargaining rights to either ASMRCC or SMACNA. In fact, the Local 40 Agreement which expires on June 30, 2005 was never signed by any representative of M.R.S. and M.R.S. was not included as a member of ASMRCC for collective bargaining purposes. There does not exist, therefore, a signed collective bargaining agreement between M.R.S. and Local 40. Copies of the unsigned signature pages are attached hereto as Exhibit A.

On December 20, 2004, M.R.S. notified General President, Michael Sullivan, of the Sheet Metal Workers' International Association (SMWIA) that it was giving notice pursuant to Article VIII, Section 4 of the National Siding and Decking Agreement that it was terminating that agreement upon its expiration in May 2005. By letter of the same date, M.R.S. notified NASDC that it was terminating the agreement with the SMWIA. By letters dated December 22,

2004, M.R.S. notified Mr. David Roche, Business Manager of Local 40 that it was terminating the Local 40 Agreement pursuant to Article XV upon its expiration on June 30, 2005 and notified Mr. Joseph Bergantino, Business Manager for Local 17 that it was terminating its agreement with Local 17 effective upon its expiration date of June 30, 2005. Copies of all notification letters are attached to this Memorandum as Exhibit B. Whatever negotiations have taken place between ASMRCC and Local 40, have taken place without the participation of M.R.S. As was its practice over the past 18 years, M.R.S. has never participated in collective bargaining for the local sheet metal worker contracts in any state where it has performed siding and decking work. Over the course of its 18 years as a signatory to both the Siding and Decking Agreement and the Local 40 and Local 17 Agreements, M.R.S. has always hired its sheet metal workers directly, trained them to perform siding and decking work and then obtained membership in the Sheet Metal Workers Local for those employees. Very seldom, if at all, did Local 40 ever refer sheet metal workers to M.R.S. to perform siding and decking work. It is also a fact that Local 40 has never trained any of the sheet metal workers employed by M.R.S. who install composition metal panel materials.

## ARGUMENT

It is the position of M.R.S. that it has properly terminated its Section 8(f) agreement with Local 40 pursuant to the decision in John Deklewa & Sons, 282 NLRB 1375 (1987), 843 F. 2d 770 (3rd Cir. 1988) and subsequent decisions affirming Deklewa, specifically James Luterbach Construction, 315 NLRB No. 147 (1994) and Haas Electric v. NLRB, 299 F.3d 23 (1st Cir. 2002). Deklewa made it abundantly clear that Section 8(f) agreements may be terminated at their expiration and that the employer has no obligation to bargain with the union after termination. Luterbach, Haas and other cases since Deklewa have dealt with the timeliness of the

notice of termination to the union and to any multi-employer association bargaining on behalf of the terminating employer. The case law is also abundantly clear that the employer cannot terminate during the term of the contract or while a successor is being negotiated by the multi-employer group to which it has given its bargaining rights or after the successor agreement has been executed. See Twin City Garage Door Co., 297 NLRB 119 (1989), Reliable Electric Co. 286 NLRB 834 (1987) and Kephart Plumbing 285 NLRB 612 (1987). (The employers attempted to repudiate after contract was negotiated and ratified.)

In this case the union was aware that M.R.S. was not represented by the ASMRCC group from the very outset of negotiations because the company name was not included in the list of employers represented by ASMRCC. The question now becomes what obligation did M.R.S. have to negotiate with Local 40? Since the agreement was a Section 8(f) one, M.R.S. could terminate it at its expiration and have no further obligation to the union. I submit that the termination of the Local 40 agreement by the December 22, 2004 letter was timely and comes within the circuit courts of appeals decisions in Deklewa and Haas Electric, supra. When M.R.S. terminated its Section 8(f) relationship with Local 40 on December 22, 2004, the contract was to expire on June 30, 2005. The notice was unequivocal and was sent more than 150 days prior to the contract expiration as required by Article XV, Section 5. Under the Agreement and the First Circuit decision in Haas Electric, supra, the notice to the union was timely. Furthermore, unlike the facts in Haas, M.R.S. did nothing inconsistent with its intention to terminate it relationship with the union as outlined in the notice. No one from M.R.S. participated in any of the negotiating sessions from beginning to end. The facts in this case are better than the ones in Haas.

In Luterbach, supra, the Board applied a two-part test to determine, in the Section 8(f), multi-employer bargaining context, whether or not the withdrawing employer has "...recommitted to the union that it will be bound by... the multi-employer negotiations." M.R.S. does not qualify under either part of the test. It was not part of the multi-employer group when the negotiations commenced and the union was aware of that fact. Representatives of M.R.S. never participated in or were present at any Local 40 negotiations. Since the answer to the first part of the Luterbach test is not in the affirmative, the Board will not even look to the second part of the test, whether M.R.S. made a distinct affirmative action to recommit to the union that it would be bound to whatever was negotiated by the ASMRCC group. The only affirmative action that M.R.S. took was to terminate its Section 8(f) relationship with Local 40 in a timely manner and according to the collective bargaining agreement.

M.R.S. never gave any notice to ASMRCC because it was never a member of the association and had never designated the association as its collective bargaining representative. While the Local 40 Agreement provides in Article XV, Section 5, that any employer who executes the Agreement automatically designates the ASMRCC as its bargaining agent, M.R.S. already had a collective bargaining agent, NASDC. As a siding and decking contractor, M.R.S. is more closely aligned with the contractors throughout the United States who belong to the National Siding and Decking Contractors Association and who negotiate directly with the SMWIA in Washington, DC for a national agreement. These national siding contractors are only signatory to local sheet metal worker agreements because they are required to do so pursuant to the National Siding and Decking Agreement and to have a resource for journeymen sheet metal workers to work in a ratio with the specialty sheet metal workers employed by M.R.S. M.R.S. fulfilled its legal and contractual obligations with respect to notice when it sent letters dated

December 20, 2004 to the International President and NASDC and when on December 22, 2004 it sent letters of termination to the Business Managers for Local 40 and Local 17. M.R.S. had no obligation to send any notice to ASMRCC, although on February 7, 2005 it notified ASMRCC that it did not recognize it as an association representing it or as a procedure for the settlement of grievances because the grievance that had arisen should have been resolved pursuant to the National Siding and Decking Agreement and not the Local 40 Agreement. A copy of the February 7, 2005 letter is also attached hereto as Exhibit C.

The position of M.R.S. relies heavily upon the fact that the contract is a Section 8(f) pre-hire agreement. The language of the agreement corroborates this fact because there is no Section 9(a) recognition clause in the agreement which expires on June 30th and Local 40 has as one of its proposals for the successor agreement to the present one the inclusion of Section 9(a) recognition language. Pursuant to the case law stated above, the collective bargaining agreement between M.R.S. and Local 40 as well as the National Siding and Decking Agreement constitute Section 8(f) pre-hire agreements which may be terminated by either side at their expiration with no continuing obligation to negotiate.

## CONCLUSION

M.R.S. respectfully suggests that it complied with Federal Labor Law and the terms and conditions of the National Siding and Decking Agreement and the collective bargaining agreement with Local 40 with respect to the termination procedure and that because all the contracts are Section 8(f) pre-hire agreements, M.R.S. has no duty to negotiate with Local 40 after the contract expires on June 30, 2005. As a result of the Section 8(f) pre-hire status of this agreement, M.R.S. cannot be required to arbitrate before the National Joint Adjustment Board

pursuant to Article X, Section 8, its decision to terminate the collective bargaining agreement upon its expiration.

                                                    M.R.S. ENTERPRISES, INC.
                                                    By its attorney,

DATED: June 23, 2005

                                                  James F. Grosso
                                                  O'Reilly, Grosso & Gross, P.C.
                                                  1671 Worcester Road, Suite 205
                                                  Framingham, MA 01701-5400
                                                  Tel: 508/620-0055
                                                  Fax: 508/620-7655

JUN 24 2005 10:34  FR 508#620#7655#  508 620 7655 TO 918605293177  P.09/16