UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.R.S. ENTERPRISES, INC.,

    Plaintiff/Counter-defendant,

      v.

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,
LOCAL 40,

    Defendant/Counter-claimant.

Civil Action No. 05-1823 (CKK)

**MEMORANDUM OPINION**
(April 11, 2006)

    Plaintiff/Counter-Defendant M.R.S. Enterprises, Inc. (hereinafter M.R.S.[1]) filed a

Complaint on September 14, 2005, asking this Court to vacate a decision of the National Joint

Adjustment Board ordering it to execute a collective bargaining agreement with

Defendant/Counter-Claimant Sheet Metal Workers' International Association, Local 40

(hereinafter Local 40).  Presently before the Court is Local 40's [10] Motion to Confirm

Arbitration Award, in regards to which an Opposition and Reply have been filed.  Upon

considering the aforementioned filings, the operative pleadings, and the relevant case law, the

Court shall GRANT Local 40's Motion to Confirm Arbitration Award.

**I: BACKGROUND**

    M.R.S. is a siding contractor with a principal place of business in Plainville, Connecticut.

1st Am. Compl. ¶¶ 1, 8.  Local 40 is a labor organization for sheet metal workers with a principal

---

[1] Generally, the parties in this case will be referred to as M.R.S. and Local 40 due to the confusing nature
of party titles Plaintiff/Counter-Defendant and Defendant/Counter-Claimant.

place of business in Rocky Hill, Connecticut.  *Id.* ¶ 5.  In 1998, M.R.S. executed a pre-hire

agreement (hereinafter "the Agreement") pursuant to Section 8(f) of the National Labor Relations

Act, 29 U.S.C. § 158(f),[2] with Local 40 for successive contract terms.[3]  1st Am. Compl. ¶ 6;

Countercl., Roche Decl. ¶ 5; M.R.S. Opp'n at 1.  M.R.S. was required to execute such an

agreement with the sheet metal workers local union in its home state as a condition of its being a

signatory to the National Siding and Decking Agreement.  1st Am. Compl. ¶ 6.

On December 22, 2004, M.R.S. sent a letter to Mr. David Roche, Business Manager of

Local 40, notifying the Union that it wished to terminate the Agreement, effective on its

expiration date of June 30, 2005.  1st Am. Compl. ¶ 13.  Article X, Section 8 of the Agreement

states the following:

> [A]ny controversy or dispute arising out of this Agreement as set forth in the
> preceding sections of this Article, any controversy or dispute arising out of the failure of
> the parties to negotiate a renewal of this Agreement shall be settled as hereinafter
> provided:
> (a).  Should the negotiations for a renewal of this Agreement or negotiations
> regarding a wage/fringe reopener become deadlocked in the opinion of the Union
> representative(s) or of the Employer('s) representatives(s), or both, notice to that effect
> shall be given to the National Joint Adjustment Board.

Countercl. at Exh. A at 10 (Agreement).  Upon notice, any dispute that cannot be resolved by a

NJAB Panel representative will be decided by the NJAB as a whole.  *Id.*  A unanimous decision

---

[2]Section 8(f) pre-hire agreements provide "an exception to the general rule that an employer may not
bargain with a union which does not represent a majority of its workforce."  *Whiting-Turner Contracting Co. v.
Local 7*, 15 F. Supp. 2d 162, 164 (D. Mass. 1998).  The exception applies only to employers engaged in construction
work and allows the employer and a union to agree to a contract before the employees are hired.  *J.W. Peters, Inc. v.
Bridge, Structural and Reinforcing Iron Workers Local 1*, 398 F.3d 967, 969 n.1 (7th Cir. 2005).  This exception is
permitted in recognition that this type of employer does not have a permanent workforce and needs to be able to
predict its labor costs when submitting bids on contracts.  *Deklewa v. NLRB*, 843 F.2d 770, 772–73 (3d Cir. 1988).

[3]Roland Levesque originally signed the agreements on behalf of Nutmeg Wall Systems.  As of January 1,
2001, Nutmeg Wall Systems ceased to exist and M.R.S. took on all of its labor and contracting obligations.
Countercl., Roche Decl. ¶¶ 5-6; Exh. C.

by the Board is final and binding on the parties. *Id.* Article XV, Section 4 of the Agreement states that a party may not repudiate the Agreement during its term or prior to negotiations for one additional successor term. *Id.* at 14.

On May, 17, 2005, Local 40 sent a letter to M.R.S. requesting a meeting to negotiate the upcoming contract. Countercl. ¶ 8. A meeting was initially scheduled for June 13, 2005, but M.R.S. cancelled it. *Id.*; Mot. to Confirm at 12. Local 40 and M.R.S. never met to discuss a successor agreement. 1st Am. Compl. ¶ 17. Local 40 filed a Notice of Unresolved Dispute with the NJAB on or about June 3, 2005. 1st Am. Compl. ¶ 19; Countercl. ¶ 9. On June 27, 2005, both M.R.S. and Local 40 participated in a hearing before the NJAB in Washington, D.C. 1st Am. Compl. ¶ 20; Countercl. ¶ 10. The NJAB issued a ruling the next day which stated that "[t]he parties shall execute a collective bargaining agreement, effective July 1, 2005, identical in terms to the [prior] agreement." Countercl. at Exh. C (NJAB Decision).

M.R.S. appealed the NJAB decision to this Court in an action filed on September 14, 2005. In its First Amended Complaint, M.R.S. alleges that the NJAB arbitration award was improper for four reasons–because the parties did not reach a deadlock; because M.R.S. terminated the agreement at its expiration; because M.R.S. had no obligation to negotiate with the union after termination; and because the arbitrators were allegedly partial. 1st Am. Compl. ¶¶ 17, 18, 22-23. Local 40 filed an Answer and Counterclaim on November 17, 2005, requesting that the Court confirm and enforce the arbitration award. Countercl. ¶ 1. Local 40 argues that the arbitration award should be confirmed because M.R.S. was bound by the Local 40 Agreement, M.R.S. had no right to repudiate the Agreement and avoid arbitration, a deadlock was reached, and M.R.S. cannot challenge the NJAB's partiality because it waived its

3

opportunity to do so and agreed to the Board's composition in the Agreement.  Mot. to Confirm at 2–7.

M.R.S. admits that it was bound by the 2001–2005 Agreement and summarily states that the Agreement could be terminated without bargaining but does not respond to the other arguments in Local 40's Motion to Confirm.  M.R.S.'s Answer ¶¶ 1-14; M.R.S.'s Opp.'n at 1-6.  Instead, M.R.S. opposes Local 40's Motion to Confirm by arguing that the arbitration award is now moot because M.R.S repudiated the Agreement on December 23, 2005 when it notified Local 40 that it no longer employs sheet metal workers.  M.R.S.'s Opp.'n at 1–2.  As a result of the arbitration award being moot, M.R.S. requests that the Court dismiss both the Complaint and Counterclaim.  M.R.S.'s Opp.'n at 2.  The Court hereby dismisses the First Amended Complaint at M.R.S's request.  M.R.S's Opp'n. at 6.  Local 40's Counterclaim is henceforth the only action before the Court.

## II: LEGAL STANDARDS

There is a well-established line of precedent setting the parameters of a federal court's review of a labor arbitration decision, making it clear that this Court's authority to conduct such review "is extremely limited."  *Teamsters Local Union No. 61 v. United Parcel Serv.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991)).  "The federal policy of settling labor disputes by arbitration" requires that courts refuse "to review the merits of an arbitration award."  *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).  This is true, even when "the parties . . . allege that the award rests on errors of fact or on misinterpretation of the contract."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *see also Major League*

*Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-10 (2001).  This is "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge . . . ."  *Misco, Inc.*, 484 U.S. at 37.  However, an arbitrator's award is legitimate only if it "'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice.'"  *Id.* at 36 (quoting *Enterprise Wheel*, 363 U.S. at 597).  The Court's role then is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *Id.* at 37 (quoting *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567-568 (1960)).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Misco, Inc.*, 484 U.S. at 38.

### III: DISCUSSION

M.R.S. asks the Court to deny Local 40's Motion to Confirm Arbitration Award on the grounds that M.R.S. is no longer bound by the pre-hire agreement or the arbitration award because it no longer employs any sheet metal workers and therefore is able to unilaterally repudiate the Agreement.  M.R.S. does not respond to the arguments Local 40 makes in its Motion to Confirm Arbitration Award, and therefore these issues are deemed conceded.  After reviewing the record, it is clear that M.R.S.'s request must be denied for several reasons.  First, M.R.S. fails to meet its burden of demonstrating that it no longer employs sheet metal workers.  Second, even assuming that the M.R.S. did not bear this burden, M.R.S. still actually employs sheet metal workers as defined under the relevant law.

A.      *Jurisdiction and Venue*

Though both parties are from Connecticut, jurisdiction and venue are proper in this Court. In actions by or against a labor organization, jurisdiction is proper in any district in which a labor organization's officers or agents represent employee members.  29 U.S.C. § 185(c) (". . . district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.").  In addition, a motion to confirm an arbitration award may be filed in the district in which the award was made unless another court is named in the agreement on which the award was based.  9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.").  Venue is proper in any district court that has jurisdiction over the parties.  29 U.S.C. § 185(a).  The instant Agreement does not name another court where disputes should be settled, see Art. X, § 7, and representatives for both parties appeared at the NJAB hearing in Washington, D.C.  Therefore, this matter is properly before this Court.

> B.    *All Claims raised by Local 40 in its Motion to Confirm are conceded by M.R.S.*

Local 40 argues in its Motion to Confirm Arbitration Award that M.R.S. was bound by the 2001–2005 Agreement with Local 40, M.R.S. had no right to repudiate the Agreement and avoid arbitration, a deadlock in negotiation was reached, and M.R.S. cannot challenge the NJAB's partiality because it agreed to the Board's composition in the Agreement and failed to raise an objection before the NJAB.  Mot. to Confirm at 2–7.  In its Opposition, M.R.S. admits that it was bound by the 2001–2005 Agreement.  M.R.S.'s Opp'n at 1.  M.R.S. argues, however, that it should not be bound by the "new" agreement imposed by the arbitration award, and that

Local 40's Motion to Confirm should be dismissed because the case is now moot. M.R.S.'s Opp'n at 1. Though M.R.S. states in its recitation of the facts that it had a right to terminate the Agreement at expiration without bargaining, was forced into arbitration, and was ordered to execute a newly negotiated agreement, it does not address these issues as part of its argument. *Id.* at 1-6. M.R.S. did not challenge Local 40's argument that a deadlock had been reached, or that M.R.S. agreed to the composition of the Board and waived its right to object. M.R.S.'s Answer ¶¶ 2-12; M.R.S.'s Opp'n at 1-6.

Pursuant to Local Rule 7(b), if a party does not file a memorandum in opposition to an opposing party's motion, the court may treat the motion as conceded. LcvR 7(b). More specifically, "if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded." *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002); *accord Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002). Furthermore, M.R.S.'s Answer to Local 40's Counterclaim admitted <u>all</u> of Local 40's factual assertions. M.R.S.'s Answer ¶¶ 2-11. Through these admissions and failure to respond, M.R.S. has conceded all issues other than its argument that the award is now moot.

Despite M.R.S.'s failure to address the arguments made by Local 40 in its Motion to Confirm, even if M.R.S. had done so, the Court would find against M.R.S. on these issues.

1.    <u>M.R.S. was bound by the 2001–2005 Agreement</u>

M.R.S. was bound by the 2001–2005 Agreement though it did not physically sign the document. In its First Amended Complaint, M.R.S. contends that there is no signed collective bargaining agreement between the parties. 1st Am. Compl. ¶ 10. The fact that the Agreement

may not have been signed, however, is not determinative of whether M.R.S. was bound by the

Agreement.  If a company's conduct demonstrates that it accepts a labor agreement, then it is

immaterial whether the agreement was signed.  *Int'l Painters & Allied Trades Pension Fund v.*

*H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 29 (D.D.C. 2003) (quoting *Mack Trucks, Inc. v.*

*Int'l Union, UAW*, 856 F.2d 579, 591-92 (3d Cir. 1988) (noting that in labor relations law, the

formal rules of contract law do not apply and an agreement does not have to be reduced to

writing to be enforceable but instead can be demonstrated by conduct)).  M.R.S. accepted the

Agreement through its actions.  M.R.S. remitted union dues and made payments into Local 40

benefit funds.  Mot. to Confirm at 2.  Complying with the terms of the Agreement would have

been illegal if M.R.S. was not bound by that Agreement.  *Id.* at 2–3; *see* Labor Management

Relations Act § 302, 29 U.S.C. § 186(c)(5)(2000) (permitting benefit payments to a union only

pursuant to a written agreement); *see also Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (2d Cir.

1999) (noting that the agreement need not be signed to comply with the statute).

Additionally, in its December 22, 2004 termination letter, M.R.S. referred to the

2001–2005 Agreement by stating:

> Pursuant to Article XV of the Sheet Metal Workers International Association Local
> Union No. 40 and The Associated Sheet Metal and Roofing Contractors of Connecticut-
> Standard Form of Union Agreement and Addenda, we herby [sic] give our notice to
> terminate the Agreement on the stipulated expiration date.

Decl. of David A. Roche, Exh. E (Letter from Ronald O. Levesque to David Roche, December

22, 2004), *see also* 1st Am. Compl. ¶¶ 12, 13 (acknowledging that the purpose of the letter was

to give 150 days notice of M.R.S.'s desire to terminate the Agreement upon expiration as

required by Article XV).  The First Amended Complaint also quotes a portion of the Agreement

and refers to it as "[t]he collective bargaining agreement between M.R.S. and Local 40."  1st Am.

Compl. ¶ 16.  It is plain from M.R.S.'s conduct and acknowledgment of the Agreement that

M.R.S. was bound by the Agreement with Local 40 for the period of 2001–2005.

2.     The Agreement required negotiation for a successor term

The terms of the Agreement prohibit unilateral repudiation and require that the parties

negotiate for a successor agreement.  Article XV, Section 4 of the Agreement states that a party

may not repudiate the Agreement during its term or prior to negotiations for one additional

successor term.[4]  Countercl. at Exh. A at 14 (Agreement).  Article X, Section 8 provides that if a

negotiation cannot be reached, the issue is subject to arbitration before the NJAB.  *Id.* at 10.

These Articles have been interpreted to "represent the parties' agreement to negotiate a renewal

agreement, and, if no agreement is forthcoming, to submit their dispute to the NJAB for interest

arbitration."  *Beach Air Conditioning & Heating, Inc. v. Sheet Metal Workers Local 102*, 55 F.3d

474, 477 (9th Cir. 1995) (quoting *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg.,*

*Inc.*, 900 F.2d 1392, 1396 (9th Cir. 1990)).

M.R.S. cites *John Deklewa & Sons*, 282 NLRB 1375, 1386 (1998), *enforced* 843 F.2d

770 (3d Cir. 1988), to support its repudiation of the Agreement.  1st Am. Compl. ¶ 18.  Under

*Deklewa*, a party is not required to bargain after its contractual obligations have expired.  282

NLRB at 1386.  However, when an agreement specifies that the parties must negotiate for a

successor term, the contractual obligations do not end at the expiration of the agreement without

negotiations.  *Beach Air Conditioning, Inc.*, 55 F.3d at 476; *West Coast Sheet Metal, Inc. v.*

*NLRB*, 938 F.2d 1356, 1362 (D.C. Cir. 1991).  Article X, Section 8 of the Sheet Metal Workers

---

[4]The Agreement only requires the parties to negotiate for one successor term.  "If the...negotiations reach a deadlock, no agreement imposed by an arbitrator can contain an interest arbitration clause."  *Beach Air Conditioning, Inc.*, 55 F.3d at 478.  Therefore, at the end of the successor period required by the arbitration award, the parties will no longer have any contractual obligations under the Agreement or the award.

9

Standard Agreement binds employers to negotiate for a successor period and therefore extends the parties' contractual obligations through this period. *Id.* at 476-79. An employer cannot repudiate an agreement without bargaining before or when it expires. *Id.* Under the Agreement, if the parties cannot negotiate a successor agreement but instead reach a deadlock, arbitration is required. Countercl. at Exh. A at 10 (Agreement). Both parties are bound by the resulting arbitration award. *Id.*; *see also Beach Air Conditioning, Inc.*, 55 F.3d at 476.

### 3.   The negotiations were deadlocked

A court should defer to the arbitration board's decision regarding whether a deadlock was reached. "'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). The NJAB found that "all procedural requirements had been met" and that the matter was properly before the Board. Countercl. at Exh. C (NJAB Decision). The Court agrees.

Even if the Court did not defer to the Board's decision, it would find that a deadlock was reached. M.R.S. argues that a deadlock was never reached because negotiations were never initiated. This same argument failed in *Beach Air Conditioning*. 55 F.3d at 477-78 (rejecting the arguments that negotiations cannot fail if they are not attempted and that failure is required for a deadlock). Because the Agreement requires negotiation upon expiration, a "refusal to negotiate create[s] a deadlock." *Id.* at 479. When a union timely notifies an employer of its desire to negotiate a successor agreement and the employer is contractually bound to do so, a failure to meet is considered a deadlock. *Sheet Metal Workers Int'l Ass'n, Local No. 24 v. Architectural*

10

*Metal Works, Inc.*, 259 F.3d 418, 428–29 (6th Cir. 2001).

The lack of negotiations for a successor agreement in this case constitutes a deadlock. Though Local 40 requested a negotiation meeting and one was scheduled, M.R.S. cancelled this meeting, and the parties never met to discuss a successor agreement.  1st Am. Compl. ¶ 17; Countercl. ¶ 8; Mot. to Confirm at 12.  This failure to meet resulted in a deadlock, and the matter was properly submitted to the NJAB.

4.    <u>M.R.S. cannot challenge the Board's composition</u>

M.R.S. cannot challenge the partiality of the Board because it waived such a challenge by not bringing it before the arbitrators.  "[W]hen a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel." *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815, 821 (8th Cir. 2001), *see also Sheet Metal Workers Int'l Ass'n, Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985).

Additionally, M.R.S. cannot challenge the composition of the Board because it consented to arbitration before the NJAB.  The parties agreed that deadlocked negotiations for renewal would be settled by the National Joint Adjustment Board.  Countercl. at Exh. A at 10 (Agreement).  The NJAB traditionally consists of an equal number of union and employer representatives. *See, e.g., Limbach Co. v. Sheet Metal Workers International Ass'n*, 949 F.2d 1241, 1268 (3d Cir. 1991); *Goss Colden West Sheet Metal, Inc. v. Sheet Metal Workers Local 104*, 933 F.2d 759, 765 (9th Cir. 1991).  An employer cannot object to the fairness of an arbitration procedure that it voluntarily accepted.  *See JCI Communications v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 50 (1st Cir. 2003), *Goss Golden West Sheet Metal, Inc.*, 933

11

F.2d at 765; *Kinney Air Conditioning Co.*, 756 F.2d at 746.  As Local 40 correctly asserts,

M.R.S. voluntarily bound itself to the Agreement's terms and therefore cannot contest the

composition of the Board.  Mot. to Confirm at 6.

Even if M.R.S. had not consented to this composition and had challenged the Board's

award based on bias, its argument before the instant Court would still fail.  Arbitration awards

may be vacated if the arbitrators are shown to demonstrate "evident partiality."  Federal

Arbitration Act, 9 U.S.C. § 10(a)(2).  Evident partiality of a panel of arbitrators is not supported

by a conclusory statement of the appearance of possible bias.  *JCI Communications*, 324 F.3d at

51.  "[T]he claimant must establish specific facts that indicate improper motives on the part of an

arbitrator."  *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996) (quotation omitted).

The mere fact that the arbitrator may in some way be aligned with a party whose interest diverges

from the claiming party does not lead to a conclusion of evident partiality or bias.  *See JCI

Communications*, 324 F.3d at 51 (rejecting a claim for bias based on the argument that three

arbitrators were linked to JCI's business competitors).

It is plain that the arguments made by Local 40 in its Motion to Compel have merit, in

addition to the fact that they were conceded by M.R.S.  Therefore, M.R.S.'s only remaining

argument is that the arbitration award is not applicable because M.R.S. unilaterally repudiated

the Agreement under the one-employee unit rule.  M.R.S.'s Opp.'n at 6.

C.      *M.R.S. did not show that it had one or fewer sheet metal workers*

M.R.S. could not unilaterally terminate the Agreement because it has not met its burden

of showing that it employed one or fewer sheet metal workers.  Ordinarily, collective bargaining

agreements, including pre-hire agreements, may not be unilaterally terminated during their term

unless a National Labor Relations Board-certified election reveals that the union does not hold

the support of the majority of the bargaining unit. *Mesa Verde Constr. Co. v. Northern Cal. Dist.*

*Council of Laborers*, 861 F.2d 1124, 1128 (9th Cir. 1988); *Deklewa v. NLRB*, 843 F.2d 770 (3d.

Cir. 1988) (enforcing NRLB decision that pre-hire agreements must follow traditional contract

law and both sides are bound to their promises); *Whiting-Turner Contracting Co. v. Local 7*, 15

F. Supp. 2d 162, 164 (D. Mass. 1998). However, an exception to this general rule applies when

an employer's bargaining unit is reduced to one employee or fewer. *Laborers Heath & Welfare*

*v. Westlake Development*, 53 F.3d 979, 982 (9th Cir. 1995). In such a situation, the employer

may unilaterally repudiate the agreement with the union. *Id.* The rationale for this exception is

that when the work force is reduced to one or fewer employees, the bargaining unit is dissolved

and a union can no longer hold majority status. *Id.*

     This one-employee unit rule does not apply to M.R.S. because M.R.S. has not shown that

it employs one or fewer sheet metal workers. Local 40 correctly advances that a party cannot

oppose a motion with mere allegations. Reply at 2–3. An employer may repudiate an agreement

if the union does not have majority status. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 267. To do

so, the employer has the burden of showing that it had a good-faith belief that the union was no

longer supported by the majority of the bargaining unit. *Cmty. Hosps. of Cent. Cal. v.*

*N.L.R.B.*, 335 F.3d 1079, 1086 (D.C. Cir. 2003). Because the rationale for the one-employee unit

rule is that a union cannot hold majority status when there is only one employee, it follows that

the employer must also bear the burden to show that its work force has been so reduced. A party

cannot meet this burden by merely asserting that a fact is true. *See, e.g., Green Tree Financial*

13

*Corp. v. Randolph*, 531 U.S. 79, 91–92 (2000) (noting that a party opposing arbitration must give

evidence as to why arbitration is improper); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)

(requiring a party moving for summary judgment to demonstrate that there is no genuine issue of

fact).  Because M.R.S. is essentially asking the Court to dismiss Local 40's Motion to Confirm,

M.R.S.'s Opp'n at 1, it bears the burden to present evidence to demonstrate that it no longer

employs any sheet metal workers.  M.R.S. has not provided any evidence of this fact but instead

simply states that it has not employed any sheet metal workers since approximately the beginning

of July of 2005.  M.R.S.'s Opp'n at 4.  Because M.R.S. did not meet its burden of proof, this

Court does not find that the unilateral termination was proper.

> D.      *M.R.S. has more than one sheet metal worker*

Because M.R.S. failed to present evidence on its lack of sheet metal workers, the Court

need not consider its argument that it could unilaterally terminate the Agreement based on the

one-employee unit rule.  However, even if it were necessary for the Court to made a

determination with respect to M.R.S.'s argument, M.R.S.'s  claim would fail because M.R.S.

does, in fact, employ more than one sheet metal worker as defined by law.

The NLRB's test for determining whether a worker is part of a bargaining unit is whether

he or she has "a substantial interest in the unit's wages, hours, and conditions."  *NLRB v. Western*

*Temporary Services, Inc.*, 821 F.2d 1258, 1269 (7th Cir. 1987) (citing *Berea Publishing Co.*, 140

N.L.R.B. 516, 518-519 (1963)).  Because this is the NLRB's interpretation of its own rule

pursuant to section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), it is proper for

this Court to look to the standards set by the Board.  *Allentown Mack Sales v. NLRB*, 522 U.S.

359, 364 (1998) (noting that the Board's articulated requirements should stand unless they are

14

arbitrary and capricious).  The title given to a worker by the employer is not important in the

determination of whether an employee is part of the bargaining unit.  *Air Liquide America Corp.*,

324 N.L.R.B. 661, 661 (1997).

The Court finds that M.R.S. employs the same employees doing the same metal paneling

work they did before M.R.S. claimed to no longer employ any sheet metal workers.  Reply at

3–4; Suppl. Roche Decl. ¶¶ 2,3.  Local 40 argues, and M.R.S. does not contest, that M.R.S. has

not changed its workforce or operations since July 1, 2005.  Reply at 3–4.  M.R.S. has apparently

attempted to dissolve the bargaining unit by changing the job title of its employees by requiring

them to become members of an iron workers union rather than Local 40 for sheet metal workers.

*Id*. at 4; Suppl. Roche Decl. ¶ 3.  This change in title is superficial and does not change the

workers' interest in the sheet metal worker unit's wages, hours, and conditions.

In a similar situation in *Air Liquide*, an employee was hired as an inside salesperson, but

his title was changed to outside sales representative when he was transferred to a new office.  324

N.L.R.B. at 661.  At his new office, the employee performed both inside and outside sales work.

*Id.*  The court found that because the employee still worked as an inside salesperson for a

sufficient number of hours, he still had a substantial interest in the unit's wages, hours and

conditions and thus was still part of the bargaining unit.  *Id*. at 662.  Similarly, because M.R.S.'s

employees continue to do sheet metal work, they are still considered to be sheet metal workers

for the purpose of determining the bargaining unit.  Thus, M.R.S. still employs more than one

sheet metal worker and is consequently unable to unilaterally repudiate the Agreement.

Even if the employees have in fact become iron workers, that does not preclude them

from also being sheet metal workers.  Individuals who work in two different areas are dual-

function employees.  *See, e.g., NLRB v. Georgia, Florida, Alabama Transportation Co.*, 566

F.2d 520, 521 (5th Cir. 1978).  Because M.R.S.'s employees are still doing sheet metal work,

they are dual-function employees if they are also doing iron work.  As dual-function employees,

they are still considered part of the sheet metal workers bargaining unit so long as they perform

enough unit work to have a substantial interest in sheet metal workers' wages, hours and

conditions.  *Time Warner Cable v. NLRB*, 160 F.3d 1, 6 (D.C. Cir. 1998) (noting that dual-

function employees are part of a bargaining unit for the purpose of voting for union

representation if they perform "duties similar to those performed by unit employees for sufficient

periods of time to demonstrate...a substantial interest in the unit's working conditions" (citation

omitted)).  Because M.R.S. does not dispute that M.R.S.'s employees are still performing the

same metal paneling work, the Court finds that these workers are still part of the sheet metal

workers' bargaining unit.  M.R.S.'s contention that it no longer employs sheet metal workers is

without merit.  Therefore, the one-employee unit rule does not apply to M.R.S., and M.R.S. is

still bound by the Agreement.  Consequently, the arbitration award is confirmed.

## IV: CONCLUSION

For the reasons set forth above, the Court shall DISMISS Plaintiff's [1] Complaint, and

GRANT [10] Counterclaimant Sheet Metal Workers Local 40's Motion to Confirm Arbitration

Award.  An Order accompanies this Memorandum Opinion.

Date:   April 11, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge