UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.R.S. ENTERPRISES, INC.,

    Plaintiff/Counter-defendant,

        v.                                          Civil Action No. 05–1823 (CKK)

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,
LOCAL 40,

    Defendant/Counter-claimant.

**MEMORANDUM OPINION**
(August 22, 2006)

On April 11, 2006, the instant Court issued an [19] Order and accompanying [20]

Memorandum Opinion (1) dismissing M.R.S. Enterprises, Inc's [1] Complaint; (2) granting [10]

Counterclaimant Sheet Metal Workers Local 40's Motion to Confirm Arbitration Award; (3)

confirming the arbitration award issued by the National Joint Adjustment Board on June 28,

2005, in the matter of SMWIA Local 40 & M.R.S. Enterprises, Inc.; and (4) ordering that

pursuant to Article X, Section 6 of the Parties' Agreement, M.R.S. Enterprises pay Local 40's

reasonable attorneys' fees and costs.  M.R.S. Enterprises, Inc. (hereinafter, "M.R.S.") filed a

Notice of Appeal with the instant Court on May 11, 2006.  As of the instant date, the United

States Court of Appeals for the District of Columbia has not taken any action with respect to this

appeal.

Presently before the Court are two Motions related to M.R.S.'s non-compliance with the

instant Court's Order.  First, M.R.S. filed a [25] Motion to Stay the Court's [19] Order on May

22, 2006, in response to which an opposition (but no reply) was filed.  Second, Sheet Metal

Workers Local 40 (hereinafter, "Local 40") filed a [26] Motion for Order to Show Cause why

M.R.S. Enterprises Should Not be Held in Civil Contempt of this Court's April 11, 2006 Order

on May 22, 2006, in response to which an opposition and reply were filed.  Based on the

aforementioned filings, earlier pleadings and filings in the case, the Court's prior Order and

Memorandum Opinion, and the relevant statutes and case law, the Court shall deny M.R.S.'s

Motion to Stay the Court's Order, and the Court shall grant Local 40's Motion for Order to Show

Cause why M.R.S. Enterprises Should Not be Held in Civil Contempt of this Court's April 11,

2006 Order.

## I.  BACKGROUND

### A.     *Factual Background Prior to the Court's [19] Order*[1]

M.R.S. is a siding contractor with a principal place of business in Plainville, Connecticut.

1st Am. Compl. ¶¶ 1, 8.  Local 40 is a labor organization for sheet metal workers with a principal

place of business in Rocky Hill, Connecticut.  *Id.* ¶ 5.  In 1998, M.R.S. executed a pre-hire

agreement (hereinafter "the Agreement") pursuant to Section 8(f) of the National Labor Relations

Act, 29 U.S.C. § 158(f),[2] with Local 40 for successive contract terms.[3]  1st Am. Compl. ¶ 6;

---

[1]  The Court repeats the facts as set out in its [20] Memorandum Opinion to provide context for the Motions presently before the Court.  *See dkt. entry* [20] at 1–4.

[2]Section 8(f) pre-hire agreements provide "an exception to the general rule that an employer may not bargain with a union which does not represent a majority of its workforce."  *Whiting-Turner Contracting Co. v. Local 7*, 15 F. Supp. 2d 162, 164 (D. Mass. 1998).  The exception applies only to employers engaged in construction work and allows the employer and a union to agree to a contract before the employees are hired.  *J.W. Peters, Inc. v. Bridge, Structural and Reinforcing Iron Workers Local 1*, 398 F.3d 967, 969 n.1 (7th Cir. 2005).  This exception is permitted in recognition that this type of employer does not have a permanent workforce and needs to be able to predict its labor costs when submitting bids on contracts.  *Deklewa v. NLRB*, 843 F.2d 770, 772–73 (3d Cir. 1988).

[3]Roland Levesque originally signed the agreements on behalf of Nutmeg Wall Systems.  As of January 1, 2001, Nutmeg Wall Systems ceased to exist and M.R.S. took on all of its labor and contracting obligations.  Countercl., Roche Decl. ¶¶ 5–6; Exh. C.

Countercl., Roche Decl. ¶ 5; M.R.S. Opp'n at 1.  M.R.S. was required to execute such an

agreement with the sheet metal workers local union in its home state as a condition of its being a

signatory to the National Siding and Decking Agreement.  1st Am. Compl. ¶ 6.

On December 22, 2004, M.R.S. sent a letter to Mr. David Roche, Business Manager of

Local 40, notifying the Union that it wished to terminate the Agreement, effective on its

expiration date of June 30, 2005.  1st Am. Compl. ¶ 13.  Article X, Section 8 of the Agreement

states the following:

> [A]ny controversy or dispute arising out of this Agreement as set forth in the
> preceding sections of this Article, any controversy or dispute arising out of the failure of
> the parties to negotiate a renewal of this Agreement shall be settled as hereinafter
> provided:
> (a).  Should the negotiations for a renewal of this Agreement or negotiations
> regarding a wage/fringe reopener become deadlocked in the opinion of the Union
> representative(s) or of the Employer('s) representatives(s), or both, notice to that effect
> shall be given to the National Joint Adjustment Board.

Countercl. at Exh. A at 10 (Agreement).  Upon notice, any dispute that cannot be resolved by a

NJAB Panel representative will be decided by the NJAB as a whole.  *Id.*  A unanimous decision

by the Board is final and binding on the parties.  *Id.*  Article XV, Section 4 of the Agreement

states that a party may not repudiate the Agreement during its term or prior to negotiations for

one additional successor term.  *Id.* at 14.

On May, 17, 2005, Local 40 sent a letter to M.R.S. requesting a meeting to negotiate the

upcoming contract.  Countercl. ¶ 8.  A meeting was initially scheduled for June 13, 2005, but

M.R.S. cancelled it.  *Id.*; Mot. to Confirm at 12.  Local 40 and M.R.S. never met to discuss a

successor agreement.  1st Am. Compl. ¶ 17.  Local 40 filed a Notice of Unresolved Dispute with

the NJAB on or about June 3, 2005.  1st Am. Compl. ¶ 19; Countercl. ¶ 9.  On June 27, 2005,

both M.R.S. and Local 40 participated in a hearing before the NJAB in Washington, D.C.  1st

Am. Compl. ¶ 20; Countercl. ¶ 10.  The NJAB issued a ruling the next day which stated that "[t]he parties shall execute a collective bargaining agreement, effective July 1, 2005, identical in terms to the [prior] agreement."  Countercl. at Exh. C (NJAB Decision).

M.R.S. appealed the NJAB decision to this Court in an action filed on September 14, 2005.  In its First Amended Complaint, M.R.S. alleged that the NJAB arbitration award was improper for four reasons–because the parties did not reach a deadlock; because M.R.S. terminated the agreement at its expiration; because M.R.S. had no obligation to negotiate with the union after termination; and because the arbitrators were allegedly partial.  1st Am. Compl. ¶¶ 17, 18, 22–23.  Local 40 filed an Answer and Counterclaim on November 17, 2005, requesting that the Court confirm and enforce the arbitration award.  Countercl. ¶ 1.  Local 40 argued that the arbitration award should be confirmed because M.R.S. was bound by the Local 40 Agreement, M.R.S. had no right to repudiate the Agreement and avoid arbitration, a deadlock was reached, and M.R.S. cannot challenge the NJAB's partiality because it waived its opportunity to do so and agreed to the Board's composition in the Agreement.  Mot. to Confirm at 2–7.

M.R.S. admitted that it was bound by the 2001–2005 Agreement and summarily stated that the Agreement could be terminated without bargaining but did not respond to the other arguments in Local 40's Motion to Confirm.  M.R.S.'s Answer ¶¶ 1–14; M.R.S.'s Opp.'n at 1–6.  Instead, M.R.S. opposed Local 40's Motion to Confirm by arguing that the arbitration award is now moot because M.R.S repudiated the Agreement on December 23, 2005 when it notified Local 40 that it no longer employs sheet metal workers.  M.R.S.'s Opp.'n at 1–2.  As a result of the arbitration award being moot, M.R.S. requested that the Court dismiss both the Complaint

and Counterclaim.  M.R.S.'s Opp.'n at 2.

B.      *The Court's April 11, 2006 Order and Memorandum Opinion*

On April 11, 2006, the instant Court issued its [19] Order and accompanying [20]

Memorandum Opinion (1) dismissing M.R.S. Enterprises, Inc's [1] Complaint; (2) granting [10]

Counterclaimant Sheet Metal Workers Local 40's Motion to Confirm Arbitration Award; (3)

confirming the arbitration award issued by the National Joint Adjustment Board on June 28,

2005, in the matter of SMWIA Local 40 & M.R.S. Enterprises, Inc.; and (4) ordering that

pursuant to Article X, Section 6 of the Parties' Agreement, M.R.S. Enterprises pay Local 40's

reasonable attorneys' fees and costs.  The instant Court rejected M.R.S.'s argument that it is no

longer bound by the pre-hire agreement or the arbitration award because it no longer employs any

sheet metal workers and therefore is able to unilaterally repudiate the Agreement, holding that:

(1) M.R.S. failed to meet its burden of demonstrating that it no longer employs sheet metal

workers, and (2) even assuming that the M.R.S. did not bear this burden, M.R.S. still actually

employs sheet metal workers as defined under the relevant law.

> The NLRB's test for determining whether a worker is part of a bargaining unit is
> whether he or she has "a substantial interest in the unit's wages, hours, and conditions."
> *NLRB v. Western Temporary Services, Inc.*, 821 F.2d 1258, 1269 (7th Cir. 1987) (citing
> *Berea Publishing Co.*, 140 N.L.R.B. 516, 518–519 (1963)).  Because this is the NLRB's
> interpretation of its own rule pursuant to section 8(f) of the National Labor Relations Act,
> 29 U.S.C. § 158(f), it is proper for this Court to look to the standards set by the Board.
> *Allentown Mack Sales v. NLRB*, 522 U.S. 359, 364 (1998) (noting that the Board's
> articulated requirements should stand unless they are arbitrary and capricious).  The title
> given to a worker by the employer is not important in the determination of whether an
> employee is part of the bargaining unit.  *Air Liquide America Corp.*, 324 N.L.R.B. 661,
> 661 (1997).
> The Court finds that M.R.S. employs the same employees doing the same metal
> paneling work they did before M.R.S. claimed to no longer employ any sheet metal
> workers.  Reply at 3–4; Suppl. Roche Decl. ¶¶ 2,3.  Local 40 argues, and M.R.S. does not
> contest, that M.R.S. has not changed its workforce or operations since July 1, 2005.
> Reply at 3–4.  M.R.S. has apparently attempted to dissolve the bargaining unit by

changing the job title of its employees by requiring them to become members of an iron
workers union rather than Local 40 for sheet metal workers. *Id*. at 4; Suppl. Roche Decl.
¶ 3. This change in title is superficial and does not change the workers' interest in the
sheet metal worker unit's wages, hours, and conditions.

[20] Mem. Op. at 14–15. The Court also found on the merits–in addition to the fact that M.R.S.

conceded all of Local 40's arguments in this regard–that M.R.S. was bound by the 2001–2005

Agreement, that the Agreement required negotiation for a successor term, that the negotiations

between Local 40 and M.R.S. were deadlocked, and that M.R.S. could not challenge the Board's

composition because it waived any partiality challenge by not bringing it before the arbitrators.

*See* [20] Mem. Op. at 6–12.

M.R.S. filed a Notice of Appeal with the instant Court on May 11, 2006. As of the

instant date, the United States Court of Appeals for the District of Columbia has not taken any

action with respect to this appeal.

C.      *M.R.S's Non-Compliance with the Court's Order*

On May 22, 2006, M.R.S. filed a [25] Motion to Stay the Court's [19] Order. M.R.S.

provided no legal basis under which to consider its Motion to Stay–in fact, the "grounds" on

which M.R.S. makes in it's 1.5 page Motion to Stay are so brief that the Court will state them

here in full:

> (2) M.R.S. has a good faith belief that it will prevail on two of the issues decided by the
> District Court in this case.
> (3) If M.R.S. is forced to execute a collective bargaining agreement with the
> Defendant/Counterclaim Plaintiff, [Local 40] M.R.S. will suffer irreparable harm should
> it prevail on its appeal. Having executed the contract and paid tens of thousands of
> dollars to union sheet metal workers pending the outcome of the appeal, will result in
> irreparable harm to M.R.S. since the money will not be recoverable.
> (4) If the order is stayed, Local 40 will not suffer irreparable harm because it will be
> entitled to reimbursement for all back wages and fringe benefits not paid by M.R.S.
> throughout the life of this case up to and including the time of the appeal. Local 40,
> therefore, has an adequate remedy at law to wit: monetary damages.

Mot. Stay at 1–2. Local 40 filed an Opposition to M.R.S.'s Motion to Stay on May 22, 2006. No reply was filed by M.R.S.

Also on May 22, 2006, Local 40 filed a [26] Motion for Order to Show Cause why M.R.S. Enterprises Should Not be Held in Civil Contempt of this Court's April 11, 2006 Order. M.R.S. Vice President Steven Levesque wrote a letter on May 5, 2006, refusing to participate in grievance proceedings notwithstanding the Court's Order. *See* Mot. for Order to Show Cause at 3, Ex. A to Anderson Decl. ("Although the judge issued a decision in <u>M.R.S. Enterprises, Inc. v. Sheet Metal Workers International Association Local No. 40, et al;</u> Case No. 1:04-cv-01823-CKK finding for Local 40, the appeal period has not expired, therefore the case has not yet concluded."). In response to letters from Union counsel to M.R.S.'s counsel asking whether M.R.S. would be complying with the Court's [19] Order, M.R.S.'s counsel responded via letter on May 17, 2006, that "M.R.S. has appealed the Court's decision and therefore my client will not be executing the agreement pending appeal." Mot. for Order to Show Cause at 4, Ex. D to Anderson Decl. M.R.S. counsel indicated via telephone to Union counsel on May 22, 2006 that M.R.S. would not comply with the Court's Order. *See* Mot. for Order to Show Cause, Anderson Decl. ¶ 6. M.R.S. filed an Opposition to Local 40's Motion for Order to Show Cause on June 6, 2006, in which it merely restates its case for staying the Court's [19] Order and repeats its rejected argument that M.R.S. does not employ any sheet metal workers, but does not deny M.R.S.'s noncompliance with the Court's [19] Order. On June 6, 2006, Local 40 filed a Reply.

## II.  LEGAL STANDARDS AND DISCUSSION

*A.*     *M.R.S.'s Motion to Stay*

The following factors are to be considered when determining whether a stay pending

appeal is warranted:

> (1) likelihood that the party seeking the stay will prevail on the merits of the
> appeal; (2) the likelihood that the moving party will be irreparably harmed absent
> a stay; (3) the prospect that others will be harmed if the Court grants the stay; and
> (4) the public interest in granting the stay.  To justify the granting of a stay, a
> movant need not always establish a high probability of success on the merits.
> Probability of success is inversely proportional to the degree of irreparable injury
> evidenced.  A stay may be granted with either a high probability of success and
> some injury, or *vice versa.*

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also D.C. Circuit Handbook of Practice and Internal Procedures* Part VIII(a) (2003).

Importantly, it is "the movant's obligation to justify the court's exercise of such an extraordinary remedy."  *Cuomo*, 772 F.2d at 978; *see also Twelve John Does v. District of Columbia*, Civ. A. No. 80–2136, 1988 WL 90106, at *1 (D.D.C. Aug. 4, 1988) ("An indefinite stay pending appeal is an extraordinary remedy, and is to be granted only after careful deliberation has persuaded the Court of the necessity of the relief.") (citing *Virginia Petroleum Jobbers*, 259 F.2d at 925).  "This Circuit has recently reiterated that the applicant must satisfy 'stringent standards required for a stay pending appeal.'"  *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d 12, 14 (D.D.C. 2002) (citing *Summers v. Howard Univ.*, Civ. A. No. 02–7069, 2002 WL 31269623 (D.C. Cir. Oct. 10, 2002)).  Where a moving party fails to establish a substantial case on the merits, and further fails to "demonstrate that the balance of equities or the public interest strongly favor the granting of a stay," a motion for stay is properly denied.  *Cuomo*, 772 F.2d at 972.  In the instant case, M.R.S. had not satisfied the "stringent standards required for a stay pending appeal," as the Court will discuss below.

1.      Likelihood of Success on the Merits

"The first, and most important, hurdle which the petitione[r for a stay] must overcome is

the requirement that [it] present a strong likelihood of prevailing on the merits of [its] appeal."

*Am. Cetacean Soc. v. Baldrige,* 604 F. Supp. 1411, 1414 (D.D.C. 1985).  "Without such a

substantial indication of probable success, there would be no justification for the Court's

intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum*

*Jobbers,* 259 F.2d at 925.  "Even should the petitioner show irreparable harm would result

without the imposition of [a] stay, if the requirement of a strong likelihood of success is not met,

the petition will be denied."  *Am. Cetacean Soc.,* 604 F.Supp. at 1414 (citing *Blankenship v.*

*Boyle,* 447 F.2d 1280 (D.C. Cir. 1971)).  This does not mean that the applicant's chances of

success on appeal must appear as a "mathematical probability," but that the trial court, in the

exercise of its discretion, must weigh the probability of success on appeal in a "balance of

equities" with the three other factors.  *Washington Metro. Area Transit Comm'n,* 559 F.2d at

844.  The motion to stay may be granted when a "serious legal question is presented, when little

if any harm will befall other interested persons or the public, and when denial of the order would

inflict irreparable injury on the movant."  *Id.  See also Shays v. Federal Election Comm'n*, 340 F.

Supp. 2d 39, 45 (D.D.C. 2004).

The *only* reason presented by M.R.S. in its Motion to Stay as to its likelihood of

prevailing on the merits–its "good faith belief" that it will prevail on "two of the issues decided

by the District Court in this case"–simply provides no basis (legal or otherwise) on which the

Court may find that M.R.S. could prevail on the merits on appeal.  Mot. to Stay at 1.  While

M.R.S. states in its Opposition to Local 40's Motion for Order to Show Cause by stating that "the

one-man unit rule" applies to it, it does not provide any additional insight beyond the original argument rejected by the Court.  As such, the Court finds that M.R.S. has not demonstrated a likelihood of success on the merits on appeal.  However, the Court will nonetheless address M.R.S.'s failure to demonstrate any viable argument with respect to the other three factors required of a movant requesting a Motion to Stay.

        2.      <u>Irreparable Harm to M.R.S.</u>

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group,* 230 F. Supp. 2d at 15 (quoting *Cuomo,* 772 F.2d at 976–77). "The Court must consider the significance of the change from the *status quo* which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether defendants have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.* "A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.' " *Cuomo,* 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. F.E.R.C.,* 758 F.2d 669, 674 (D.C. Cir. 1985)).  *See also Shays*, 340 F. Supp. 2d at 47–48.

M.R.S. states without any further analysis in its Motion to Stay that if it is "forced to execute a collective bargaining agreement with the Defendant/Counterclaim Plaintiff, [Local 40] M.R.S. will suffer irreparable harm should it prevail on its appeal.  Having executed the contract and paid tens of thousands of dollars to union sheet metal workers pending the outcome of the appeal, will result in irreparable harm to M.R.S. since the money will not be recoverable."  Mot. to Stay at 1–2.

However, M.R.S. cannot claim that compliance with a viable arbitration award is in and

of itself "irreparable harm." *See In re Dist. No. 1-Pacific Coast Dist., Marine Engineers'*

*Beneficial Ass'n*, 723 F.2d 70, 78 (D.C. Cir. 1983) ("It can hardly be claimed that the cost of

complying with the terms of an agreed-upon arbitration procedure is irreparable harm.").  If this

were the case, any and all trial court enforcement of arbitration awards would be subject to stays

pending appeal, which would be an absurd result counter to principles of judicial finality and the

"liberal federal policy favoring arbitration agreements." *See E.E.O.C. v. Waffle House, Inc.*, 534

U.S. 279, 289 (2002) (internal citation and quotation omitted).  Therefore, the Court finds that

M.R.S. has not demonstrated irreparable harm warranting a stay of the Court's Order.

### 3.     Harm to Local 40

As with irreparable harm to the movant, harms to other parties interested in this action are

tested for "substantiality, likelihood of occurrence, and adequacy of proof." *Judicial Watch v.*

*Nat'l Energy Policy Dev. Group,* 230 F. Supp. 2d at 15 (quoting *Cuomo,* 772 F.2d at 976, 977).

"Relief saving one claimant from irreparable injury, at the expense of similar harm caused by

another, might not qualify as the equitable judgment that a stay represents." *Delaware River*

*Port Auth. v. Transamerican Trailer Transp., Inc.,* 501 F.2d 917, 924 (3d Cir. 1974) (citing

*Virginia Petroleum Jobbers,* 259 F.2d at 925).

M.R.S. argues that "[i]f the order is stayed, Local 40 will not suffer irreparable harm

because it will be entitled to reimbursement for all back wages and fringe benefits not paid by

M.R.S. throughout the life of this case up to and including the time of the appeal.  Local 40,

therefore, has an adequate remedy at law to wit: monetary damages."  Mot. to Stay at 2.

However, the Court agrees with Local 40 that delayed receipt of money damages would not

counter the harm caused to Local 40's status and ability to represent employees in the interim.

*See* Local 40's Opp'n at 4–5; *Lee Lumber & Bldg. Material Corp. v. N.L.R.B.*, 117 F.3d 1454,

1459 (D.C. Cir. 1997) ("[l]engthy delays in bargaining deprive the union of the ability to

demonstrate to employees the tangible benefits to be derived from union representation.  Such

delays consequently tend to undermine employees' confidence in the union by suggesting that

any such benefits will be a long time coming, if indeed they ever arrive. Thus, delays in

bargaining caused by an employer's unlawful refusal to recognize and bargain with an incumbent

union foreseeably result in loss of employee support for the union, whether or not the employees

know about the delay.") (internal quotation and citation omitted).  Thus a stay of the Court's

Order would harm Local 40 despite M.R.S.'s statement to the contrary.

4.    Public Interest

"The public interest is a uniquely important consideration in evaluating a request for

[interim relief]."  *Am. Cetacean Soc.,* 604 F. Supp. at 1416 (quoting *Nat'l Ass'n of Farmworkers*

*Orgs. v. Marshall,* 628 F.2d 604, 616 (D.C. Cir.1980)).  The Court notes that M.R.S. makes no

argument in its Motion to Stay with respect to why granting such a motion would be in the public

interest.  The Court finds that in the instant case, enforcement of a valid arbitration award is in

the public interest.  *See District 17, United Mine Workers of America v. Apogee Coal Co.*, 13

F.3d 134, 137–138 (4th Cir. 1993) ("The singular importance of arbitration as a method for

resolving labor disputes has been recognized repeatedly by the courts and Congress. . . .

Arbitration cannot accomplish these purposes, however, if the courts do not afford finality to the

arbitrator's decision.  Moreover, finality must follow swiftly if arbitration is to continue to afford

an efficient resolution of disputes.") (internal citations omitted).

In sum, M.R.S. has not demonstrated any grounds supporting a stay of the Court's [19] Order, and as such, the Court shall deny its bare-bones Motion to Stay.

     **B.**     *Local 40's Motion for Order to Show Cause Why M.R.S. should not be held in Civil Contempt*

In the absence of a stay, which the Court shall not grant (as iterated above), M.R.S. must comply with the Court's [19] Order–a pending appeal does not relieve a party of its duty to comply with a Court Order prior to a decision by the appellate court. *See Deering Milliken, Inc. V. F.T.C.*, 647 F.2d 1124, 1129 & n.11 (D.C. Cir. 1978); *see also American Rivers v. U.S. Army Corps. of Engineers*, 274 F. Supp. 2d 62, 68 (D.D.C. 2003).

An Order enforcing an arbitration award is "the equivalent of a permanent injunction and amounted to a final judgment on the merits." *Boston Celtics Limited Partnership v. Shaw*, 908 F.2d 1041, 1049 (1st Cir. 1990). A party subject to such an order has an immediate duty to comply, as an appeal does not release the Defendant from complying with an order. *Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124, 1129 & n.11 (D.C. Cir. 1978) ("The vitality of [a district court's] judgment is undiminished by pendency of the appeal. Unless a stay is granted either by the court rendering the judgment or the court to which the appeal is taken, the judgment remains operative."). *See In re Copper Antitrust Litigation*, 436 F.3d 782, 793 (7th Cir. 2006) ("The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered."); *LiButti v. United States*, 178 F.3d 114, 121 (2d Cir. 1999) ("It has been long-established law that simply filing an appeal from the grant or denial of an injunction–absent a stay of further proceedings–does not enjoin the operative effect of the trial court's ruling from which the appeal

is taken."). *See also Hovey v. McDonald*, 109 U.S. 150, 161 (1883) ("an appeal from a decree granting, refusing, or dissolving an injunction does not disturb its operative effect.").

M.R.S. does not deny Local 40's documented claims that M.R.S. has not complied with the Court's [19] Order.  Though M.R.S. has filed a Notice of Appeal with respect to the Court's [19] Order, M.R.S. as iterated above must comply with the District Court's unstayed Order pending action by the appellate court.  Furthermore, the District Court retains jurisdiction to enforce its unstayed Order.  *Deering Milliken*, 647 F.2d at 1129 ("non-issuance of the mandate by the appellate court has no impact on the trial court's powers to enforce its unstayed judgment since the latter court has retained that power throughout the pendancy [sic] of the appeal.").  *See also Public Citizen v. Carlin*, 2 F. Supp. 2d 18, 20 (D.D.C. 1998).  The Court's Order confirming the arbitration award is enforceable through contempt proceedings.  *Electrical Workers Pension Trust Fund of Local Union 58 v. Gary's Elec. Service Co.*, 340 F.3d 373, 378 (6th Cir. 2003) ("When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court."); *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981) ("Civil contempt . . . is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance.").  As M.R.S. does not dispute Local 40's demonstrations that M.R.S. has not complied with the Court's [19] Order, the Court shall order M.R.S. to show cause as to why it should not be held in civil contempt for its noncompliance, if that noncompliance continues.

## III.  CONCLUSION

For the aforementioned reasons, the Court shall DENY M.R.S. Enterprises, Inc's [25] Motion to Stay the Court's [19] Order.  The Court shall GRANT Sheet Metal Workers Local 40's

[26] Motion for Order to Show Cause why M.R.S. Enterprises Should Not be Held in Civil

Contempt of this Court's April 11, 2006 Order.  The Court shall ORDER M.R.S. Enterprises,

Inc. to show cause by September 1, 2006, why it should not be held in civil contempt of this

Court's [19] Order dated April 11, 2006.  Finally, the pursuant to Article X, Section 6 of the

Parties' Agreement,[4] and pursuant to the instant Court's prior [19] Order, M.R.S. Enterprises,

Inc. shall pay Local 40's reasonable attorneys' fees and costs in this case, to be documented in an

application by Local 40 pursuant to the Federal Rules of Civil Procedure and the Local Civil

Rules, including the attorneys' fees and costs associated with the presently adjudicated [25, 26]

Motions.  An appropriate Order accompanies this Memorandum Opinion.


Date:   August 22, 2006


                                                    _____/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge

---

[4]  "If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts."  Countercl. at Exh. A at 10.