UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M.R.S. ENTERPRISES, INC., <br><br> Plaintiff/Counter-defendant, <br><br> v. <br><br> SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 40, <br><br> Defendant/Counter-claimant. | Civil Action No. 05-1823 (CKK) |

**MEMORANDUM OPINION**
(September 19, 2006)

On August 22, 2006, the Court ordered M.R.S. Enterprises, Inc. (hereinafter "M.R.S.") to show cause why it should not be held in civil contempt of this Court's April 11, 2006 Order. In its April 11, 2006 Order, the Court had 1) dismissed M.R.S.'s [1] Complaint; (2) granted [10] Counterclaimant Sheet Metal Workers Local 40's Motion to Confirm Arbitration Award; (3) confirmed the arbitration award issued by the National Joint Adjustment Board (NJAB) on June 28, 2005, in the matter of SMWIA Local 40 & M.R.S. Enterprises, Inc.; and (4) ordered that pursuant to Article X, Section 6 of the Parties' Agreement, M.R.S. Enterprises pay Local 40's reasonable attorneys' fees and costs. The NJAB award in question stated that "[t]he parties shall execute a collective bargaining agreement, effective July 1, 2005, identical in terms to the agreement reached between SMWIA Local 40 and ASMRC of Connecticut." [7] Countercl., Ex. C (Award). In the Memorandum Opinion accompanying this Court's August 22, 2006 Order, the Court detailed the circumstances leading up to its Order to Show Cause as follows:

> M.R.S. does not deny Local 40's documented claims that M.R.S. has not complied with the Court's [19] Order. Though M.R.S. has filed a Notice of Appeal with

> respect to the Court's [19] Order, M.R.S. as iterated above must comply with the District Court's unstayed Order pending action by the appellate court. Furthermore, the District Court retains jurisdiction to enforce its unstayed Order. *Deering Milliken*, 647 F.2d at 1129 ("non-issuance of the mandate by the appellate court has no impact on the trial court's powers to enforce its unstayed judgment since the latter court has retained that power throughout the pendancy [sic] of the appeal."). *See also Public Citizen v. Carlin*, 2 F. Supp. 2d 18, 20 (D.D.C. 1998). The Court's Order confirming the arbitration award is enforceable through contempt proceedings. *Electrical Workers Pension Trust Fund of Local Union 58 v. Gary's Elec. Service Co.*, 340 F.3d 373, 378 (6th Cir. 2003) ("When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court."); *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981) ("Civil contempt . . . is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance."). As M.R.S. does not dispute Local 40's demonstrations that M.R.S. has not complied with the Court's [19] Order, the Court shall order M.R.S. to show cause as to why it should not be held in civil contempt for its noncompliance, if that noncompliance continues.

[32] Mem. Op. at 13.

In M.R.S.'s [33] Response to the Court's Order to Show Cause, M.R.S. does not give any valid reason for its outright failure to comply with the Court's April 11, 2006 Order, and in fact suggests that it may continue to refrain from complying if it so desires: "M.R.S. respectfully requests that no contempt issue against it for the failure to sign the Local 40 collective bargaining agreement until October 1, 2006. On such date, M.R.S. will execute the Local 40 agreement or be subject to whatever fines and other conditions are issued by this Court in the nature of civil contempt." The "reason" given by M.R.S. for its ongoing non-compliance is that as a result of judgments by other federal district courts confirming arbitration awards against M.R.S. in at least two other jurisdictions–as well as ongoing arbitration in another jurisdiction–"M.R.S. is responsible for hundreds of thousands of back wage and benefit payments to Sheet Metal Workers Local 38, 63 and 40 . . . [and] is actively pursuing settlement in all of the federal court cases including [an] arbitration against the SMWIA." Response at 2. M.R.S. states that it is in the process of negotiating a "global settlement . . . to reduce the hundreds of thousands of dollars

that M.R.S. presently is under Court order to pay." *Id.* at 2-3.

Civil contempt is "a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981). In this respect, it is distinct from criminal contempt, which is punitive in nature. *See id.* (contrasting criminal with civil contempt). Therefore, the form of contempt employed is determined principally by the end sought through the use of the court's inherent sanctioning authority. *See Douglass v. First Nat'l Realty Corp.*, 543 F.2d 894, 898 (D.C. Cir. 1976) (regarding this determination as a pivotal inquiry); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) ("'The power to punish for contemp[t] is inherent in all courts; its existence is essential . . . .'") (quoting *Ex parte Robinson*, 86 U.S. 505, 510, 22 L.Ed. 205 (1874)).

To find a party in civil contempt for violating an order issued by a court in the instant circuit, there must be clear and convincing evidence that a party in fact violated the court's order. *Broderick*, 437 F.3d at 1234; *Food Lion, Inc. v. United Food & Comm. Workers Int'l Union,* 103 F.3d 1007, 1016 (D.C. Cir. 1997); *Blevins Popcorn*, 659 F.2d at 1184. Violation of such an order need not be intentional to sustain civil contempt. *See Blevins Popcorn*, 659 F.2d at 1183–84 (noting further that this eliminates the need for criminal procedural protections). However, the court order in question must have been "clear and unambiguous." *Broderick*, 437 F.3d at 1234; *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993). These determinations are reviewed, finally, on an abuse of discretion standard. *Armstrong*, 1 F.3d at 1289; *Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc.*, 849 F.2d 1481, 1486 (D.C. Cir. 1988).

A party can raise a defense to civil contempt based upon that party's "good faith substantial compliance" with an order. *Food Lion, Inc.*, 103 F.3d at 1017.  The court in *Food Lion, Inc.* stated that "[i]n order to prove good faith substantial compliance, a party must demonstrate that it 'took all reasonable steps within [its] power to comply with the court's order.'" *Id.* (quoting *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)); *see also Twelve John Does v. District of Columbia*, 855 F.2d 874, 878 (D.C. Cir. 1988) (affirming the district court's contempt ruling where the District of Columbia "had not done all it could to comply"); *American Rivers v. U.S. Army Corps of Engineers*, 274 F. Supp. 2d 62, 67 (D. D.C. 2003) (allowing this defense only where a contemnor can established that they were "'powerless to comply'" with an order) (quoting *Natural Resources Defense Counsel, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974)); *NAACP, Jefferson County v. Brock*, 619 F. Supp. 846, 850–51 (D.D.C. 1985) (finding a party's "substantial efforts" to comply "*as much as possible*" with a court order as constituting good faith efforts toward substantial compliance).  In the instant case, the NJAB ruled on June 28, 2005, that M.R.S. should have executed a collective bargaining agreement effective July 1, 2005–more than one year ago.  [7] Countercl., Ex. C (Award).  Furthermore, now more than five months after this Court entered an Order confirming this arbitration award, M.R.S. has not complied with this Court's April 11, 2006 Order.

The Court agrees with Local 40's assessment that M.R.S.'s response to the Court's show cause Order is "surprisingly cavalier." [36] Local 40's Opp'n at 1.  M.R.S. had admitted to its non-compliance with the Court's April 11, 2006 Order, which was clear and unambiguous, and moreover has not demonstrated reasonable steps to comply with the Court's April 11, 2006.  Accordingly, there is clear and convincing evidence of non-compliance after notice and

opportunity to be heard.  As such, pending compliance with said Order by executing the affirmed collective bargaining agreement by September 26, 2006, the Court shall hold M.R.S. in Civil Contempt based on its non-compliance with the Court's April 11, 2006 Order.

In determining the appropriate sanction to follow a civil contempt ruling, this Court is bound by the "dichotomy" between civil and criminal contempt.  *See Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828–29, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("[C]onclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from 'the subjective intent of a State's laws and its courts[]' . . . but 'from an examination of the character of the relief itself.'") (internal citations omitted) (quoting *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)).  To this extent, where a fine is rendered, the fine should be contingent upon the contemnor's behavior rather than be unconditionally punitive. *See id.*  Thus, in order to "coerc[e] the defendant into compliance with the court's order," the civil contempt sanction rendered here will offer M.R.S. the "opportunity to purge" this sanction. *Id*. at 829 (quoting *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Evans v. Williams*, 206 F.3d 1292, 1295 (D.C. Cir. 2000) (regarding, under guidance from *Bagwell*, a per diem fine to be an appropriate sanction where the purpose of contempt is to compel compliance with a court's order).

Nonetheless, the Court's discretion in rendering a per-diem fine shall be limited by the purpose for finding M.R.S. in civil contempt—the goal of compliance with the Court's Order. *See United Mine Workers of America*, 330 U.S. at 304, 67 S.Ct. 677 ("[W]here the purpose is to make the defendant comply, the court's discretion is otherwise exercised."); *see also In re Levine*, 27 F.3d 594, 595 (D.C. Cir. 1994), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1356, 131

L.Ed.2d 214 (1995) ("[T]he 'least possible power adequate to the end proposed should be used in contempt cases.'") (quoting *In re Holloway*, 995 F.2d 1080, 1087 (D.C. Cir. 1993), *cert. denied*, 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994) (internal quotation omitted)).  To do so, the Court must weigh "the character and magnitude of the harm threatened by continued contumacy" against "the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers of America*, 330 U.S. at 304, 67 S.Ct. 677; *see also In re Special Counsel Investigation*, 374 F. Supp. 2d 238, 241 (D.D.C. 2005) (sanctioning the use of this methodology for civil contempt); *Armstrong v. Exec. Office of the President*, 821 F. Supp. 761, 772 (D.D.C. 1993) (same) *rev'd on other grounds* 1 F.3d 1274 (D.C. Cir. 1993). Additionally, as part of "securing future compliance," the Court ought to "consider the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to that particular [contemnor]." *United Mine Workers of America*, 330 U.S. at 304, 67 S.Ct. 677. Finally, the court in *Food Lion* held that "a party's good faith" efforts to comply with an order "may be considered in mitigation" of fines.  *See Food Lion, Inc.,* 103 F.3d at 1017–18 (ruling, however, that good faith alone will not excuse civil contempt); *see also American Rivers*, 274 F. Supp. 2d at 67–68 (holding that good faith must be determined based upon the balance of the contemnor's rights against the need to prevent the contemnor's violation of the law; further stating that moving to stay an order is irrelevant in this calculus) (citing *Maggio v. Zeitz*, 333 U.S. 56, 77, 68 S.Ct. 401, 92 L.Ed. 476 (1948)).

      Therefore, the Court shall order M.R.S., absent compliance with the Court's April 11, 2006 Order, to pay a per-diem fine of $1000 effective September 27, 2006, until M.R.S. complies with the Court's Order.  The amount of this per-diem fine is subject to either party moving that

this amount is insufficient to secure compliance or overly burdensome in light of M.R.S.'s financial resources. An Order accompanies this Memorandum Opinion.


Date:   September 19, 2006

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge